

OFFICE OF THE ATTORNEY GENERAL
STATE OF ILLINOIS

April 11, 2022

Submitted electronically

Rohit Chopra
Director, Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

Re:   Request for Information Regarding Fees Imposed by Providers of Consumer Financial Products or Services, Docket No. CFPB-2022-0003

Dear Director Chopra:

Thank you for the opportunity to comment on the Bureau's request for information regarding the various fees that are imposed upon consumers in the consumer financial marketplace. We, the Attorneys General of Illinois, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Iowa, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Pennsylvania, Rhode Island, and Washington, as well as the Hawaii Office of Consumer Protection, applaud the Bureau for recognizing that some of the fees charged by banks, credit card companies, prepaid debit card providers, and others are excessive and exploitative. While we share the Bureau's broad concern about the proliferation of junk fees in the consumer financial marketplace, we are focusing these comments on a specific type of fee that we have found to be unfair and abusive to consumers: convenience fees imposed by mortgage servicers.

Some financial service providers charge fees if a consumer decides to use a certain type of payment method, such as making a payment over the telephone, through a website, or through a third party service. While these type of "pay to pay" fees are charged by service providers in several different markets, the issues raised by these fees are particularly insidious in the mortgage industry because, unlike most marketplaces, homeowners have no choice in their mortgage servicer.

Case 1:24-cv-00306-CCE-LPA   Document 1-2   Filed 04/10/24   Page 1 of 5

When consumers decide to take out a mortgage, many believe that they are entering into a long-term relationship with a specific financial institution. Unfortunately, after origination many mortgage loans and their servicing rights are sold in secondary markets, and may be sold many times over the course of the loan. In short, consumers don't and can't know which company will service their mortgage loan, and they have no ability to change servicers.[1] Considering the length of mortgage loans, and their importance in the financial and emotional wellbeing of consumers' lives, the lack of consumer choice warrants special attention to discretionary fees imposed by mortgage servicers, like convenience fees. This is especially true given that some servicers have attempted to impose convenience fees even when the fees are not authorized by the original mortgage loan documents and therefore may be unlawful in certain jurisdictions.[2]

Additionally, there is no uniformity in convenience fees among mortgage servicers. Some charge them and some don't. And the charges can add up. For example, one servicer currently charges its borrowers $7.50 to make an online payment or pay via telephone through an automated service.[3] If the consumer wants to speak to a live operator to make their payment, they will be charged $17.50.[4] Other servicers charge more, or less, or not at all for the exact same options. And since mortgage borrowers are a captive market for their particular servicer, borrowers can't simply avoid the fees by taking their business elsewhere.

Mortgage servicers who charge these fees will no doubt argue that borrowers are able to submit their payment without incurring any fee by using alternative methods, like sending in a check or perhaps by setting up automatic deductions from a bank account. But like refinancing, this purported choice is actually illusory for many borrowers. In most instances, a borrower is choosing to submit a payment by phone or through a website because they want the payment to post immediately; mailing a check would take too long to post to avoid a late fee. And the late fee that a servicer may impose will likely exceed the cost of making a payment by phone or through a website. In this scenario, the convenience fee actually operates as an alternative late fee – perhaps cheaper, but with a shorter grace period, and in contravention to the contractual terms in most mortgages that outline the specific amount and timing of late fees. So, rationally, the consumer chooses the option that costs less and accepts the convenience fee charge. But simply choosing the less bad option doesn't mean that the consumer really has a choice.

---

[1] While some may argue that consumers have the option of refinancing if they don't like their servicer, this option is illusory. First, refinancing is usually only available for consumers who are current in their existing loan obligations; consumers with delinquent loans typically cannot refinance. Second, the ability to refinance is subject to external market factors like fluctuating property values and interest rates. Third, refinancing presents significant cost barriers to consumers, as they have to pay a new round of origination fees to obtain the new loan. And finally, even after all of this is done, the consumer still has no control over which company will ultimately service their loan – it's entirely possible that their loan could be transferred to the very servicer that the consumer was trying to avoid through the refinancing. Whether it's a purchase money mortgage or a refinanced mortgage, consumers have no choice in who services their loan.

[2] *See, e.g., Alexander v. Carrington*, 23 F.4th 370, 379 (4th Cir. 2022) (holding that a mortgage servicer's imposition of convenience fees violated Maryland's state debt collection practices act because the fees were not authorized by the mortgage loan documents or permitted by law); *see also* Amicus Brief of 33 Attorney Generals in Opposition to the Motion for Preliminary Approval the Proposed Settlement in *Morris v. PHH Mortgage Corp.*, Case No.: 20-CV-60633-RS (Doc. 120), (S.D. FL) (convenience fees violate laws of certain states when they are not expressly authorized in the mortgage loan documents or exceed or are not reasonably related to the servicer's actual cost).

[3] https://www.phhmortgage.com/Tools-Resources/FAQs/General-FAQs (description of "SpeedPay" charges under "What are some of the common fees that may be charged or assessed to me during the servicing of my mortgage?").

[4] *Id.*

Moreover, we have concerns that the convenience fees charged by these servicers exceed the actual cost to the servicer to accept payments made through a website or over a phone. In *Alexander v. Carrington Mortgage Services, LLC,* the United States Court of Appeals for the Fourth Circuit noted that an industry study found that processing a check cost debt collectors between $1 and $4, whereas "processing payments made online or by phone typically costs debt collectors substantially less, about $0.50 per transaction."[5] The most basic function of a mortgage servicer is to accept payments. The concept that a servicer ought to be able to impose an additional charge for performing its core function is fundamentally flawed. We don't deny that servicers incur some costs to set up their business to accept payments – but that's true of every business in every setting, and accepting payments is the core business of mortgage servicing. Lenders are supposed to earn their profit for servicing the loan in the origination charges and interest rate that consumers pay. In other words, mortgage servicers have already been compensated for the costs of accepting payments submitted by the borrower when these servicers either enter into the original loan or choose to acquire the servicing rights for the loan. Through their convenience fees, mortgage servicers are essentially getting compensated twice for accepting a payment.

For these reasons, we urge the Bureau to consider prohibiting mortgage servicers from imposing convenience fees on consumers. Alternatively, we urge the Bureau to prohibit servicers from charging convenience fees that exceed the actual cost of processing the consumer's payment and require servicers to fully document the costs supporting the imposition of these fees.

The "pay to pay" fees charged by mortgage servicers are just one example of potentially unfair junk fees charged to consumers in a multitude of financial products and services. We note the recent announcements[6] from some financial institutions concerning their reduction or elimination of overdraft and insufficient funds fees, and believe these highlight additional examples of harmful junk fees. We urge the Bureau to investigate fees in other captive markets where consumers do not have the ability to take their business elsewhere to avoid the fees, or where fees imposed on consumers are hidden profit centers for companies without an ability by consumers to adequately avoid such fees.

Thank you again for this opportunity, and thank you for taking the initiative to investigate and ultimately prohibit excessive and exploitative fees in the consumer financial marketplace.

Respectfully Submitted,

_____          _____
Kwame Raoul                                                    Rob Bonta
Illinois Attorney General                                    California Attorney General

---

[5] *Alexander*, 23 F.4th at 379, *citing* Association for Financial Professionals, *Payments Cost Benchmarking Survey*, at 7-8 (2015).
[6] *See, e.g.,* https://www.nytimes.com/2022/02/24/business/citigroup-overdraft-fees-banks.html.

Philip J. Weiser
Colorado Attorney General

William Tong
Connecticut Attorney General

Kathleen Jennings
Delaware Attorney General

Karl A. Racine
District of Columbia Attorney General

Holly T. Shikada
Hawaii Attorney General

Stephen H. Levins
Executive Director, Hawaii Office of Consumer Protection

Tom Miller
Iowa Attorney General

Aaron M. Frey
Maine Attorney General

Brian E. Frosh
Maryland Attorney General

Maura Healey
Massachusetts Attorney General

Dana Nessel
Michigan Attorney General

Keith Ellison
Minnesota Attorney General

Aaron D. Ford
Nevada Attorney General

Matthew J. Platkin
Acting Attorney General of New Jersey

Hector Balderas
New Mexico Attorney General

Letitia James
New York Attorney General

_____
Josh Stein
North Carolina Attorney General

_____
Ellen F. Rosenblum
Oregon Attorney General

_____
Josh Shapiro
Pennsylvania Attorney General

_____
Peter F. Neronha
Rhode Island Attorney General

_____
Bob Ferguson
Washington State Attorney General