IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE CUSTER,                )
                              )
              Plaintiff,      )
                              )
    v.                        )        1:24-CV-306
                              )
DOVENMUEHLE MORTGAGE,         )
INC.,                         )
                              )
              Defendant.      )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The defendant, Dovenmuehle Mortgage, Inc., charges an extra fee when customers want to make payments on their mortgages by phone. On behalf of himself and a putative class, George Custer, one of those customers, has sued DMI alleging that it is not entitled by law to collect this fee and that this practice violates the North Carolina Debt Collection Act and the North Carolina Unfair and Deceptive Trade Practices Act. DMI moves to dismiss the complaint for failure to state a claim. The motion will be denied.

### I. Motions to Dismiss

When evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court assumes the truth of the factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## II. Subject Matter Jurisdiction

The Court appears to have subject matter jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d). That statute requires plaintiffs to show that "(1) the putative class contains at least one hundred class members; (2) the parties share minimal diversity; and (3) the amount in controversy exceeds five million dollars, exclusive of interest and costs." *Kim v. Cedar Realty Tr., Inc.*, 116 F.4th 252, 260 (4th Cir. 2024). Here, the plaintiff alleges that there are approximately one million putative class members, far exceeding the 100-member minimum, Doc. 1 at ¶ 7; 28 U.S.C. § 1332(d)(5)(B); that at least one of the class members, including Mr. Custer, is a citizen of a different state than DMI, Doc. 1 at ¶¶ 7, 9–11, 27; 28 U.S.C. § 1332(d)(2)(A); and that the amount in controversy is "believed to be in an amount that exceeds $5 million." Doc. 1 at ¶ 7; 28 U.S.C. § 1332(d)(2).[1]

## III. Interpreting North Carolina Law

Both causes of action arise under North Carolina law. *See* Doc. 1 at ¶¶ 77–96. Federal courts interpreting North Carolina law "determine how the Supreme Court of North Carolina would rule were it to decide [the] case." *Whitmire v. S. Farm Bureau Life Ins. Co.*, 52 F.4th 153, 157 (4th Cir. 2022). Federal courts "must follow the decision of

---

[1] "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014).

an intermediate state appellate court unless there is persuasive data that the highest court would decide differently" because North Carolina does not have a mechanism to certify questions of state law to the Supreme Court of North Carolina. *Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013) (cleaned up).

When interpreting North Carolina statutes, federal courts "use the interpretive methodology of the Supreme Court of North Carolina." *Whitmire*, 52 F.4th at 157. "The primary goal of statutory interpretation is to accomplish legislative intent, which, in the first instance, is discerned from the plain language of the enactment." *N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, 385 N.C. 705, 711, 898 S.E.2d 718, 724 (2024).

## IV. Overview of Claims

The North Carolina Debt Collection Act ("NCDCA"), N.C. Gen. Stat. §§ 75-50 to 75-56, broadly regulates debt collection practices, prohibiting debt collectors from using threats and coercion, § 75-51, harassment, § 75-52, unreasonable publication, § 75-53, deceptive representation, § 75-54, or unconscionable means, § 75-55, to collect a debt. Here, Mr. Custer asserts that DMI violates the NCDCA by using unconscionable means to collect mortgage payments. Doc. 1 at ¶¶ 77–83. While there are several acts the statute defines as unconscionable, *see* § 75-55(1)–(4), Mr. Custer relies on one: "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered [or] any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." § 75-55(2).

3

In his second claim, Mr. Custer contends that DMI violates the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (referred to for convenience and to avoid clunky acronyms as "Chapter 75" or "§ 75-1.1"). Doc. 1 at ¶¶ 84–96. Section 75-1.1 states in relevant part that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Mr. Custer says that DMI's pay-by-phone fee violates Chapter 75 because it is deceptive, Doc. 1 at ¶ 87, unfair, Doc. 1 at ¶¶ 88–93, and illegal. Doc. 1 at ¶ 94.

V. **North Carolina Debt Collection Act Claim**

"All NCDCA claims require: (1) a consumer; (2) that owes a debt; (3) to a debt collector." *Onnipauper LLC v. Dunston*, 290 N.C. App. 486, 490, 892 S.E.2d 487, 491 (2023). The plaintiff must then establish the three generalized requirements for a Chapter 75 claim: "(1) an unfair act (2) in or affecting commerce (3) proximately causing injury." *Ross v. F.D.I.C.*, 625 F.3d 808, 817 (4th Cir. 2010) (quoting *Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000)).

The NCDCA defines "debt" as "any obligation owed or due or alleged to be owed or due from a consumer," and "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer." § 75-50. Unfair acts include "unconscionable means," *Davis Lake*, 138 N.C. App. at 296, defined in relevant part here as collecting a "fee or expense incidental to the principal debt unless legally entitled to such fee or charge." § 75-55(2).

Mr. Custer alleges that he owns property in North Carolina secured by a mortgage, Doc. 1 at ¶ 50, that he owes a debt because he is obligated to make monthly payments on the mortgage, *id.* at ¶ 27, that DMI is the servicer of the mortgage, *id.* at ¶ 51, and that he makes payments on the mortgage to DMI. *Id.* at ¶ 52. Mr. Custer further alleges that DMI charges a fee incidental to the principal when he pays his debt by phone, *id.*, that the mortgage agreement does not authorize this fee, *id.* at ¶ 53, that the fee is well above the actual cost DMI incurs to accept payment by phone, *id.* at ¶ 37, that DMI is already paid by the holder of the deed of trust to collect payments on the loan and is thus double-charging consumers by assessing an additional fee for paying by phone, *id.* at ¶ 38, and that DMI is not legally entitled to charge this fee. *Id.* at ¶¶ 53–54. This states a claim for relief under the NCDCA.

DMI makes a variety of arguments in an effort to defeat this claim. First, relying largely on a decision by another federal district court, *Brown v. Loancare, LLC*, No. 20-CV-280, 2020 WL 7389407, at *3 (W.D.N.C. Dec. 16, 2020), DMI says that Mr. Custer does not owe a debt and that DMI is not a debt collector because Mr. Custer is not in default on his mortgage. Doc. 15 at 10–12; Doc. 21 at 8–11. But after *Brown* was decided, the North Carolina Court of Appeals held that a "debt" under the NCDCA does not require a consumer to be in default. *Onnipauper*, 290 N.C. App. at 490 (stating that "the proposition that 'debt' requires the consumer to be in default, meaning the payment must be past due . . . is a misreading of 'debt'").

Next, DMI contends that the Mortgage Debt Collection and Servicing Act ("MDCSA"), N.C. Gen. Stat. §§ 45-90 to 45-95, supersedes the NCDCA as to mortgage

5

servicers and sub-servicers like DMI. Doc. 15 at 12–13; Doc. 21 at 7–8. But there is no indication in the text of the MDCSA that the legislature intended for that Act to be the exclusive statute governing mortgage loan servicers. While it does impose requirements on the timing and notice provisions for fees, § 45-91, it does not speak to or regulate the kinds of unfair and unconscionable debt collection practices that are prohibited by the NCDCA. Indeed, the MDCSA explicitly acknowledges that other laws may also regulate fee collection by home loan servicers, stating that "[a]ll fees charged by a servicer must be otherwise permitted under applicable law and the contracts between the parties." § 45-91(4).[2]

DMI says that the fee it collects when a consumer pays by phone is not unconscionable because it is legally entitled to the fee. Doc. 15 at 15–16; Doc. 21 at 11–15; *see also* § 75-55(2) (prohibiting debt collectors from collecting a fee incidental to the principal debt "unless legally entitled to such fee"). But DMI does not point to any affirmative legal authority like a provision in the mortgage, a statute, or a regulation that explicitly entitles it to collect a fee incidental to the principal debt from a consumer who pays by phone. *See Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377–78 (4th Cir. 2022) (rejecting an argument that the phrase "permitted by law" indicates only a

---

[2] DMI is correct that when two laws conflict, "a more specific statute will prevail over a general one." *LexisNexis Risk Data Mgmt. Inc. v. N.C. Admin. Office of Cts.*, 368 N.C. 180, 187, 775 S.E.2d 651, 656 (2015). But here, the two laws do not conflict, and there is nothing to indicate that the NCDCA's provisions have been repealed by implication. *See In re Halifax Paper Co.*, 259 N.C. 589, 594, 131 S.E.2d 441, 445 (1963) ("[A]n amendment by implication, or a modification of, or exception to, existing law by a later act, can occur only where the terms of a later statute are so repugnant to an earlier statute that they cannot stand together."); *Empire Power Co. v. N.C. Dep't of Env't, Health, and Nat. Res.*, 337 N.C. 569, 591, 447 S.E.2d 768, 781 (1994) (same).

6

lack of express prohibition and adopting plaintiff's view that it means "express sanction or approval" because it "aligns best with the statute").

Here, DMI's interpretation of the phrase "legally entitled" as meaning anything not explicitly prohibited by law does not align with the purpose of the NCDCA, which uses broad language over several statutory provisions to protect consumers and debtors. And in other cases where courts have addressed the issue of legal entitlement under § 75-55(2), they typically cite the statute or contractual right that provides the legal entitlement. *See, e.g.*, *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019) (holding that the defendant was legally entitled to a pay-by-phone fee because a federal statute explicitly authorizes national banks to collect the fee); *Crabtree v. Smith*, No. 16-CV-864, 2017 WL 1276069, at *5 (N.C. Ct. App. Apr. 4, 2017) (holding that a debt collector was legally entitled to a fee based on the original note securing the deed of trust).

In the alternative, DMI says it is legally entitled to charge the pay-by-phone fee because of N.C. Gen. Stat. § 24-8(a). Doc. 15 at 15–16; Doc. 21 at 14–15. That statute, however, only regulates what lenders can and cannot charge in connection with loans having principal amounts under $300,000; it says nothing about what fees servicers can and cannot charge beyond what is authorized in the loan agreement on larger loans like Mr. Custer's. *See* Doc. 1-3 at 2 (listing the principal loan amount as $451,700).[3]

---

[3] DMI relies on the *expressio unius* canon of statutory construction: expression of one implies the exclusion of another. Doc. 15 at 15. DMI would have a better argument if the lender included a provision in the loan agreement by which Mr. Custer agreed to pay convenience fees,

7

Finally, DMI contends that its pay-by-phone fee is not unfair because the fee is optional. Doc. 15 at 13–15; Doc. 21 at 11–12. Perhaps the fact that paying by phone is optional will be a relevant fact, *see Onnipauper*, 290 N.C. App. at 491 ("Whether an act is unfair depends on the facts of the case."), but it is not necessarily determinative; an unconscionable option is still unconscionable. As discussed *supra*, Mr. Custer has alleged facts tending to indicate that the fee is unfair because it is unconscionable under § 75-55(2). Doc. 1 at ¶¶ 32, 34–38, 51–54. And the cases DMI cites in support of this proposition did not evaluate whether fees were unfair because they were unconscionable under § 75-55(2). *See Waddell*, 395 F. Supp. 3d. at 685; *Brown*, 2020 WL 7389407, at *5.

Mr. Custer has stated a claim for violation of the North Carolina Debt Collection Act. DMI's motion to dismiss this claim will be denied.

VI. **Unfair and Deceptive Trade Practices Act Claim**

The purpose of Chapter 75 is "to provide civil legal means to maintain ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State." *Nobel v. Foxmoor Grp., LLC*, 380 N.C. 116, 119, 868 S.E.2d 30, 33 (2022) (cleaned up) (quoting *Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991)). To state a

---

such as those DMI charges to pay by phone. But, as noted *supra*, the loan agreement does not authorize charging this extra fee. And, as the North Carolina Supreme Court has held, application of that canon "must be applied with great caution." *Cooper v. Berger*, 371 N.C. 799, 810, 822 S.E.2d 286, 296 (2018).

claim under § 75-1.1, a plaintiff must allege: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Nobel*, 380 N.C. at 120 (quoting *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). If a plaintiff proves that a debt collector violated a provision of the NCDCA, then that violation is an unfair trade practice under § 75-1.1. *Friday v. United Dominion Realty Tr., Inc.*, 155 N.C. App. 671, 678, 575 S.E.2d 532, 536 (2003) ("If a conclusion of law is made that a debt collector violates a provision of Article 2, then that violation can be also a violation of § 75-1.1.") (cleaned up); *see also Reid v. Ayers*, 138 N.C. App. 261, 263, 531 S.E.2d 231, 233 (2000) (noting that the NCDCA is contained in Chapter 75, Article 2).

Mr. Custer has stated a plausible claim under Chapter 75. As discussed *supra*, his factual allegations are sufficient to support a claim that the fee DMI charges to pay by phone is unfair.

While Mr. Custer's factual allegations about why DMI's acts are deceptive are a good bit thinner, *see* Doc. 1 at ¶ 87, they are sufficient at this stage of the case. *See generally McFadden v. Nationstar Mortg. LLC*, No. 20-CV-166, 2022 WL 1001253, at *11 (D.D.C. Apr. 4, 2022) (noting that there is "a line of cases standing for the principle that failure to disclose who is getting the majority of a fee can constitute deception"). He alleges, for example, that DMI pays third-party vendors as little as 50 cents to process a phone or internet transaction for which it charges consumers up to $15, Doc. 1 at ¶¶ 37– 38; that DMI is already paid by the holder of the deed of trust to collect payments on the loan, *id.* at ¶¶ 24–25, thus double-charging consumers by assessing an additional fee for

9

paying by phone, *id.* at ¶ 38; and that DMI "collected these fees as though they were allowed, failing to disclose that the fees were not authorized [by the deed of trust,] [and] DMI also failed to disclose that these fees were not the actual cost of the transaction incurred by DMI." *Id.* at ¶ 54. He also alleges that DMI is not transparent with customers about these fees. *Id.* at ¶ 87. This can be reevaluated at summary judgment, when the facts about the way this service is offered are clearer.

Mr. Custer has stated a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act. DMI's motion to dismiss this claim will be denied.

It is **ORDERED** that the defendant's motion to dismiss, Doc. 14, is **DENIED**.

This the 18th day of October, 2024.

_____
UNITED STATES DISTRICT JUDGE