IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **GEORGE CUSTER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DOVENMUEHLE MORTGAGE, INC.,**<br><br>**Defendant.** | Civil Action No. 1:24-cv-00306-CCE-LPA<br>Chief District Judge Catherine C. Eagles<br>Magistrate Judge L. Patrick Auld<br><br>**[UNREDACTED] PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT AS CLASS REPRESENTATIVE, AND APPOINTMENT AS CLASS COUNSEL**<br><br>Fed. R. Civ. P. 23(a), (b)(3), (g) |


John W. Barrett (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
*jbarrett@baileyglasser.com*
*jkauffman@baileyglasser.com*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Bart Cohen (*pro hac vice*)
*bcohen@baileyglasser.com*
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 274-9420
Facsimile: (202) 463-2103

Katherine M. Aizpuru (*pro hac vice*)
Robin P. Bleiweis (*pro hac vice*)
*kaizpuru@tzlegal.com*
*rbleiweis@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Benjamin M. Sheridan (Bar No. 52734)
Jed R Nolan (Bar No. 56899)
*ben@kleinsheridan.com*
*jed@kleinsheridan.com*
**KLEIN & SHERIDAN, LC PC**
2500 Regency Parkway
Cary, NC 27518
Telephone: (919) 899-9533
Facsimile: (919) 899-9533

*Counsel for Plaintiff George Custer*

## TABLE OF CONTENTS

INTRODUCTION ........ 1
FACTS AND BACKGROUND ........ 2
LEGAL STANDARD ........ 5
ARGUMENT ........ 6
A. Plaintiff is a member of an ascertainable class. ........ 6
B. Plaintiff satisfies the Rule 23(a) requirements. ........ 7
1. Numerosity ........ 7
2. Common questions of law or fact ........ 7
3. Typicality of claims ........ 9
4. Adequacy of representation ........ 10
C. Plaintiff satisfies the Rule 23(b)(3) requirements. ........ 12
1. Common issues predominate over individual issues. ........ 12
2. A class action is a superior method of adjudication. ........ 15
D. Appointment of Class Representative and Class Counsel ........ 16
CONCLUSION ........ 18

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 6, 10, 12, 15

*Brantmeier v. Nat'l Collegiate Athletic Assoc.*,
2025 WL 2108638 (M.D.N.C. July 28, 2025) .......... 9, 10, 15, 16

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
582 U.S. 497 (2017) .......... 15

*Carolina Youth Action Project v. Wilson*,
60 F.4th 770 (4th Cir. 2023) .......... 7

*Custer v. Dovenmuehle Mortg., Inc.*,
2024 WL 4528187 (M.D.N.C. 2024) .......... 17

*Deiter v. Microsoft Corp*.,
436 F.3d 461 (4th Cir. 2006) .......... 10

*Ealy v. Pinkerton Gov't Servs., Inc*.,
514 F. App'x 299 (4th Cir. 2013) .......... 12

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) .......... 7

*Erica P. John Fund, Inc. v. Halliburton Co*.,
563 U.S. 804 (2011) .......... 12

*Franco v. Progressive Cas. Ins. Co.*,
2025 WL 1400324 (M.D.N.C. May 14, 2025) .......... *passim*

*Gariety v. Grant Thornton, LLP*,
368 F.3d 356 (4th Cir. 2004) .......... 15

*Gunnells v. Healthplan Servs., Inc*.,
348 F.3d 417 (4th Cir. 2003) .......... 12

*Krakauer v. Dish Network L.L.C*.,
311 F.R.D. 384 (M.D.N.C. 2015) .......... 12

*Montesi v. Seterus, Inc*.,
Civ. A. No. 50-2015-CA-010910-XXXX-MB
(Fla. Cir. Ct. Palm Beach Cnty., March 27, 2019) .......... 1

*Nobel v. Foxmoor Grp., LLC*,
868 S.E.2d 30 (N.C. 2022) ........ 14

*Onnipauper LLC v. Dunston*,
892 S.E.2d 487 (N.C. App. 2023),
*writ denied, review denied*, 900 S.E.2d 674 (N.C. 2024) ........ 13

*Peters v. Aetna Inc.*,
2 F.4th 199 (4th Cir. 2021) ........ 6

*Sheridan v. Ally Financial, Inc.*,
2025 WL 2055750 (S.D. W. Va. July 22, 2025) ........ 1

*Tatum v. R.J. Reynolds Tobacco Co.*,
254 F.R.D. 59 (M.D.N.C. 2008) ........ 9

*Torliatt v. Ocwen Loan Servicing, LLC*,
570 F. Supp. 3d 781 (N.D. Cal. 2021) ........ 1

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 ........ 12

*United Labs., Inc. v. Kuykendall*,
437 S.E.2d 374 (N.C. 1993) ........ 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 7

*Wilder v. Squires*,
315 S.E.2d 63 (N.C. App. 1984) ........ 14, 15

*Williams v. Lakeview Loan Servicing, LLC*,
2022 WL 1216577 (S.D. Tex. Feb. 8, 2022) ........ 1

*Williams v. Lakeview Loan Servicing, LLC*,
2022 WL 950875 (S.D. Tex. Mar. 30, 2022) ........ 1

*In re Zetia (Ezetimibe) Antitrust Litig.*,
7 F.4th 227 (4th Cir. 2021) ........ 7

**Statutes**

N.C. Gen. Stat. § 75-1.1 ........ 5, 14

N.C. Gen. Stat. § 75-55(2) ........ 4, 12, 13

## INTRODUCTION

This putative class action asserts claims under North Carolina consumer protection law, on behalf of North Carolina residents, challenging Defendant Dovenmuehle Mortgage, Inc.'s ("DMI") practice of charging its loan-servicing customers fees when those customers make payments by telephone ("pay-to-pay fees"). All of these loans are governed by mortgage loan agreements that are uniform as to all class members ("Uniform Mortgages"). As alleged, neither the Uniform Mortgages nor applicable law authorize DMI to charge these pay-to-pay fees. Although most mortgage servicers have abandoned charging these fees, DMI continues to charge them to its North Carolina customers.

Given the commonality of the claims and the standardized nature of the practices and mortgage contracts at issue, these claims are appropriate for adjudication on a classwide basis—a conclusion reached by courts within and outside this judicial circuit. *Sheridan v. Ally Financial, Inc.*, Civ. A. No. 5:23-cv-00616, 2025 WL 2055750 (S.D. W. Va. July 22, 2025); *Williams v. Lakeview Loan Servicing, LLC*, Civ. A. No 4:20-cv-1900, 2022 WL 1216577 (S.D. Tex. Feb. 8, 2022), *mem. and rec. adopted*, 2022 WL 950875 (S.D. Tex. Mar. 30, 2022); *Torliatt v. Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d 781 (N.D. Cal. 2021); *Montesi v. Seterus, Inc.*, Civ. A. No. 50-2015-CA-010910-XXXX-MB (Fla. Cir. Ct. Palm Beach Cnty.), Order Granting Class Cert., March 27, 2019. Ex. 1.

As shown below, all Rule 23(a) and (b)(3) requirements are met, and Plaintiff respectfully requests the Court grant his motion for class certification, appoint Plaintiff George Custer as class representative, and appoint his counsel as class counsel.

## FACTS AND BACKGROUND

Plaintiff George Custer owns property in North Carolina secured by a Note and Deed of Trust. Ex. 2[1] (Note); Ex. 3 (Deed of Trust). Defendant DMI is a large servicer of residential mortgages, including Mr. Custer's mortgage. Ex. 4 (DMI's Response to Request for Admission No. 1).

As a matter of corporate policy, DMI collects pay-to-pay fees of $9.50 (by interactive voice recognition) or $11.50 (by customer service representative) when residential mortgage borrowers pay their monthly mortgage by phone. Ex. 5 (spreadsheet of fees collected from NC borrowers); Ex. 6 (fee schedule); Ex. 7 (Smith Dep. at 44:13-45:3).

In September 2023, when Mr. Custer paid his mortgage over the telephone, DMI charged him a fee of $11.50, Ex. 8 (DMI Internal Fee Record), despite the fact his mortgage agreement does not authorize such fees. Ex. 2 (Note); Ex. 3 (Deed of Trust). DMI [redacted]. Ex. 9, at DMI_CUSTER_0002002 (Speedpay, Inc. Contract); Ex. 10 ([redacted]); Ex. 11 (Braun Tr. 45:4-14, 58:11-21, 62:8-63:1). But the Uniform Mortgages expressly preclude DMI from charging any fees that are not explicitly allowed by those mortgage terms or applicable law. Ex. 3 (Deed of Trust) at ¶ 14 ("Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law."), ¶ J (defining

[1] The exhibits cited herein are attached to the Declaration of Katherine M. Aizpuru.

"Applicable Law" to include "all controlling applicable federal, state and local statutes"). DMI nevertheless takes advantage of its position of power over homeowners and demands unjustified pay-to-pay fees.[2]

Payments by check cost servicers like DMI anywhere between $1 and $2 in processing and other fees. Ex. 12, at p. 15 (AFP Report). To save that cost and achieve other efficiencies, servicers typically offer borrowers the option to pay by phone or online. Although many offer online and phone payments for free, DMI is one of a dwindling minority of mortgage servicers still charging pay-to-pay fees.

Borrowers, lawmakers, regulators, and attorneys general have condemned pay-to-pay fees in recent years. In 2017, the CFPB issued guidance stating that pay-by-phone fees may violate state and federal law. Ex. 13 (2017 CFPB guidance). In 2022, FTC Chair Lina Khan observed that "[n]o one has ever felt that a 'convenience fee' was convenient. Companies should compete to provide the best quality at the best price, not to see who can squeeze the most added expenses out of consumers." Ex. 14 (FTC Statement). That same year, then-Attorney General Josh Stein stated that "[m]ortgage servicers set convenience fees at will to excessively profit off homeowners, and homeowners are stuck with them. I'm pleased that the CFPB is seeking to learn more about how excess fees harm North Carolinians, and I hope it will take action to put an end to these exploitative costs." Ex. 15 (NC AG Stein Public Stmt.).

---

[2] Plaintiff's counsel have litigated and settled over a dozen actions with other loan servicers in which the defendant agreed to offer telephone or internet payment methods free of charge as a result of voluntary cessation or injunctive relief in a settlement agreement. *See* Declaration of James Kauffman, ¶ 10.

Based on these allegations, Plaintiff seeks class certification for the two Counts pled in his Complaint as follows:

> All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by DMI, (3) and who paid a pay-to-pay fee to DMI when making a payment on their mortgage by telephone or an Interactive Voice Response system during the applicable statutes of limitations through the date a class is certified.[3]

Plaintiff alleges in Count One that DMI's practice of collecting pay-to-pay fees violates the North Carolina Debt Collection Act's ("NCDCA") bar on debt collectors collecting "all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. Gen. Stat. § 75-55(2). Plaintiff alleges that DMI knew the Uniform Mortgages did not expressly authorize DMI to collect the fees, that the fees were merely incidental to the underlying debt, and that DMI knew it was collecting fees that far exceeded the actual cost to process the telephone payments.[4] Compl. ¶ 82.

---

[3] This definition conforms the proposed class definition in the Complaint (¶ 65) to evidence obtained in discovery showing that DMI does not charge pay-to-pay fees for payments made through the internet.

[4] The relevant portion of Section 75-55(2) states:

> No debt collector shall collect or attempt to collect any debt by use of any unconscionable means. Such means include, but are not limited to, the following:
> . . . . .
> (2) Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge. Nothing in

Plaintiff alleges in Count Two that by collecting the fees, DMI violated the North Carolina Unfair and Deceptive Trade Practices Act, which prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" N.C. Gen. Stat. § 75-1.1 (referred to as "Chapter 75").

## LEGAL STANDARD

The proponent of class certification "must affirmatively demonstrate their compliance" with Rule 23. *Franco v. Progressive Cas. Ins. Co.*, No. 1:24-cv-225, 2025 WL 1400324, *4 (M.D.N.C. May 14, 2025). This requires threshold showings that the plaintiff is a member of the class and that the class members are ascertainable. *Id.* The movant must also meet the Rule 23(a) requirements of numerosity, commonality, typicality, adequacy of representation; and the Rule 23(b)(3) showings of predominance of common issues and the superiority of the class action device. *Id.* Further, the Court must "rigorously assess the proffered evidence," but has "wide discretion in evaluating whether the Rule 23 requirements have been met." *Id.* (cleaned up).

---

this section shall be construed to prohibit the collection of filing fees, service of process fees, or other court costs actually incurred. The collection of such fees is not a violation of this Article or of Article 15 of Chapter 53 of the General Statutes.

## ARGUMENT

### A. Plaintiff is a member of an ascertainable class.

Certification under Rule 23 implicitly requires a threshold showing that the class members are readily identifiable or ascertainable, and that the class representative is a member of the proposed class. *Franco,* 2025 WL 1400324, *4 (citing *Peters v. Aetna Inc*., 2 F.4th 199, 241–42 (4th Cir. 2021) (recognizing an "implicit threshold requirement" that class members be "readily identifiable"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

Plaintiff is a member of the proposed class. His name and identifying information appear on a spreadsheet that DMI produced listing all persons whose residential mortgages securing property in North Carolina were serviced by DMI, and from whom DMI collected a pay-by-phone fee. For example, the below screenshot of DMI's data shows a pay-to-pay fee DMI charged Plaintiff on September 8, 2023, including the payment amount ($416.28), the fee amount ($11.50), the total amount paid ($427.78), and the date:

| | | | | | |
|---|---|---|---|---|---|
| CUSTER, GEORGE | 416.28 | 11.5 | 427.78 | 9/8/2023 | NC |

*See* Ex. 5 (servicing data showing fees); Ex. 8 (excerpts showing Plaintiff's fees).[5]

This evidence satisfies the initial certification threshold.

[5] The above screenshot is an excerpt from Exhibit 8.

### B. Plaintiff satisfies the Rule 23(a) requirements.

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Although there is no minimum number of potential class members that fulfills the numerosity requirement, "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.,* 7 F.4th 227, 234 (4th Cir. 2021) (cleaned up).

Here, the data from DMI's servicing platform includes 3,444 unique loan numbers (indicating 3,444 class members in North Carolina) who were charged a pay-to-pay fee on 11,845 transactions. Ex. 5 (spreadsheet of class data). Individual joinder of these persons is impracticable. Numerosity is satisfied.

#### 2. Common questions of law or fact

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." To establish commonality, "the plaintiff [must] demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-51 (2011) (cleaned up). "Even a single common question will do," *id*. at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (cleaned up); *see also Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023) ("Commonality requires [that] an entire set of claims depend upon a common contention that is capable of classwide resolution.") (cleaned up).

Here, given the uniformity of the Uniform Mortgages and the fact that all claims arise under the same law, the common questions are many, and satisfy Rule 23(a)(2):

- Did DMI collect all or any part of its fees or charges for services rendered from Plaintiff and the class?
- Do the Uniform Mortgages authorize DMI to collect pay-to-pay fees?
- Does any law or statute authorize the fees?
- Is DMI's practice of assessing the fees deceptive, unfair, and illegal?
- Was DMI's charging of these fees "in or affecting commerce"?
- Should class members receive a statutory penalty under the NCDCA, and if so, in what amounts?

The answers to these questions will not vary from class member to class member. For example, if a pay-to-pay fee is part of a "fee or charge for services rendered" or is "incidental to the principal debt" as to Mr. Custer, the same would be true for the rest of the class.

And not only do the class members' claims implicate common legal issues, they also can be proven (or disproven) through common proof. At summary judgment and trial, Plaintiff and the class can prove their claims using common evidence including:

- Uniform Mortgages, *see* Exs. 2, 3;
- Welcome letters sent by DMI alerting class members to DMI's commencement of servicing the loans;

- Uniform transaction data from DMI's servicing software platform, showing each pay by phone transaction collected from class members, *see* Ex. 5;
- DMI's internal documents and testimony of its corporate witnesses regarding its standardized, corporate-wide fee policies, Ex. 6 (fee schedule), Ex. 11 (testimony of Glen Braun), Ex. 7 (testimony of Lisa Smith);
- DMI's contract with Speedpay, Inc. establishing DMI's cost per telephone transaction at less than $0.90, Ex. 9 (Speedpay, Inc. contract); and
- [redacted] Ex. 10 ([redacted]).

In short, because common questions can be resolved as to the class through common proof, the commonality element is satisfied. *See, e.g.*, *Brantmeier v. Nat'l Collegiate Athletic Assoc.*, 2025 WL 2108638, at *8 (M.D.N.C. July 28, 2025) (finding commonality satisfied where the "key" legal questions in the case "can be answered with common evidence").

**3. Typicality of claims**

Under Rule 23(a)(3), typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The requirement "is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). Thus, "[t]he essence of the typicality requirement is captured by the notion

that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter v. Microsoft Corp*., 436 F.3d 461, 466 (4th Cir. 2006) (cited authority omitted). The claims of the class representative and the claims of the class need not "be perfectly identical or perfectly aligned." *Id.* at 467.

Here again, there is sufficient alignment between the Plaintiff's claims and those of class members. All have Uniform Mortgages, all were charged pay-by-phone fees, and all claims arise under the same North Carolina laws. *See Brantmeier*, 2025 WL 2108638, at *8-9 (finding typicality where each class member alleged the same injury under the same statute). Typicality is satisfied here.

**4. Adequacy of representation**

Rule 23(a)(4) requires that the class representative and class counsel "fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent," as well as to assess the "competency and conflicts of class counsel." *Franco*, 2025 WL 1400324, *6 (citing *Amchem,* 521 U.S. at 625, 626 n. 20).

Here, there are no known conflicts of interest between Mr. Custer and any proposed class member. Mr. Custer testified at his deposition that he understands the duties of a class representative and is prepared to put the class's interests ahead of his own. *See* Ex. 16 (Custer Dep. 103:10-104:2, 104:6-105:10, 107:23-112:11, 115:9-118:13) (discussing the case and class representative duties). He participated in a pre-suit investigation, reviewed the Complaint, worked with counsel on discovery responses, searched for and produced documents, and prepared for and sat for a video deposition,

which required a lengthy drive to Clayton, Georgia to secure reliable internet. *See* Aizpuru Decl. ¶ 28; *see also* Ex. 16 (Custer Dep. 119:14-124:10). This establishes his adequacy as class representative.

Moreover, notwithstanding putative class counsel's error regarding the Court's rules governing the timing of a motion for class certification, they are well-suited to represent the class's interests, and have served in that role in many class actions, including pay-to-pay cases like this one. *See* Kauffman Decl. ¶¶ 2-11 (describing Bailey & Glasser LLP's qualifications); Aizpuru Decl. ¶¶ 29-42 (describing Tycko & Zavareei LLP's qualifications); Declaration of Benjamin Sheridan ¶¶ 4-17 (describing Klein & Sheridan, LC PC's qualifications). For example, Bailey & Glasser LLP have been appointed class counsel in other cases involving pay-to-pay fees, where class certification was contested. *See* Kauffman Decl. ¶¶ 7-10. And Tycko & Zavareei LLP and Klein & Sheridan, LC PC have also achieved outstanding results for certified settlement classes of borrowers in pay-to-pay fee cases like this one. *See* Aizpuru Decl. ¶¶ 31, 34; Sheridan Decl. ¶¶ 9, 16. Plaintiff's counsel satisfy the standard under Rule 23(a)(4).

### C. Plaintiff satisfies the Rule 23(b)(3) requirements.

#### 1. Common issues predominate over individual issues.

Plaintiff requests certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." As this Court recently stated, the predominance inquiry tests whether the proposed class is sufficiently cohesive:

> Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "[C]ommon issues of liability may still predominate even when some individualized inquiry is required." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013); *see also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 399 (M.D.N.C. 2015) ("Predominance ... does not require all issues to be common." (cleaned up)); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one ... [that] is susceptible to generalized, class-wide proof." *Tyson Foods*, [*Inc. v. Bouaphakeo*, 577 U.S. 442,] 453 (cleaned up).

*Franco*, 2025 WL 1400324, *6.

To assess whether common questions predominate over individual questions, courts "look to the elements of the cause of action[.]" *Id.*, at *7 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)).

**Count One.** Plaintiff alleges DMI's practice of collecting pay-to-pay fees is unconscionable in violation of the NCDCA, N.C. Gen. Stat. § 75-55(2). Compl. ¶¶ 77-83. That provision declares unconscionable the practice of debt collectors "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered [or] any interest or other charge, fee or expense incidental to

the principal debt unless legally entitled to such fee or charge." N.C. Gen. Stat. § 75-55(2).

All claims brought under the NCDCA require (1) a consumer; (2) that owes a debt; (3) to a debt collector; (4) the debt collector committed an unfair act; (5) that affects commerce; and (6) that proximately injures the consumer. *Onnipauper LLC v. Dunston*, 892 S.E.2d 487, 491-93 (N.C. App. 2023), *writ denied, review denied*, 900 S.E.2d 674 (N.C. 2024) (cited authority omitted). And more specifically, a claim under Section 75-55(2) requires evidence that DMI collected or attempted to collect from the consumer (7) all or any part of the debt collector's fee or charge for services rendered, or (8) any charge, fee, or expense incidental to the principal debt unless legally entitled to such fee or charge.

Items (1), (2), and (5) are likely undisputed—or if they are disputed, can be answered on a classwide basis without resort to individualized evidence. Item (3) presents a straightforward legal question for the Court. Items (4), (6), (7) and (8) can be proven through common questions answered by common proof. Is DMI collecting from the consumer all or part of its fee or charge for collecting the debt? This can be shown through evidence detailing DMI's proffered justification for or itemization of its pay-by-phone fees. When it charges a pay-by-phone fee, is DMI charging an expense "incidental to the principal debt"? Again, this looks to DMI's asserted basis for charging the fees. Is DMI legally entitled to charge the fees? DMI has only the rights granted by the mortgage agreement, and the mortgage agreements here are uniform. Were the class members

injured? This question can be answered through proof of the amounts of DMI's charges to each class member.

It is frankly difficult to envision how *any* individualized questions regarding Count One are implicated here.

**Count Two.** Count Two alleges DMI violates the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (referred to as "Chapter 75"), which declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" *Id.* Plaintiff alleges the pay-to-pay fee violates Chapter 75 because it is deceptive, Compl. ¶ 87, unfair, *id.* ¶¶ 88–93, and illegal, *id.* ¶ 94.

The elements of a Chapter 75 claim are: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Franco,* 2025 WL 1400324, *7 (quoting *Nobel v. Foxmoor Grp., LLC*, 868 S.E.2d 30, 33 (N.C. 2022)).

By its terms, this statute looks broadly at a *defendant's* "act[s] or practice[s]," not at any specific conduct by an individual consumer. Moreover, whether an act or practice can be characterized as "unfair or deceptive" is also a high-level inquiry.[6] A practice is

[6] Assessing whether a practice is unfair or deceptive involves two steps: first, a jury decides factual issues, including whether the defendant committed the alleged acts, and whether they caused harm to the plaintiff; second, the court determines as a matter of law whether the proven facts constitute unfair or deceptive practices. *See, e.g.*, *United Labs., Inc. v. Kuykendall*, 437 S.E.2d 374, 377 (N.C. 1993); *Wilder v. Squires*, 315 S.E.2d 63, 68 (N.C. App. 1984).

unfair “when it offends public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,” while a practice is deceptive “‘if it has the capacity or tendency to deceive[.]’” *Wilder*, 315 S.E.2d at 66 (quoted authority omitted).

None of these questions are individualized or implicate evidence specific to any single class member.

* * * * *

In sum, neither Count One nor Count Two focuses on conduct by any individual class member, such as whether an individual relied on DMI’s conduct, but instead looks to the conduct of DMI and its unified corporate practices and policies, a fact that makes these claims uniquely suited to class adjudication. *Cf. Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362-63 (4th Cir. 2004) (recognizing the barriers to certifying a class in cases requiring proof of individualized reliance).

**2. A class action is a superior method of adjudication.**

The superiority requirement looks at whether the class action “would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.” *Brantmeier*, 2025 WL 2108638, at *9 (quoting *Amchem*, 521 U.S. at 615). “Superiority reflects the policy at the core of class actions, which were designed to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.” *Brantmeier*, 2025 WL 2108638, at *9 (quoting *Cal. Pub. Emps.’ Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 513 (2017)). Rule 23(b)(3) provides a non-exclusive list for the Court to consider in

determining whether the superiority requirement is satisfied, including (A) the class members' interests in individually controlling separate actions, (B) the extent and nature of litigation already underway, (C) the desirability or undesirability of concentrating the litigation in the particular forum, and (D) the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3).

Here, DMI's fees are $9.50 and $11.50. *See* Ex. 6 (fee schedule). Requiring individual class members to bring separate lawsuits over DMI's pay-to-pay fees would be impracticable and unmanageable, not to mention economically infeasible for most class members. On the other hand, a class action before this Court allows for finality for all members of the proposed class and DMI. This is a "pretty simple" class action, *Brantmeier*, 2025 WL 2108638, at *12, and superiority is satisfied.

**D. Appointment of Class Representative and Class Counsel**

As stated above, Plaintiff George Custer is a class member and is proposed as class representative. Regarding the decision to appoint class counsel, Rule 23(g) requires consideration of "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A). The Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B).

Here, each factor is satisfied. First, Plaintiff's counsel have performed substantial work and invested significant resources on behalf of the class. They thoroughly investigated Plaintiff's claims, researched North Carolina law, reviewed Plaintiff's documents prior to filing, and provided notice to DMI of Plaintiff's claims; briefed DMI's unsuccessful motion to dismiss, *see Custer v. Dovenmuehle Mortg., Inc.*, 2024 WL 4528187 (M.D.N.C. Oct. 18, 2024); obtained classwide discovery for class certification and trial; deposed three corporate representatives and DMI's expert witness; prepared for and defended the depositions of Plaintiff and his wife; and prepared a mediation brief and participated in a mediation. Aizpuru Decl. ¶¶ 22-28. All told, counsel have invested over 750 hours and fronted all litigation costs to date.

Second, as described above and in their declarations, Plaintiff's counsel have significant experience in complex litigation generally, class action litigation specifically, and pay-to-pay fee cases in particular. *See* Kauffman Decl. ¶¶ 2-11; Aizpuru Decl. ¶¶ 29-42; Sheridan Decl. ¶¶ 4-16. In fact, in one case litigated in this district that resulted in settlement, the presiding judge stated, "I don't think I've ever seen a class action that . . . reflects so well on both the parties and the counsel." Ex. 18 at 3:16-20.

Third, in large part because of their experience in pay-to-pay fee litigation, Plaintiff's counsel know the evidence required to support the claims and the applicable law. *See* Kauffman Decl. ¶¶ 7-10; Aizpuru Decl. ¶¶ 30-31, 34; Sheridan Decl. ¶¶ 9, 16.

Finally, Plaintiff's counsel have invested and will continue to invest substantial resources on behalf of the class. They are attorneys at established and experienced law firms with the resources to litigate a case of this magnitude on behalf of the proposed

class. Kauffman Decl. ¶¶ 2, 9-10; Aizpuru Decl. ¶¶ 29-32, 42; Sheridan Decl. ¶¶ 9, 13, 16.

## CONCLUSION

This straightforward consumer protection case involves common legal questions that can be answered through common proof. Each Rule 23(a) and 23(b)(3) factor is satisfied. Plaintiff therefore requests the Court grant this motion, certify the class, appoint Plaintiff as class representative, and appoint his counsel as class counsel. Plaintiff also requests the Court direct the parties to confer regarding class notice and submit proposed notice and a notice plan within 14 days of the entry of a class certification order.

Dated: September 11, 2025

Respectfully Submitted,


John W. Barrett (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
*jbarrett@baileyglasser.com*
*jkauffman@baileyglasser.com*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Bart Cohen (*pro hac vice*)
*bcohen@baileyglasser.com*
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 274-9420
Facsimile: (202) 463-2103

Benjamin M. Sheridan (Bar No. 52734)
Jed R Nolan (Bar No. 56899)
*ben@kleinsheridan.com*
*jed@kleinsheridan.com*
**KLEIN & SHERIDAN, LC PC**
2500 Regency Parkway
Cary, NC 27518
Telephone: (919) 899-9533
Facsimile: (919) 899-9533

Katherine M. Aizpuru (*pro hac vice*)
Robin P. Bleiweis (*pro hac vice*)
*kaizpuru@tzlegal.com*
*rbleiweis@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 4,447 words (not excluding material that may be excluded), as counted by the Word Count feature in Microsoft Word.

John W. Barrett

## CERTIFICATE OF SERVICE

I certify that, on September 11, 2025, a copy of the foregoing document was filed with the Clerk of the Court and upon counsel of record using the CM/ECF System (as to the redacted version), and as to the unredacted version, by first class mail upon the Clerk of the Court consistent with Standing Order 41 and the Local Rules governing sealed documents, and by email upon counsel of record by agreement of the parties.

John W. Barrett