# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| **GEORGE CUSTER,** | ) Civil Action No. 1:24-cv-00306-CCE-LPA |
|  | ) Chief District Judge Catherine C. Eagles |
| **Plaintiff,** | ) Magistrate Judge L. Patrick Auld |
|  | ) |
| **v.** | ) **[CORRECTED] PLAINTIFF'S** |
|  | ) **MEMORANDUM IN OPPOSITION TO** |
| **DOVENMUEHLE MORTGAGE,** | ) **DEFENDANT DOVENMUEHLE** |
| **INC.,** | ) **MORTGAGE, INC.'S MOTION FOR** |
|  | ) **SUMMARY JUDGMENT** |
| **Defendant.** | ) |
|  | ) |

John W. Barrett (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
*jbarrett@baileyglasser.com*
*jkauffman@baileyglasser.com*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Bart Cohen (*pro hac vice*)
*bcohen@baileyglasser.com*
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 274-9420
Facsimile: (202) 463-2103

Katherine M. Aizpuru (*pro hac vice*)
Robin P. Bleiweis (*pro hac vice*)
*kaizpuru@tzlegal.com*
*rbleiweis@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Benjamin M. Sheridan (Bar No. 52734)
Jed R. Nolan (Bar No. 56899)
*ben@kleinsheridan.com*
*jed@kleinsheridan.com*
**KLEIN & SHERIDAN, LC PC**
2500 Regency Parkway
Cary, NC 27518
Telephone: (919) 899-9533
Facsimile: (919) 899-9533

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    FACTS ............................................................................................... 2

III.   LEGAL STANDARD ...................................................................... 3

IV.   ARGUMENT .................................................................................... 3

     A.    DMI has not shown legal entitlement ........................................ 3

          1.    Section 24-9 governs loan origination and usury .............................. 4

               a.  Text ...................................................................... 6

               b.  Legislative History ..................................................... 9

               c.  Case Law ................................................................ 12

               d.  Policy ..................................................................... 13

          2.    Even if Section 24-9 applies, it is not affirmative entitlement ......... 16

          3.    DMI's purported oral agreements violate the statute of frauds ........ 17

          4.    An unconscionable option is still unconscionable ........................... 18

     B.    The NCDCA is not an exclusive remedy .................................... 20

     C.    Summary judgment is not warranted on § 75-1.1 ...................... 21

V.    CONCLUSION ................................................................................ 22

i

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Abbington SPE, LLC v. U.S. Bank, N.A.*,
    352 F. Supp. 3d 508 (E.D.N.C. 2016) ..................................................................... 12

*Alexander v. Carrington Mortg. Servs.*,
    23 F.4th 370 (4th Cir. 2022) ........................................................ *passim*

*Austin v. Lakeview Loan Servicing LLC*,
    2020 WL 7256564 (D. Md. Dec. 10, 2020) ............................................................ 15

*Bandy v. City of Salem*, *Virginia*,
    59 F.4th 705 (4th Cir. 2023) ..................................................................................... 3

*Baxter v. AmeriHome Mortg. Corp., LLC*,
    617 F. Supp. 3d 346 (D. Md. 2022) ....................................................................... 19

*Brown v. Loancare, LLC*,
    2020 WL 7389407 (W.D.N.C. Dec. 16, 2020) ...................................................... 19

*Bumpers v. Cmty. Bank of Northern Virginia*,
    367 N.C. 81 (2013) ................................................................................................ 22

*Caldwell v. Freedom Mortg. Corp.*,
    2020 WL 4747497 (N.D. Tex. Aug. 14, 2020) ...................................................... 19

*Clifford v. River Bend Plantation, Inc.*,
    312 N.C. 460 (1984) .............................................................................................. 17

*Crabtree v. Smith*,
    2017 WL 1276069 (N.C. Ct. App. Apr. 4, 2017) .................................................. 15

*In re Creech*,
    513 B.R. 482 (Bankr. E.D.N.C. 2014) .................................................................. 20

*Custer v. Dovenmuehle Mortg., Inc.*,
    2024 WL 4528187 (M.D.N.C. Oct. 18, 2024) ................................................ *passim*

*DeSimone v. Select Portfolio Servicing, Inc.*,
    748 F. Supp. 3d 136 (E.D.N.Y. 2024) ................................................................... 19

*Fides, A.G. v. Comm'r of Internal Revenue*,
    137 F.2d 731 (4th Cir. 1943) ................................................................................... 9

*Glover v. Ocwen Loan Servicing, LLC,*
    127 F.4th 1278 (11th Cir. 2025) ................................................................. 14, 17

*In re Harvest Oaks Drive Assocs., LLC,*
    2011 WL 124495 (Bankr. E.D.N.C. Jan. 14, 2011)..................................... 12

*Henson v. Green Tree Servicing LLC,*
    676 S.E.2d 615 (2009) .................................................................................. 21

*Jones v. PHH Mortg. Corp.,*
    2024 WL 3639325 (D.N.J. July 31, 2024) .................................................. 19

*Knapp v. PHH Mortg. Corp.,*
    2025 WL 1174947 (D. Or. Apr. 18, 2025) .................................................. 14

*Lindblom v. Santander Consumer USA, Inc.,*
    2016 WL 2841495 (E.D. Cal. May 9, 2016) ............................................... 18

*Lish v. Amerihome Mortg. Co., LLC,*
    2020 WL 6688597 (C.D. Cal. Nov. 10, 2020)............................................. 19

*Lunsford v. Mills,*
    367 N.C. 618 (2014) ...................................................................................... 9

*McFadden v. Nationstar Mortg. LLC,*
    2021 WL 3284794 (D.D.C. July 30, 2021).................................... 17, 18, 19

*NCNB Nat'l Bank of N.C. v. Tiller,*
    814 F.2d 931 (4th Cir. 1987) ...................................................................... 10

*In re Paylor,*
    604 B.R. 222 (Bankr. M.D.N.C. 2019)....................................................... 12

*Reid v. Ayers,*
    138 N.C. App. 261 (2000).............................................................................. 13

*Sain v. Adams Auto Grp.,*
    781 S.E.2d 655 (N.C. Ct. App. 2016) ......................................................... 21

*Salmons, Inc. v. First Citizens Bank & Trust Co.,*
    2011 WL 4738656 (E.D. Va. Oct. 7, 2011)............................................. 1, 22

*SEC v. Melton,*
    2025 WL 1135180 (M.D.N.C. Apr. 17, 2025) .............................................. 3

iii

*SED Holding, LLC v. 3 Star Props., LLC,*
  246 N.C. App. 632 (2016).........................................................................7

*State v. Lutterloh,*
  171 N.C. App. 516 (2005).........................................................................14

*Stevenson v. City of Durham,*
  281 N.C. 300 (1972) ................................................................................11

*Sturdivant v. N.C. Dep't of Pub. Safety,*
  386 N.C. 939 (2024) ..................................................................................6

*Swindell v. Fed. Nat'l Mortg. Ass'n,*
  330 N.C. 153 (1991) ..................................................................................4

*Trayford v. N.C. Psych. Bd.,*
  174 N.C. App. 118 (2005).......................................................................6, 9

*W. Raleigh Grp. v. Massachusetts Mut. Life Ins. Co.,*
  809 F. Supp. 384 (E.D.N.C. 1992)...........................................................12

*Waddell v. U.S. Bank Nat'l Ass'n,*
  395 F. Supp. 3d 676 (E.D.N.C. 2019)......................................................19

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1) ...............................13

Mortgage Debt Collection and Servicing Act,
  N.C. Gen. Stat. §§ 45-90 *et seq.*..........................................................6, 14

N.C. Gen. Stat. § 22-2 ........................................................................................17

Interest, N.C. Gen. Stat. § 24-1 *et seq.* ...................................................*passim*

N.C. Gen. Stat. § 45-36.7(h)...............................................................................16

North Carolina Consumer Debt Collection Act,
  N.C. Gen. Stat. § 75-50 *et seq.*............................................................*passim*

North Carolina Unfair Deceptive Trade Practices Act,
  N.C. Gen. Stat. § 75-1.1 *et seq.*...........................................................*passim*

Secure and Fair Enforcement Mortgage Licensing Act,
  N.C. Gen. Stat. §§ 53-244.010–.144......................................................6, 12

Truth in Lending Act, 15 U.S.C. § 1605(a) ..................................................... 5

**Regulations**

12 C.F.R. § 7.4002 ............................................................................................. 19

12 C.F.R. § 7.4008(e)(4) .................................................................................... 19

12 C.F.R. § 1026.2(a)(24) ................................................................................... 8

**Other Authorities**

2003 North Carolina General Assembly,
*Summaries of Substantive Ratified Legislation* (2003),
    https://webservices.ncleg.gov/ViewDocSiteFile/56394 ............................ 10

H.B. 425, 1963 Gen. Assemb. (N.C. 1963)
*https://www.ncleg.net/EnactedLegislation/SessionLaws/*
    *HTML/1963-1964/SL1963-753.html* ....................................................... 9

Session Law 2003-401, HB 1182 (2003),
    https://www.ncleg.gov/Sessions/2003/Bills/House/PDF/H1182v6.pdf ..................... 10

Senate Judiciary I Committee, Minutes (1999)
    https://webservices.ncleg.gov/ViewDocSiteFile/65966 ............................ 10

# I. INTRODUCTION

Defendant Dovenmuehle Mortgage, Inc. ("DMI") does not deny Plaintiff's uniform mortgage agreement does not reference (much less explicitly authorize) pay-to-pay fees. DMI does not deny it nevertheless charged pay-to-pay fees to Plaintiff and the class members. And DMI does not deny it never disclosed its fees vastly exceed its costs. DMI does not (and cannot) dispute these material facts that are determinative of DMI's liability. Instead, DMI offers three primary legal arguments. None has merit.

***First***, DMI advances a novel, unsupported expansion of N.C. Gen. Stat. § 24-9(b), a usury statute governing the fees that lenders may include in a loan agreement. Though § 24-9(b) does not mention servicers, debt collectors, or debt collector fees, DMI contends without citation that—notwithstanding North Carolina's carefully constructed statutory framework governing mortgage servicers and debt collectors—this usury law gives DMI a blanket authorization to invent and charge new fees. DMI is wrong. Its right to collect fees is governed not by Chapter 24, regulating "lenders," but by the North Carolina Consumer Debt Collection Act ("NCDCA"), regulating debt collectors. And the NCDCA, in turn, requires affirmative legal authority entitling *DMI* to collect fees, such as an express provision of the loan agreement or a statute relating to debt collectors. *See Custer v. DMI Mortg., Inc.*, 2024 WL 4528187, at \*3 (M.D.N.C. Oct. 18, 2024). At most, § 24-9(b) might have allowed the original lender to add pay-to-pay fees to Plaintiff's loan agreement at the time of his loan. *See Custer*, 2024 WL 4528187, at \*3 (noting that the related § 24-8(a) governs "what lenders can and cannot charge," and "says nothing about what fees servicers

1

can and cannot charge beyond what is authorized in the loan agreement on larger loans"). But it does not allow DMI to charge pay-to-pay fees now.

**Second**, DMI again raises its failed argument that pay-to-pay fees are permissible because the "deed of trust does not expressly prohibit" them. The Court already rejected this and recognized that the NCDCA requires more. *Custer*, 2024 WL 4528187, at *3. DMI repeatedly argues that silence is legal entitlement: silence in the mortgage agreement, silence in the law, silence from regulators. That is not the law. Since DMI cannot show affirmative legal entitlement, its motion should be denied.

**Third**, DMI's arguments against Plaintiff's North Carolina Unfair Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1) claim fail. Plaintiff has shown that DMI violated the NCDCA—a per se § 75-1.1 violation—*and* that DMI's omissions had a tendency to deceive. Either ground is sufficient for the court to deny DMI's motion.

## II.    FACTS

In his affirmative motion for summary judgment, Plaintiff stated the material facts, supported by the record, which are not and cannot be disputed. *See* Plaintiff's Mem., Dkt. 55 at 3–7. Based on DMI's statement of facts, *see* Def's Br., Dkt. 61 at 2–5, the Parties largely agree as to the facts in this case.

To the extent DMI asserts facts contrary to Plaintiff's, they are unsupported and/or immaterial. This includes DMI's assertion that it incurred a slew of unrelated costs "[i]n providing pay-by-phone service to its customers." Def's Br. at 3 (listing indirect costs that it would already incur in the course of business). DMI offers no direct support to substantiate its claim that it bears these vague costs in order to process customers' phone

2

payments. Additionally, DMI asserts that, on September 29, 2023, Ms. Pleasants heard a pre-recorded message regarding fees before she made a phone payment. *See* Def's Br. at 4. While Plaintiff does not concede the veracity of that assertion,[1] it is immaterial whether or when such pre-recorded message was played and whether or when Ms. Pleasants heard such message prior to submitting a payment on that date.

## III.   LEGAL STANDARD

At summary judgment, the movant has the burden to show there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *SEC v. Melton*, 2025 WL 1135180, at *1 (M.D.N.C. Apr. 17, 2025). In analyzing a summary judgment motion, courts construe the evidence in the light most favorable to the nonmoving party. *Bandy v. City of Salem, Virginia*, 59 F.4th 705, 709 (4th Cir. 2023). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Melton*, 2025 WL 1135180, at *1.

## IV.   ARGUMENT

### A.   DMI has not shown legal entitlement.

The NCDCA prohibits debt collectors like DMI from charging "all or any part of the debt collector's fee or charge for services rendered [or] any interest or other charge, fee, or expense incidental to the principal debt unless legally entitled to such fee or charge." *Custer*, 2024 WL 4528187, at *2 (citing § 75-55(2)). The statute is written in the disjunctive such that "unless legally entitled" applies only to the "any interest or other charge, fee, or

---

[1] *See infra* Footnote 10.

3

Case 1:24-cv-00306-CCE-LPA    Document 71    Filed 11/19/25    Page 9 of 30

expense incidental" clause—not the "services rendered" clause. DMI does not deny (nor could it) that its pay-to-pay fees are a "fee or charge for services rendered." Its motion can be denied on that basis alone.

But even if DMI's construction is correct, its argument still fails. Section 24-9 is a usury statute governing the interest that lenders may charge, including fees at loan origination or identified in the loan agreement that bear on the interest rate. It does not entitle servicers to charge new fees; it does not even mention servicers. *See Custer*, 2024 WL 4528187, at *3 (noting related statute, § 24-8(a), "says nothing" about servicers). DMI advances without citation a new interpretation of § 24-9(b) that would vastly expand its scope beyond the interest, usury, and "lender[s]" its text contemplates. DMI's proposal would sweep in entities (mortgage servicers), conduct (debt collection), and transactions (mortgage payments) found nowhere in the statute's text or history, and contrary to policy. Plaintiff requests that the Court decline to rewrite the statute.

### 1. Section 24-9 governs loan origination and usury.

"Chapter 24 of the General Statutes, entitled 'Interest,' governs a number of lending transactions for which it either states maximum interest rates or excepts the transaction from such statutory constraints." *Swindell v. Fed. Nat'l Mortg. Ass'n*, 330 N.C. 153, 156 (1991). Statutes within Chapter 24, including § 24-9(b), apply to only a few types of transactions: "extension[s] of credit," and "solicitation[s] or communication[s] to borrow" or "to lend." *Id.* § 24-2.1 ("Transactions governed by Chapter").

Thus, Chapter 24 is a usury statute governing interest rates and finance charges in loan agreements. Nearly every provision deals with interest, and several statutes cross-

4

reference the Truth in Lending Act and Home Ownership and Equity Protection Act—federal statutes governing the extension of credit to consumers. *See* N.C. Gen. Stat. §§ 24-1–11.2. The provisions of Chapter 24 not addressing interest are generally limited to the terms on which credit can be extended—*i.e.*, the contents of underlying loan agreements, not later loan servicing. Debt collection and mortgage servicing are nowhere mentioned.

Certain parts of Chapter 24 address fees—specifically, fees that are typically assessed at loan origination or when additional credit is extended via renewal, modification, or extension. For example, § 24-1.1E(5) defines "points and fees" as "items paid by a borrower at or before closing" and compensation to mortgage brokers—not later-added servicer fees. Other fees discussed in Chapter 24 include fees relating to origination, applications, commitment, rate locks, loan inspections, discount points, assumption, appraisal, flood certification, credit reporting, notaries, escrow, title insurance, surveys, hazard and flood insurance, and attorney's fees—all of which are fees incurred within loan origination. *See, e.g.*, *id.* § 24-8(d). Such fees are relevant to interest and usury because they can increase the cost of credit and indirectly raise the interest rate.[2]

In contrast, Chapter 24 does not mention fees that occur only *after* loan origination, such as default fees, inspection fees, foreclosure fees, or pay-to-pay fees. The sole exception is "late fees," discussed by name in § 24-10 in the context of what the parties may agree to "in the loan contract." *Id.* § 24-10.1(a). Again, § 24-10.1(a) refers to "lenders," not debt collectors.

---

[2] *See, e.g.*, 15 U.S.C. § 1605(a) (defining "finance charge" for purposes of TILA).

Mortgage servicers and other debt collectors—and the fees they may charge and the requirements they must meet—are governed by other chapters of North Carolina law. Debt collection falls under the NCDCA. N.C. Gen. Stat. §§ 75-50–56. ("Prohibited Acts by Debt Collectors"). Mortgage servicers must also abide by the Mortgage Debt Collection and Servicing Act ("MDCSA"), *id.* §§ 45-90–95, and the licensing and registration requirements described in the Secure and Fair Enforcement Mortgage Licensing Act ("SAFE Act"), *id.* §§ 53-244.010–.144. Unlike Chapter 24, these statutes all specifically address what debt collectors like DMI may and may not do.

Section 24-9(b) must be analyzed within this context. *Trayford v. N.C. Psych. Bd.*, 174 N.C. App. 118, 122-23 (2005) (courts must consider "the context" when interpreting a statute).

### a.    Text

First, the text of the usury statute, § 24-9(b), does not support DMI's argument.

Statutory interpretation begins with the text. *See Sturdivant v. N.C. Dep't of Pub. Safety*, 386 N.C. 939, 944 (2024) ("If the plain language of the statute is unambiguous, we apply the text as written."). Section 24-9(b) describes what "any lender, including a bank, may charge and collect from the borrower" in an "exempt transaction":

> (b) Notwithstanding any other provision of this Chapter or any other provision of State law, any borrower in an exempt loan transaction may agree to pay, and any lender, including a bank, may charge and collect from the borrower, interest at any rate and fees and other charges in any amount that the borrower agrees to pay. A claim or defense of usury is prohibited in an exempt loan transaction.

N.C. Gen. Stat. § 24-9(b). The statutory text confirms that § 24-9(b) has nothing to do with the mortgage servicing and debt collection activities described in the Complaint.

***Lenders.*** Section 24-9(b) is clear about who it covers: "any lender, including a bank." Yet DMI is not a lender, nor a bank. CC Reply Ex. 1[3], at 31:10-13 ("I want to make it clear that you know that we don't originate loans."). Its corporate representative was very careful to draw a distinction between the role of a lender from that of a subservicer like DMI. CC Reply Ex. 2, at 15:22-24 (agreeing DMI is "strictly a subservicer"). DMI is not even a servicer standing in the shoes of a lender; it is a subservicer hired by a servicer to perform certain debt collection functions. *Id.* Section 24-9(b) does not describe what "interest . . . fees and other charges" a subservicer or other third-party debt collector, like DMI, may impose. It does not mention those entities at all. *See Custer*, 2024 WL 4528187, at *3 (noting § 24-8(a) "says nothing about what fees servicers can and cannot charge beyond what is authorized in the loan agreement").

***Loan transactions.*** Section 24-9(b) also describes when a lender and a borrower may agree to "interest at any rate and fees and other charges": "in an exempt loan transaction," i.e., when a loan is made. A "loan transaction" is an extension of credit, not other activities like making payments. N.C. Gen. Stat. § 24-2.1 (defining "Transactions governed by Chapter [24]" as "extensions of credit" and solicitations to lend or borrow). This definition is also consistent with other statutes using terms like "loan transaction" to mean the initial extension of credit. *See, e.g.*, *SED Holding, LLC v. 3 Star Props., LLC*, 246

---

[3] Exhibits cited as "CC Reply Ex. __" are exhibits to the Kauffman Declaration at Dkt. 51-1.

N.C. App. 632, 637-38 (2016) (rejecting argument that a "sale of pooled mortgages" was a "loan transaction" because it was "not a loan"); *accord* 12 C.F.R. § 1026.2(a)(24) (defining a "residential mortgage transaction" as "a transaction in which a mortgage . . . is created or retained", for purposes of TILA).[4] Understanding "loan transactions" to refer to the types of "[t]ransactions governed by" Chapter 24 is consistent with § 24-9(b)'s purpose to exempt certain loans from "a claim or defense of usury." A usury claim might apply to fees agreed at origination but would not likely apply to later-added debt collectors' fees.

This case does not involve "loan transactions" as defined in § 24-2.1. Plaintiff does not allege that DMI extended credit and does not assert a claim or defense of usury.

The remaining provisions of § 24-9, in context, confirm that § 24-9(b) describes only the terms on which credit may be extended, as agreed in the loan contract—not later conduct by debt collectors.

The only fees mentioned by name in § 24-9 are prepayment fees, which are disclosed in loan origination documents. *Id.* § 24-9(c)(3). There is no discussion of loan servicing, debt collection, or other fees (default, occupancy inspection, foreclosure, payoff statements, lien release, expedited statements, paper statements, pay-to-pay, etc.) that could arise after loan origination. Finally, § 24-9 incorporates § 24-1.1E, which expressly defines "points and fees" as charges "paid by a borrower at or before closing" and other charges "under the terms of the loan documents." Everything about § 24-9 suggests that it applies *only* to fees a lender and borrower may agree to, in writing, in a loan agreement.

---

[4] *See also, e.g.*, N.C. Gen. Stat. § 24-1.1E (defining a "table-funded transaction" as a particular type of extension of credit).

8

DMI cites no interpretation of § 24-9(b) supporting its proposal to add "debt collector" or "mortgage servicer" to the statute or apply § 24-9(b) to other transactions. "[C]ourts should be extremely cautious not to add words to a statute that are not found in the statute." *Fides, A.G. v. Comm'r of Internal Revenue*, 137 F.2d 731, 734 (4th Cir. 1943); *see also Lunsford v. Mills*, 367 N.C. 618, 623 (2014) ("[I]n effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used.").

Since the plain language of § 24-9(b) does not entitle DMI to charge pay-to-pay fees, its motion must be denied.

### b.    Legislative History

Second, the legislative history demonstrates § 24-9(b) is a usury statute governing interest and lenders, not debt collectors. North Carolina courts may consider legislative history as "indicia of legislative will." *Trayford*, 174 N.C. App. at 123. Section 24-9(b) has long existed as an exemption to North Carolina usury law. Enacted in 1963,[5] § 24-9(b) initially applied only to corporate entities and, with minor changes in the 1990s, essentially stated that businesses "may agree to pay, and any lender or other person may charge and collect . . . interest, fees, and other charges at any rate." N.C. Gen. Stat. § 24-9(b) (1999). It has never been a servicing or debt collection statute, and applied only to the initial loan

---

[5] *See* Ch. 753, HB 425 (1963), available at *https://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1963-1964/SL1963-753.html.*

9

transaction, not later conduct. *See, e.g.*, *NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931, 937 (4th Cir. 1987) (interpreting 1986 version of statute).

The modern § 24-9 language relating to home loans above $300,000 was initially added to then-section 24-8(b) as part of "An act to modify permissible fees which may be charged in connection with home loans secured by first mortgage or first deed of trust, to impose restrictions and limitations on high-cost home loans, to revise the permissible fees and charges on certain loans, to prohibit unfair or deceptive practices by mortgage brokers and lenders, and to provide for public education and counseling about predatory lenders." S.B. No. 1149 (1999). As the title suggests, the statute concerned lending, not debt collection, and imposed a number of limitations on what "lenders" could charge "on origination of loans," to restrict the cost of credit (the interest rate).[6] As an exception to the new restrictions added in SB 1149, then-section 24-8(b) also stated that for loans above $300,000, "any lender or other person" could "charge and collect from the borrower" "interest, fees, and other charges as may be agreed upon by the parties." *Id.* at 1432.

In 2003, the legislature passed "An act to expand the usury exemption," including modern § 24-9(b).[7] At the time it was passed, the legislature understood the statute to deal with predatory lending, interest rates, and loan origination issues.[8] The 2003 amendment combined the exception for home loans above $300,000 with other types of "exempt" loans

---

[6] *See* Senate Judiciary I Committee, Minutes (1999), at pp. 1409-1436, https://webservices.ncleg.gov/ViewDocSiteFile/65966.
[7] *See* Session Law 2003-401, HB 1182 (2003), https://www.ncleg.gov/Sessions/2003/Bills/House/PDF/H1182v6.pdf.
[8] *See* 2003 General Assembly, *Summaries of Substantive Ratified Legislation* (2003), at p. 41, https://webservices.ncleg.gov/ViewDocSiteFile/56394.

defined in § 24-9(a) and excluded them from usury laws. In addition, the exemption was narrowed from "any lender or other person" to "any lender, including a bank." Thus, to the extent the earlier statute encompassing "other person[s]" could have been read more broadly, the 2003 amendment clarifies that § 24-9(b) applies only to "lenders."

Under North Carolina law, "the primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute." *Stevenson v. City of Durham*, 281 N.C. 300, 303 (1972). Nothing in the legislative history supports DMI's novel interpretation or suggests the "intent of the legislature" in enacting § 24-9(b) was to allow debt collectors to add new fees in any amount at any time. Section 24-9(b) is and has always been a usury statute, not a debt collection statute.

The legislative history does, however, explain why § 24-9(b) refers to both what "any borrower . . . may agree to pay" *and* what "any lender" may charge and collect. *See* Def's Br. at 9-10. Since prior versions of § 24-9 applied only to corporations, with consumer home loans addressed in § 24-8, the 2003 amendment makes clear that *any* borrower—not just businesses—taking out an "exempt" loan could agree to interest rates that might otherwise be usurious. The history does not suggest the legislature instead intended to add an unwritten understanding that the statute also encompassed later transactions including counterparties other than the original lender.

Since the legislative history also does not show that § 24-9(b) entitles DMI to charge pay-to-pay fees, the motion should be denied.

11

### c. Case Law

Case law interpreting § 24-9 is sparse, but what exists supports the conclusion that § 24-9(b) governs lenders, not servicers. For example, at least one case has recognized that lender fees and debt collector fees are addressed in separate areas of the North Carolina statutes. *See In re Paylor*, 604 B.R. 222, 227-28 n.9 (Bankr. M.D.N.C. 2019) ("Article 10 [governing servicers] does not purport to apply to fees charged under the loan documents by the holder, only fees incurred by a servicer. Fees chargeable by a lender under the loan documents are governed and limited by other statutes.") (citing Chapter 24). Other courts confirm § 24-9(b) governs loan origination and loan agreements. *See, e.g.*, *In re Harvest Oaks Drive Assocs., LLC*, 2011 WL 124495, at *5 (Bankr. E.D.N.C. Jan. 14, 2011) (noting that in light of § 24-9(b), "North Carolina law thus would, *if warranted by the agreement between the parties,* allow imposition of default interest . . . under the terms of the promissory note and deed of trust" (emphasis added)); *W. Raleigh Grp. v. Massachusetts Mut. Life Ins. Co.*, 809 F. Supp. 384, 390 (E.D.N.C. 1992) (statute evidences intent of legislature that parties be "free to agree *upon their own loan terms* including their own interest rates, loan fees, and prepayment provisions" (emphasis added)); *Abbington SPE, LLC v. U.S. Bank, N.A.*, 352 F. Supp. 3d 508, 522 (E.D.N.C. 2016) (rejecting argument that late charges and default interest contained in a promissory note were unconscionable).

DMI cites no cases applying § 24-9(b) to fees charged by a mortgage servicer or other debt collector. Rather, those fees "are governed and limited by other statutes," including Article 10 (the MSDCA), the NCDCA, and the SAFE Act. *In re Paylor*, 604 B.R. at 227-28 n.9.

12

Since no case law shows that § 24-9(b) entitles DMI to charge pay-to-pay fees, its motion must be denied.

### d.    Policy

Without the text, the legislative history, or a single on-point case supporting its novel interpretation of § 24-9(b), DMI relies on policy arguments and irrelevant cases. Def's Br. at 10-12. But Plaintiff has the better policy arguments, and DMI's outdated and inapplicable cases do not help its cause.

Strong policy reasons support limiting § 24-9(b) to lenders, consistent with § 24-2.1 ("Transactions governed by chapter") and the plain statutory text: adopting DMI's novel and unsupported interpretation would blast a hole through the NCDCA (and the federal Fair Debt Collection Practices Act on which it is modeled). Both statutes require a debt collector to show entitlement to charge new fees. *See* N.C. Gen. Stat. § 75-55(2); 15 U.S.C. § 1692f(1). According to DMI, § 24-9(b) allows a third-party debt collector to rewrite the terms of a loan to allow new, previously uncontemplated fees, in many cases years after the credit was originally extended, simply by obtaining a borrower's "agreement." But debt collectors should not be allowed to impose new fees on borrowers via a purported separate contract because "consumers have no say in choosing their debt collectors, and they may well be over a barrel at that later point in time."[9] *Alexander v. Carrington Mortg. Servs.*, 23 F.4th 370, 378 (4th Cir. 2022).

---

[9] North Carolina courts look to interpretations of the FDCPA as "particularly instructive." *Reid v. Ayers*, 138 N.C. App. 261, 263 (2000).

13

DMI's logic would allow debt collectors in North Carolina to charge borrowers whatever fees collectors want just to make payments, access accounts online, or obtain any other service, with no limit beyond what a borrower will "agree." Debt collectors could charge for allowing a borrower to pay on a Monday rather than other days; allowing a borrower to communicate with its customer service representatives by phone; or even processing a payment by check as expressly required in the loan agreements. DMI offers no limiting principle beyond borrower "agreement." "If any valid, new contract were enough, debt collectors would be free to offer unfair terms to consumers who cannot seek a better deal elsewhere." *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1293 (11th Cir. 2025). Courts across the country have rejected the argument that debt collectors may evade fee limitations via so-called separate agreements. *See, e.g.*, *Alexander*, 23 F.4th at 378; *Glover*, 127 F.4th at 1293; *Knapp v. PHH Mortg. Corp.*, 2025 WL 1174947, at *7-8 (D. Or. Apr. 18, 2025). Allowing a debt collector to impose new fees this way defangs § 75-55(2), and it is inconceivable that the legislature intended these results.

DMI's interpretation is also inconsistent with the MDCSA. Section 45-91, for example, requires servicer fees be "permitted under applicable law *and* the contracts between the parties," but DMI's interpretation of § 24-9(b) contains no such limitations. "It is the duty of the courts to construe statutes so that they harmonize with other statutory provisions as much as possible." *State v. Lutterloh*, 171 N.C. App. 516, 516 (2005). Applying § 24-9(b) to loan origination and fees in the agreement, while other statutes (the NCDCA and MDCSA) apply to later mortgage servicing and debt collection, harmonizes North Carolina law (and federal law).

14

It is irrelevant that DMI has the right to collect the debt owed to the lender. Def's Br. at 10. That is true for all debt collectors. And since Chapter 24 (and § 24-9(b) specifically) applies only to extensions of credit, it treats lenders and servicers the same for purposes of later-added fees: it does not address them, because a lender's debt collection activities, like a servicer's, are covered elsewhere.

Finally, DMI cites inapplicable and outdated cases to argue that North Carolina treats subservicers like DMI as "lenders" for purposes of § 24-9(b). (Notably, DMI's cases do not interpret § 24-9(b).) In *Crabtree v. Smith*, 2017 WL 1276069 (N.C. Ct. App. Apr. 4, 2017), unlike here, the loan agreement expressly authorized the fee in question. That was why the servicer was "legally entitled" to charge it under § 75-55(2). Here, the loan agreements do not expressly authorize pay-to-pay fees. *Custer*, 2024 WL 4528187, at *3 n.3. And *Austin v. Lakeview Loan Servicing LLC*, 2020 WL 7256564, at *3 (D. Md. Dec. 10, 2020), a Maryland case, has nothing to do with § 24-9(b) or whether that usury statute applies to servicers. *Austin* is also no longer good law following *Alexander*. *Compare Austin*, 2020 WL 7256564, at *3 (holding mortgage servicer was not a debt collector under Maryland law), *with Alexander*, 23 F.4th at 375 (rejecting analysis adopted in *Austin*).

Finally, DMI again asks the Court to interpret silence as authorization, asserting that because it has not been prosecuted for charging pay-to-pay fees, it must be entitled to charge them. DMI cites no case for this remarkable proposition. And DMI's arguments directed at the loan agreement are a red herring. Def's Br. at 12. Plaintiff's position is not that DMI is a "lender," but that the four corners of the agreement limit the fees that anyone—lenders, servicers, or other third-party debt collectors—may charge a borrower

15

after credit has been extended (absent explicit statutory permission). That is how courts, including this one, interpret the NCDCA. *E.g.*, *Custer*, 2024 WL 4528187, at *3.

### 2. Even if Section 24-9 applies, it is not affirmative entitlement.

Section 24-9 is not "affirmative legal authority" that "*explicitly* entitles" DMI to collect pay-to-pay fees. *Custer*, 2024 WL 4528187, at *3 (emphasis added) (citing *Alexander*, 23 F.4th at 377-78). When the legislature provides explicit entitlement to collect a particular fee, it names the fee. *See, e.g.*, N.C. Gen. Stat. § 24-9(c)(3) ("a bank may charge and collect *prepayment fees*. . ."); *id.* § 24-10.1 ("lender may charge. . . a *late payment charge* as agreed upon by the parties in the loan contract."); *id.* § 24-1.1A(c) (lenders may charge *"[l]oan application, origination, commitment, and interest rate lock fees*", "*inspection fees* and *loan conversion fees*", "*[a]ssumption fees*", and "*[a]ppraisal fees*"); *id.* § 24-1.1A(g) ("lender may charge *deferral fees*. . ."); *id.* § 45-36.7(h) (secured creditors may charge "*payoff statement" fees* and "*short-pay statement" fees*) (emphases added). But § 24-9 does not mention convenience fees, only: "interest at any rate and fees and other charges[.]" N.C. Gen. Stat. § 24-9(b). This vague reference is insufficient.

The analysis is no different from the Court's prior order interpreting Plaintiff's loan agreement, which also does not name convenience fees. *See* CC Ex. 3[10], at ¶ 14 (Deed of Trust). As the Court explained, such vague references "[do] not authorize charging [convenience fees]." *Custer*, 2024 WL 4528187, at *3 n.3. The Fourth Circuit's analysis of the materially similar Maryland debt collection law—which only allows fees "permitted

---

[10] Exhibits cited as "CC Ex. __" are exhibits to the Aizpuru Declaration at Dkt. 44-1.

by law"—is instructive:

> While [the mortgage servicer] rightly acknowledges that express authorization in the original agreement is a carefully guarded and narrow gate to pass through, it wrongly suggests that permission by law is an unattended and broad entrance to the same venue. If a fan can get into the North London Derby either by presenting an expensive ticket at Gate A or by waltzing freely through Gate B, no one in their right mind would choose the first option. Why pay to watch Arsenal beat Tottenham when you can enjoy the spectacle for free?

*Alexander*, 23 F.4th at 378-79. Just as with the loan agreement, the court should similarly find § 24-9 (if applicable) does not entitle DMI to collect pay-to-pay fees.

### 3. DMI's oral agreements violate the statute of frauds.

DMI's oral agreements also violate North Carolina's statute of frauds. "All contracts to sell or convey . . . any interest in or concerning" land "shall be void" unless it is in writing. N.C. Gen. Stat. § 22-2. When an original agreement is within the statute of frauds, "subsequent oral modifications of the agreement are ineffectual." *Clifford v. River Bend Plantation, Inc.*, 312 N.C. 460, 463 (1984). DMI concedes that its "agreements" were made over the phone. *E.g.*, Def's Br. at 7-8 (citing call recordings).[11] And these "agreements" purport to orally modify, and directly relate to, the original agreement.[12] Not only do borrowers engage in a single payment transaction, but they would have "no reason to pay

---

[11] DMI claims Ms. Pleasants "agreed to pay the fee *after hearing the pre-recorded message*" on the September 29, 2023 call. Def's Br. at 4 (emphasis added). But that is incorrect. Ms. Pleasants testified she did not recall hearing the pre-recorded, and DMI's own evidence confirms that. Def's Ex. 1, Pleasants Dep. 67:10-17; *see also* Def's Ex. 4, at 16-23 (no pre-recorded message in transcript of Sept. 29, 2023 call).

[12] To the extent DMI contends they were separate "agreements," courts have repeatedly rejected such arguments. *See, e.g.*, *Alexander*, 24 F.4th at 379; *Glover*, 127 F.4th at 1292; *McFadden v. Nationstar Mortg. LLC*, 2021 WL 3284794, at *10 n.10 (D.D.C. July 30, 2021).

the fee but for the need to pay the principal obligation." *McFadden*, 2021 WL 3284794, at *3; Def's Ex. 1 (Pleasants Dep. 60:14-61:3, 64:16-21, 68:15-69:3) (explaining she paid the fees because she had no other choice to complete her payment). DMI's asserted subsequent oral agreements fail.

### 4. An unconscionable option is still unconscionable.

DMI's argument that pay-to-pay fees do not violate the NCDCA because they are not mandatory also fails. Def's Br., at 13-15. "Unconscionable" means under § 75-55 are "unfair" even if not mandatory because "an unconscionable option is still unconscionable." *Custer*, 2024 WL 4528187, at *4. The General Assembly did not give courts discretion to determine whether charging a debtor (1) "any part of the debt collector's fee or charge for services rendered" or (2) a "charge, fee, or expense incidental to the principal debt" without legal entitlement is unconscionable. N.C. Gen. Stat. § 75-55(2). Instead, whether optional or mandatory, such amounts are unconscionable by definition. *Id. Accord Alexander*, 23 F.4th at 379 (mortgage servicer choosing to offer optional payment methods "must do so without the imposition of a statutorily prohibited convenience fee."); *Lindblom v. Santander Consumer USA, Inc.*, 2016 WL 2841495, at *6 (E.D. Cal. May 9, 2016) ("[T]he Court need not assess whether . . . the Speedpay fee is 'unfair' or 'unconscionable' because Congress has already made that determination.").

This makes sense in the context of other "unconscionable" acts under § 75-55, each of which could be presented as optional. For example, a debt collector might offer the "option" to continue communicating directly after a consumer obtains counsel. *See id.* § 75-55(3). Or a debt collector could give a consumer the "option" to acknowledge a time-

barred debt or affirm a debt while in bankruptcy. *See id.* § 75-55(1). Those options would be unconscionable, as is DMI's fee.

Other courts agree that fees charged in violation of debt collection law are unfair even if optional. *See, e.g.*, *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 172 (E.D.N.Y. 2024); *McFadden*, 2021 WL 3284794, at \*3; *Caldwell v. Freedom Mortg. Corp.*, 2020 WL 4747497, at \*3 (N.D. Tex. Aug. 14, 2020). DMI relies on *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676 (E.D.N.C. 2019), and *Brown v. Loancare, LLC*, 2020 WL 7389407 (W.D.N.C. Dec. 16, 2020), but these cases predate Fourth Circuit precedent in *Alexander* and, as this Court already explained, did not analyze whether a practice was unfair because it was "unconscionable."[13] *Custer*, 2024 WL 4528187, at \*4. Other courts have also cast doubt on the reasoning and import of *Waddell*:

> In [*Waddell*], the court found that 12 C.F.R. § 7.4002 "authorized" the charging of convenience fees, but it does not appear to have considered the impact of 12 C.F.R. § 7.4008(e)(4), which makes clear that state debt collection laws may further restrict the ability of federal savings banks to charge "non-interest charges or fees[.]" It is also not at all clear to this Court that the *Waddell* court would come to the same conclusion today in light of the Fourth Circuit's interpretation that "permitted by law" means that a law must "affirmative[ly] sanction or approv[e]" of the contested practice. *Alexander*, 23 F.4th at 377.

*Baxter v. AmeriHome Mortg. Corp., LLC*, 617 F. Supp. 3d 346, 355 n.3 (D. Md. 2022); *McFadden*, 2021 WL 3284794, at \*8 (rejecting *Waddell* as "unpersuasive").

---

[13] DMI also cites *Lish v. Amerihome Mortg. Co., LLC*, 2020 WL 6688597, at \*6-7 (C.D. Cal. Nov. 10, 2020) and *Jones v. PHH Mortg. Corp.*, 2024 WL 3639325, at \*10-11 (D.N.J. July 31, 2024) (dismissing Illinois claim, but finding plausible violations of the FDCPA and New York consumer law), neither of which analyzed the NCDCA.

19

Because the plain language of § 75-55(2) and the weight of authority supports Plaintiff, DMI's motion should be denied.

**B.      The NCDCA is not an exclusive remedy.**

The Court already found that Plaintiff stated claims for violations of *both* the NCDCA and § 75-1.1. *Custer*, 2024 WL 4528187, at *3-5. And, "if a plaintiff proves that a debt collector violated a provision of the NCDCA, then that violation is an unfair trade practice under § 75-1.1." *Custer*, 2024 WL 4528187, at *4. Regardless, DMI raises a distinction without a difference because of the interplay between the statutes. "Under N.C. Gen. Stat. § 75-16, a court is required to treble damages when awarded upon violation of Chapter 75." *In re Creech*, 513 B.R. 482, 485 (Bankr. E.D.N.C. 2014). The NCDCA is part of Chapter 75.

And even if Plaintiff only prevailed on his NCDCA claim, the NCDCA's remedies (§ 75-56) incorporate treble damages available under § 75-1.1 (*see* § 75-16). N.C. Gen. Stat. § 75-56 (providing actual damages and civil penalties between $500 and $4,000, but "[*n*]*otwithstanding the provisions of* G.S. 75–15.2 and *G.S. 75–16*, in private actions . . . civil penalties in excess of four thousand dollars ($4,000) shall not be imposed"). Based on a thorough analysis of the statutory language and history, the court in *In re Creech* explained that § 75-56 "creates the potential for an award of actual damages, *which must be trebled*, plus the imposition of civil penalties up to $4,000." 513 B.R. at 486 (emphasis added). Therefore, so long as Plaintiff proves DMI violated a provision of the NCDCA (and he has), then he is entitled to remedies from both statutes.

20

## C. Summary judgment is not warranted on § 75-1.1.

The evidence shows that DMI's omissions were deceptive. Its pay-to-pay fees far exceed the actual costs DMI incurs to accept phone payments. *See* CC Ex. 6 (fee schedule); CC Ex. 9, at DMI_CUSTER_0002002; CC Ex. 10 (invoices); SJ Ex. D[14] (Braun Dep. 45:4-14, 58:11-21, 62:8-63:1); CC Reply Ex. 3 ("hard costs"). Yet DMI nowhere discloses this massive discrepancy, even though DMI solely determines what goes into its disclosures. In fact, DMI admits its policy was "not to make statements to borrowers concerning DMI's costs in providing borrowers with phone service for payment processing." Def's Br. at 3. DMI is already separately compensated for payment collection and other subservicing activities. *See* SJ Ex. G (Bryar Dep. 205:11-16) (describing servicing fee); SJ Ex. D. DMI nowhere discloses this either. And DMI also did not disclose that the uniform loan agreements do not legally entitle DMI to collect pay-to-pay fees.

These facts establish deceptive omissions. *See Custer*, 2024 WL 4528187, at *4. Under § 75-1.1, a practice is deceptive where it "has the capacity or tendency to deceive." *Henson v. Green Tree Servicing LLC*, 676 S.E.2d 615, 619 (2009). *Accord Sain v. Adams Auto Grp.*, 781 S.E.2d 655, 661 (N.C. Ct. App. 2016) ("proof of actual deception," i.e., reliance, "is not required"). DMI had a duty to disclose these facts because only DMI had access to them, and DMI actively concealed them. *Salmons, Inc. v. First Citizens Bank & Trust Co.*, 2011 WL 4738656, at *5 (E.D. Va. Oct. 7, 2011) (construing § 75-1.1).

---

[14] Exhibits cited as "SJ Ex. __" are exhibits to the Aizpuru Declaration at Dkt. 55-1

DMI relies on *Bumpers v. Cmty. Bank of Northern Virginia*, 367 N.C. 81, (2013) but *Bumpers* does not concern omissions. Plaintiff does not allege that DMI made affirmative misrepresentations, and the Court found Plaintiff stated a claim as pleaded. *See Custer,* 2024 WL 4528187, at *4-5. Plaintiff's § 75-1.1 claim is also not "a claim for overcharging." Plaintiff pleads three grounds for *deceptive conduct*: DMI (1) *fails to disclose* that it has already been paid by the lenders, (2) *nevertheless charges* borrowers up to $15 for a service that it pays vendors cents to perform, and (3) *never admits* that it assesses fees prohibited under North Carolina law. *See* Plaintiff's Mem., Dkt. 55, 15-17.

Finally, *Bumpers* concerns willingly and honestly negotiated transactions. But here, there was no "negotiation" between DMI and its captive borrowers. *See Bumpers*, 367 N.C. at 91-92 (noting that, unlike here, plaintiffs could have obtained services from other sellers). *Bumpers* says nothing about what an unchosen third-party debt collector may hide from consumers while burdening them with fees.

Finally, as an alternative basis, the court should deny DMI's motion based on DMI's *per se* § 75-1.1 violation. *See Custer*, 2024 WL 4528187, at *4.

## V.    CONCLUSION

DMI is not legally entitled to charge pay-to-pay fees or otherwise entitled to judgment as a matter of law. Plaintiff requests that the Court deny its motion.

22

Dated:     November 19, 2025          Respectfully submitted,

*/s/ Katherine M. Aizpuru*
Katherine M. Aizpuru (*pro hac vice*)
Robin P. Bleiweis (*pro hac vice*)
*kaizpuru@tzlegal.com*
*rbleiweis@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*/s/ Benjamin M. Sheridan*
Benjamin M. Sheridan (Bar No. 52734)
Jed R. Nolan (Bar No. 56899)
*ben@kleinsheridan.com*
*jed@kleinsheridan.com*
**KLEIN & SHERIDAN, LC PC**
2500 Regency Parkway
Cary, NC 27518
Telephone: (919) 899-9533
Facsimile: (919) 899-9533

John W. Barrett (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
*jbarrett@baileyglasser.com*
*jkauffman@baileyglasser.com*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Bart Cohen (*pro hac vice*)
*bcohen@baileyglasser.com*
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 274-9420
Facsimile: (202) 463-2103

23

## CERTIFICATE OF SERVICE

I certify that, on November 19, 2025, a copy of the foregoing document was filed with the Clerk of the Court and upon counsel of record using the CM/ECF System.

*/s/ Katherine M. Aizpuru*

Katherine M. Aizpuru

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 6,250 words (not excluding material that may be excluded), as counted by the Word Count feature in Microsoft Word.

*/s/ Katherine M. Aizpuru*

Katherine M. Aizpuru

24