# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GEORGE CUSTER,<br><br>  Plaintiff,<br><br>v.<br><br>DOVENMUEHLE MORTGAGE, INC.,<br><br>  Defendant. | Civil No. 1:24-cv-00306<br>Chief District Judge Catherine C. Eagles<br>Magistrate Judge L. Patrick Auld |

## DOVENMUEHLE MORTGAGE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

                                                                         **Page**

ARGUMENT ............................................................................................................... 1

I.     COUNT I FAILS BECAUSE PLAINTIFF CANNOT PROVE AN UNFAIR PRACTICE. ......................................................................................... 1

        A.     Section 24-9(b) Applies To The Convenience Fees. .................................. 1

        B.     Section 24-9(b) Affirmatively Entitles DMI To Charge The Fees. ........... 10

        C.     Borrower Agreements Do Not Violate The Statute Of Frauds. ................. 11

II.    COUNT II MUST BE DISMISSED. ................................................................... 12

        A.     The NCDCA's Exclusive Remedy Provision Bars Count II. ..................... 12

        B.     Plaintiff Fails To Prove Deception. ............................................................ 12

CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbington SPE, LLC v. U.S. Bank N.A.*,
   352 F. Supp. 3d 508 (E.D.N.C. 2016) ................................................................. 5, 7, 8

*Alexander v. Carrington Mortg. Servs., LLC*,
   23 F.4th 370 (4th Cir. 2022) ......................................................................................... 11

*Ball v. Maynard*,
   645 S.E.2d 890 (N.C. Ct. App. 2007) .......................................................................... 11

*Bumpers v. Cmty. Bank of N. Va.*,
   747 S.E.2d 220 (N.C. 2013) ................................................................................... 12, 13

*Gilbert v. Residential Funding LLC*,
   678 F.3d 271 (4th Cir. 2012) ........................................................................................ 8

*Hanson v. Charlotte-Mecklenburg Bd. of Educ.*,
   915 S.E.2d 117 (N.C. 2025) .......................................................................................... 6

*Homebuilders Ass'n of Charlotte, Inc. v. City of Charlotte*,
   442 S.E.2d 45 (N.C. 1994) .......................................................................................... 10

*JVC Enters., LLC v. City of Concord*,
   855 S.E.2d 158 (N.C. 2021) ........................................................................................ 10

*Sturdivant v. N.C. Dep't of Pub. Safety*,
   909 S.E.2d 483 (N.C. 2024) .......................................................................................... 6

*Swindell v. Fed. Nat'l Mortg. Ass'n*
   409 S.E.2d 892 (N.C. 1991) .......................................................................................... 3

*Waddell v. U.S. Bank, N.A.*,
   395 F. Supp. 3d 676 (E.D.N.C.) .................................................................................. 10

*Wright v. Southern Health Partners, Inc.*,
   2019 WL 1129319 (M.D.N.C. Mar. 12, 2019) ............................................................. 1

**Statutes**

N.C. Gen. Stat. § 24-1.1A(b) ................................................................................................ 3

N.C. Gen. Stat. § 24-1.1A(c)(2) ....................................................................................... 3

N.C. Gen. Stat. § 24-1.1A(c)(2)(e) ................................................................................. 11

N.C. Gen. Stat. § 24-1.1A(g) ............................................................................................ 3

N.C. Gen. Stat. § 24-1.1E(a)(5)(c) ................................................................................... 3

N.C. Gen. Stat. § 24-1.1E(a)(6)(c) ................................................................................... 3

N.C. Gen. Stat. § 24-2.1 .................................................................................................... 5

N.C. Gen. Stat. § 24-2.1(e) ............................................................................................... 3

N.C. Gen. Stat. § 24-9(a)(3) ............................................................................................. 8

N.C. Gen. Stat. § 24-9(b) ........................................................................................ *passim*

N.C. Gen. Stat. § 53-244.111(5) ....................................................................................... 4

**Other Authorities**

12 C.F.R. § 7.4002(a) ..................................................................................................... 10

12 C.F.R. § 7.4002(b)(2) ................................................................................................ 10

Plaintiff's Opposition ("Opposition") to DMI's Motion for Summary Judgment ("MSJ") does not materially dispute the facts DMI established. Instead, Plaintiff offers a slew of contrived legal arguments to evade the plain language and the underlying policy of the statutes that bar his claims. For the reasons described in the MSJ and herein, the Court should grant DMI's motion.

**ARGUMENT**

**I.      Count I Fails Because Plaintiff Cannot Prove An Unfair Practice.**

DMI's opening brief showed that DMI is entitled to summary judgment on Plaintiff's NCDCA claim because charging the pay-by-phone Convenience Fees cannot constitute an unfair practice. MSJ at 6-15. N.C. Gen. Stat. § 24-9(b) legally entitles DMI to charge the fees, defeating Plaintiff's claim under Section 75-55 (*id.* at 6-13), and the fees are not unfair on any other basis (*id.* at 13-15). None of the Opposition's arguments alters these facts.

**A.      Section 24-9(b) Applies To The Convenience Fees.**

DMI showed that Section 24-9(b) permits any borrower in an exempt loan transaction to pay any "fees and other charges" the borrower "agree[s] to pay," whether or not assessed by a "lender." MSJ at 9-10. Plaintiff ignores, and thereby concedes, this textual argument. *Wright v. Southern Health Partners, Inc.*, 2019 WL 1129319, at *2 (M.D.N.C. Mar. 12, 2019) ("[A] party's failure to address an issue in its opposition brief concedes the issue"). Moreover, DMI showed that even if the statute applied only to

1

"lenders," which it does not, the courts (and even Plaintiff) treat loan servicers[1] standing in the lender's shoes as "lenders" for all relevant purposes. MSJ at 10-12.

Instead of meeting DMI's arguments head-on, the Opposition seeks to "interpret" away Section 24-9's plain meaning. To that end, Plaintiff tries to limit the statute's scope to "loan origination and usury" in the most restrictive sense—usurious interest at the moment a loan transaction occurs—even though the statutory language expressly reaches beyond those temporal and content limitations. Plaintiff's arguments are fivefold: based on context, text, legislative history, case law, and policy. These arguments are wrong on the law and make no sense on policy grounds.

*Context*. According to Plaintiff, Chapter 24's initial enactment as a "usury" law and provisions addressing interest mean that it cannot apply to loan servicers' fees, even though it applies to fees assessed by loan originators servicing their own loans. Opp. at 4-6. Plaintiff tries to support his position by arguing that (a) Chapter 24 applies only to interest and origination-related fees, and (b) the statute does not govern servicers, which are governed by other statutes. *Id.*

Chapter 24 does address interest and origination-related fees, but that is no help to Plaintiff, because it plainly applies to post-origination fees too. The Opposition acknowledges one counterexample, late payment fees, but falsely describes them as the "sole exception." Opp. at 5. In reality, Chapter 24 incorporates numerous post-origination fees. Beyond late payment fees (§ 24-10), Chapter 24 encompasses fees for prepayments,

---

[1] In this brief, the term "servicer" includes subservicers.
2

"modification, renewal, extension, or amendment of any of the terms of a home loan," and deferrals. N.C. Gen. Stat. §§ 24-1.1A(b), 24-1.1A(c)(2), 24-1.1A(g), 24-1.1E(a)(5)(c) and (a)(6)(c). None of these fees are charged at or before closing, and are contingent on borrower decisions that can long postdate origination. Further, for loans below $300,000, Section 24-8 expressly permits fees for payment of certain third-party services—not just pre-closing but also "fees for tax payment services, … escrow charges, and insurance premiums" that are ongoing throughout the life of the loan and integral to routine monthly or annual payments. *Id*. § 24-8(d).

Plaintiff is equally wrong that Chapter 24 is inapplicable to servicers and that only other statutes govern servicing—as Plaintiff's authorities show. Far from supporting Plaintiff's position (Opp. at 4), *Swindell v. Federal National Mortgage Association* directly applies Chapter 24 to a *servicer* (defendant Skyline) attempting to collect *fees* for late payments. 409 S.E.2d 892, 893 (N.C. 1991). The North Carolina Supreme Court has therefore already foreclosed Plaintiff's attempt to exclude servicers from Chapter 24.

Moreover, the statute itself explicitly encompasses post-origination loan servicers. N.C. Gen. Stat. § 24-2.1(e). As relevant, Section 24-2.1(e) grants state courts jurisdiction over claims related to the loan instrument against "*[a]ny person who acquires a right by contract or by assignment to receive payments* under a loan made in this State to an individual" resident. N.C. Gen. Stat. § 24-2.1(e) (emphasis added). If loan note assignees and servicers who receive borrowers' payments are subject to North Carolina courts for

3

Chapter 24 claims, then the legislature plainly anticipated that the statutes contained therein apply to them.

The Opposition points to other statutes that do or can govern loan servicing—the NCDCA, the MDCSA, and the SAFE Act. Opp. at 6. But statutory overlap is no evidence that Chapter 24 is inapplicable to servicing. Plaintiff does nothing to show that Section 24-9 disrupts "North Carolina's carefully constructed statutory framework." Opp. at 1; *see infra*, 8-10. Plaintiff claims that other statutes he cites "specifically" refer to what servicers "may and may not do," but his prime example, the NCDCA, governs *debt collection*, not servicing, and does not refer to mortgage loan servicers by name any more than does Section 24-9. Opp. at 6. If naming "servicers" in a statute is the touchstone for statutory application, the NCDCA would not apply to DMI either. In any event, Plaintiff's argument is self-refuting, because the state's "carefully constructed statutory framework" expressly applies Chapter 24 to servicers. *See* N.C. Gen. Stat. § 53-244.111(5) ("SAFE Act," cited in Opp. at 6) (barring any attempt to "charge or collect any fee or rate of interest or to make or broker or *service* any residential mortgage loan with terms or conditions or in a manner contrary to *Chapter 24*, 45, or 54 of the General Statutes") (emphasis added).

*Text*. Plaintiff makes two textual arguments. First, he recycles his earlier assertion that Section 24-9(b) applies only to "lenders." Opp. at 7. DMI already showed why this argument fails, MSJ at 9-12, and Plaintiff engages neither with DMI's reasoning on the provision's application to *borrowers* nor on North Carolina law's treatment of servicers as standing in the lender's shoes. Instead, the Opposition adds only that "DMI is not even a

4

servicer standing in the shoes of a lender" but rather "a subservicer." Opp. at 7. This is a distinction without a difference—subservicers similarly stand in the lender's shoes in accepting payments and providing service, and Plaintiff does not even try to explain why it would preclude applying Section 24-9 to DMI.

Second, Plaintiff seeks to import a temporal limitation (to the moment of origination) into the statute. Opp. at 7-8. He does so by rephrasing Section 24-9 as if it "describe[d] when a lender and a borrower may agree" to fees, "'in an exempt loan transaction,' i.e., when a loan is made," (*id*. at 7), invoking a temporal meeting of minds. But that is not what Section 24-9(b) says. The statute says *nothing* about any single agreement "between" a borrower and a "lender," at any one moment or otherwise.[2] Instead, it plainly states that "any *borrower in an exempt loan transaction* may agree to pay" fees and charges to which the borrower consents, and any lender may also charge and collect such fees. N.C. Gen. Stat. § 24-9(b) (emphasis added). The phrase "borrower in an exempt loan transaction" exists to limit Section 24-9(b) to borrowers who have engaged in certain "exempt" loan transactions, e.g. taken out loans greater than $300,000. *Abbington SPE, LLC v. U.S. Bank N.A.*, 352 F. Supp. 3d 508, 522 (E.D.N.C. 2016) (interpreting Section 24-9(b) to refer to "exempt loans" as defined in Section 24-9(a)(3)). It does not exist, as Plaintiff would have it, to limit the provision to the moment a specific transaction occurs, i.e. "the initial extension of credit," Opp. at 7-8. Indeed, as Plaintiff points out (*id*. at 8), Section 24-9(c) refers to prepayment fees, expressly incorporating fees that could only be

---

[2] Nor does N.C. Gen. Stat. § 24-2.1 define "loan transaction," *contra* Opp. at 7.

assessed *after* origination. Like the rest of Chapter 24, then, Section 24-9 anticipates application to post-origination fees.

*Legislative History*. Plaintiff next falls back on legislative history. North Carolina courts disfavor legislative history in statutory construction. *Hanson v. Charlotte-Mecklenburg Bd. of Educ.*, 915 S.E.2d 117, 118 (N.C. 2025) (Newby, C.J. et al., *concurring*) (noting, with respect to legislative history, that "we still disfavor its use and only turn to it in the event we exhaust both the plain text and other statutory canons …; [it] should be considered a last resort with limited applicability"); *Sturdivant v. N.C. Dep't of Pub. Safety*, 909 S.E.2d 483, 488 (N.C. 2024) (omitting legislative history from description of how to interpret a statute).

Here, the Court need not (and therefore should not) consider legislative history because the text, statutory context, and canons of construction identified in the MSJ are sufficient to determine the statute's meaning. But even if the Court considered it, Section 24-9(b)'s legislative history does not help Plaintiff. If anything, its many revisions since 1963 render Plaintiff's focus on its "usury" origin untenable. As Plaintiff observes, the statute was amended in 1999 by "An act to modify permissible fees which may be charged in connection with home loans…" Opp. at 10 (citing S.B. No. 1149 (1999)). That act's very title makes clear its intent to expand the statute's scope beyond interest to "fees" charged "in connection with home loans," while clarifying that the statute is focused on *loans*, not the *entity* charging fees on them.

6

Plaintiff says the 2003 amendment "narrowed" Section 24-9(b)'s exemption by replacing "lender or other person" with "lender, including a bank," but again, his own authority is to the contrary. Opp. at 11. The General Assembly's summary of the 2003 act, on which Plaintiff relies, states that the act's purpose was to "*[e]xpand*" the "exemption," not narrow it (emphasis added).[3] Nor does the 2003 amendment's expansion of the exemption beyond corporate borrowers to consumer loans above $300,000 somehow alter the statute's provision for what a borrower may agree to pay independently from what any "lender" may charge. Opp. at 11.

*Case Law*. Plaintiff acknowledges that "[c]ase law interpreting § 24-9 is sparse," then argues that the dearth of case law is grounds to deny DMI's motion. But raising an issue of first impression is no basis to deny a motion, and Plaintiff cites no case even *implying* that Section 24-9(b) excludes loan servicers. Three of the opinions on which the Opposition relies merely note, in dicta, that Section 24-9 can apply to agreements on fees between lenders and borrowers. Opp. at 12 (first three cases). True enough, but none of these opinions *limits* Section 24-9(b) to loan origination or lender-borrower contracts.

Moreover, Plaintiff's fourth opinion, *Abbington*, directly supports DMI's position. 352 F. Supp. 3d at 522. The court there dismissed claims against a noteholder *and a servicer* (C-III Asset Management) based on late-payment fees and default interest, holding that because the plaintiff's loan was exempt and the plaintiff agreed to pay the fees, Section

---

[3] 2003 General Assembly, *Summaries of Substantive Ratified Legislation* (2003), at 41, available at https://webservices.ncleg.gov/ViewDocSiteFile/56394.

24-9(b) applied to bar its claim.[4] *Id*. *Abbington*'s application of Section 24-9(b) to a loan servicer finds further support in the Fourth Circuit's decision, *sua sponte*, to direct a district court to consider whether Section 24-9(b) applied to plaintiffs' claim against defendants, who included the noteholder *and* the servicer (RFC) and subservicer (GMAC). *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 274 (4th Cir. 2012).[5]

*Policy*. In its opening brief, DMI established that the legislature cannot have intended to restrict Section 24-9(b)'s exemption to loan originators. That would treat entities' loan-servicing conduct differently depending on whether the originator later assigns its servicing rights—a variable irrelevant to the statute's goal of protecting borrowers with smaller home loans. MSJ at 10. Plaintiff mistakes this for a policy argument, but does not attempt to refute it (Opp. at 13), again conceding the point.

Instead, Plaintiff raises his own policy argument, claiming that the NCDCA's and MDCSA's goals would be impeded unless the Court adopts his interpretation of Section 24-9(b). Opp. at 13-16. Not so. The legislature decided to extend extra protection to borrowers in certain loans—consumer home mortgage loans of less than $300,000—instead of corporate borrowers or consumers taking out larger loans. N.C. Gen. Stat. § 24-9(a)(3) and (b). This decision did not "blast a hole through the NCDCA"—a statute governing debt collection much more broadly than mortgage loan payments—nor permit

---

[4] *Abbington* provides an example of the irrational outcomes stemming from Plaintiff's restrictive interpretation of Section 24-9(b), which would result in dismissing the noteholder, but not the servicer, though both were charged for the same conduct.
[5] The district court did not need to reach the issue on remand.

8

Case 1:24-cv-00306-CCE-LPA     Document 72     Filed 12/08/25     Page 12 of 20

"debt collectors" to charge "whatever fees [they] want." *Cf.* Opp. at 13-14. Instead, it creates a targeted carveout solely for mortgage loans (not all debts) of businesses and individual borrowers buying more expensive properties, which aligns with the debt collection statutes' purpose of protecting the financially distressed. Even corporate borrowers and those with loans of $300,000 or more must still *agree* to pay the fees—the fees cannot simply be assessed when debt collectors "want" them.

If Plaintiff were correct that Section 24-9(b) did not apply to servicers, moreover, the Opposition's theoretical parade of horribles would remain. Opp. at 14 (claiming DMI's interpretation would permit servicers to charge fees for paying on Mondays, by check, or for customer service). Even on Plaintiff's interpretation, Section 24-9(b) does not disappear—it would permit *lenders* to do these things, whether they originated or merely purchased the loan. But borrowers would be subject to different legal regimes governing their consent to fees, depending on an arbitrary condition: whether their lender services its own loans. DMI's interpretation of Section 24-9(b) not only avoids this irrational outcome but yields a better policy result: while Plaintiff would divide consumer borrowers into two groups based on their lender's servicing policy, DMI's would divide them by whether their loans are greater or less than $300,000, assuring the legislature's intended extra protection to the latter.

Nor is there any "inconsistency" with the MDCSA. The Opposition (at 14) notes that Section 45-91 requires servicer fees to be "permitted under applicable law and the contracts between the parties" and suggests DMI's interpretation of Section 24-9(b)

9

somehow conflicts with this requirement. Section 24-9(b) does permit servicer fees, but it would not override express contractual prohibition, so Section 45-91's requirements must still be met—they are not rendered superfluous.

**B. Section 24-9(b) Affirmatively Entitles DMI To Charge The Fees.**

The Opposition next argues, rather desperately, that even if Section 24-9(b) applies to servicers, its language permitting "fees and other charges in any amount" does not entitle DMI to charge convenience fees because the statutory text does not literally list the specific fee by name. Opp. at 16-17. That is not how statutory authorization works. *Homebuilders Ass'n of Charlotte, Inc. v. City of Charlotte*, 442 S.E.2d 45, 51 (N.C. 1994) (rejecting, as "strained reading," plaintiff's contention that statute's naming certain permitted fees meant that statutory authority to "establish, revise and collect rates, fees or other charges" did not extend to fees not expressly named); *Waddell v. U.S. Bank, N.A.*, 395 F. Supp. 3d 676, 685 (E.D.N.C.) (holding that bank was legally entitled to charge pay-by-phone fees under Section 75-55(2) by federal regulation 12 C.F.R. § 7.4002(a), (b)(2), which grants national banks permission to "charge [their] customers non-interest charges and fees"). Expecting the legislature to expressly permit or prohibit each potential fee *ex ante* would make business regulation impossible.

Plaintiff's argument cannot be right in any case. Section 24-9(b) does not list *any* fees by name, and Plaintiff's interpretation would render it meaningless; if it is too "vague" to permit convenience fees, then it is too vague to permit any fee. *JVC Enters., LLC v. City*

10

*of Concord*, 855 S.E.2d 158, 162 (N.C. 2021) (statutes must be construed "so that none of [their] provisions shall be rendered useless or redundant").[6]

### C. Borrower Agreements Do Not Violate The Statute Of Frauds.

Consumers' agreement to pay convenience fees does not violate the statute of frauds, and Plaintiff cites no case from any jurisdiction supporting his unusual theory that it does. *Cf.* Opp. at 17-18. Section 24-9(b) expressly overrides any statutory provision to the contrary in permitting borrowers to agree to pay fees, and does not require any such agreement to be in writing. N.C. Gen. Stat. § 24-9(b). When the legislature wished to insist that fees charged under Chapter 24 must be in writing, it did so—an unnecessary step if Plaintiff were correct. *See, e.g.*, N.C. Gen. Stat. § 24-1.1A(c)(2)(e) (stating that "[t]he fees and charges permitted by this sub-subdivision may be charged only pursuant to a written agreement…").

Regardless, charging Convenience Fees does not "modify" borrowers' loan agreements. All terms of Plaintiff's Deed of Trust remained the same after he agreed to pay the fees, and where there is no contractual modification, the statute of frauds does not apply to subsequent oral agreements merely because the original contract involved real property. *Ball v. Maynard*, 645 S.E.2d 890, 895-96 (N.C. Ct. App. 2007). Nor are separate agreements between servicers and borrowers somehow improper. Plaintiff implies that

---

[6] Plaintiff's appeals to this Court's and the Fourth Circuit's opinions are misplaced: both hold only that "permitted by law" means "affirmatively permitted," rather than "not prohibited": neither takes the absurd position that a fee must be expressly named to be affirmatively permitted. *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 377-79 (4th Cir. 2022); ECF No. 23 at 6-7.

11

servicers are forbidden from making agreements with customers, which is obviously false—Plaintiff's authorities (Opp. at 17, n.12) merely reject arguments that general contract principles entitle servicers to charge fees by obtaining agreement absent statutory authority. They certainly do not *prohibit* agreements with borrowers expressly authorized by statute.

## II. Count II Must Be Dismissed.

### A. The NCDCA's Exclusive Remedy Provision Bars Count II.

Case law overwhelmingly confirms that the NCDCA is Plaintiff's exclusive remedy and bars his NCUDTPA claim. MSJ at 15-17. The Opposition does not even attempt to address DMI's authorities or otherwise dispute DMI's argument, and thereby concedes it. Opp. at 20-21.

### B. Plaintiff Fails To Prove Deception.

DMI showed that a plaintiff asserting Section 75-1.1 violations based on allegations that loan fees greatly exceed service costs asserts a "misrepresentation" claim requiring reliance, regardless of how the claim is styled. MSJ at 17-19; *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 224, 226-28 (N.C. 2013). Plaintiff offers no evidence either of a misrepresentation or reliance (Opp. at 21-22), and *Bumpers* accordingly bars his "deception" claim based on DMI's cost of pay-by-phone service. Plaintiff seeks to avoid this outcome by styling Count II as an "omission" claim, but the alleged facts giving rise to liability are the same as in *Bumpers* (alleged fees greater than costs; *see* 747 S.E.2d at

12

224) and the court held that a claim on these facts "is not distinct from one based on misrepresentation." *Id*. at 227.

Even if Count II were an omission claim, it fails for lack of duty to disclose, and because Plaintiff does not put forth sufficient evidence to create a dispute of material fact, as DMI has shown. ECF No. 68 at 19-22.

## CONCLUSION

For the foregoing reasons, and those in DMI's opening brief, the Court should grant summary judgment to DMI.

Respectfully submitted this 8th day of December, 2025.

*/s/ Michael J. Gill*
Michael J. Gill
(IL Bar No. 0957615)
Clare E. Myers
(IL Bar No. 6340908)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
Fax: (312) 706-9372
mgill@mayerbrown.com
cmyers@mayerbrown.com

*Lead Counsel for Defendant Dovenmuehle Mortgage, Inc.; Special Appearances Entered Pursuant to Local Rule 83.1(d)*

13

*/s/ Benjamin F. Leighton*
Benjamin F. Leighton
(N.C. Bar No. 50835)
ALEXANDER RICKS PLLC
1420 E. 7th Street, Suite 100
Charlotte, NC 28204
Tel: (980) 498-6102
ben@alexanderricks.com

*Local Civil Rule 83.1(d) Counsel for Defendant Dovenmuehle Mortgage, Inc.*

14

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 3105 words (including the body of the brief, headings and footnotes), as counted by the word-count feature in the word-processing software.

*/s/ Michael J. Gill*
Michael J. Gill

**CERTIFICATE OF SERVICE**

I certify that, on December 8, 2025, a copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF System and served upon all counsel of record via email by consent.

*/s/ Michael J. Gill*
Michael J. Gill

16