# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| GEORGE CUSTER, | Civil Action No. 1:24-cv-00306-CCE-LPA |
| | Chief District Judge Catherine C. Eagles |
| Plaintiff, | Magistrate Judge L. Patrick Auld |
| v. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| DOVENMUEHLE MORTGAGE, INC., | |
| Defendant. | |

John W. Barrett (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
*jbarrett@baileyglasser.com*
*jkauffman@baileyglasser.com*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Bart Cohen (*pro hac vice*)
*bcohen@baileyglasser.com*
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 274-9420
Facsimile: (202) 463-2103

Katherine M. Aizpuru (*pro hac vice*)
Robin P. Bleiweis (*pro hac vice*)
*kaizpuru@tzlegal.com*
*rbleiweis@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Benjamin M. Sheridan (Bar No. 52734)
Jed R. Nolan (Bar No. 56899)
*ben@kleinsheridan.com*
*jed@kleinsheridan.com*
**KLEIN & SHERIDAN, LC PC**
2500 Regency Parkway
Cary, NC 27518
Telephone: (919) 899-9533
Facsimile: (919) 899-9533

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. FACTS ....................................................................................................................... 2

III. ARGUMENT ............................................................................................................. 3

    A. Plaintiff's NCDCA Claim ............................................................................... 3

        1. Statutory Language ............................................................................. 3

        2. Legally Entitled ................................................................................... 4

    B. Plaintiff's § 75-1.1 Claim ................................................................................ 9

    C. Damages ........................................................................................................ 11

    D. DMI's affirmative defenses ........................................................................... 12

IV. CONCLUSION ....................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Alexander v. Carrington Mortg. Servs.*,
 23 F.4th 370 (4th Cir. 2022) ................................................................................ 7, 11

*Bumpers v. Cmty. Bank of Northern Virginia*,
 367 N.C. 81 (2013) .......................................................................................... 11

*In re Creech*,
 513 B.R. 482 (Bankr. E.D.N.C. 2014) ............................................................... 12

*Custer v. Dovenmuehle Mortg., Inc.*,
 2024 WL 4528187 (M.D.N.C. Oct. 18, 2024) ........................................... *passim*

*Glover v. Ocwen Loan Servicing, LLC*,
 127 F.4th 1278 (11th Cir. 2025) ..................................................................... 7, 11

*Henson v. Green Tree Servicing LLC*,
 676 S.E.2d 615 (2009) ......................................................................................... 9

*Johnson v. Select Portfolio Servicing*,
 2025 WL 3264110 (D. Or. Nov. 17, 2025) ......................................................... 8

*Knapp v. PHH Mortg. Corp.*,
 2025 WL 1174947 (D. Or. Apr. 18, 2025) ......................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) ............................................................................................ 3

*NCNB Nat'l Bank of N.C. v. Tiller*,
 814 F.2d 931 (4th Cir. 1987) .............................................................................. 6

*Reid v. Ayers*,
 138 N.C. App. 261 (2000) ................................................................................... 7

*Sain v. Adams Auto Grp.*,
 781 S.E.2d 655 (N.C. Ct. App. 2016) ................................................................. 9

*Trayford v. N.C. Psych. Bd.*,
 174 N.C. App. 118 (2005) ................................................................................... 5

*Williams v. Pennymac Loan Services, LLC*,
 2025 WL 3443489 (M.D.N.C. Dec. 1, 2025) ......................................... 4, 7, 8, 9

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ...................................... 7, 11

Mortgage Debt Collection and Servicing Act, §§ 45-90 *et seq.* ........................................... 6

N.C. Gen. Stat. § 24-1 *et seq.* ....................................................................................... 5, 6

N.C. Gen. Stat. § 24-1.1E(a)(5) ........................................................................................... 6

N.C. Gen. Stat. § 24-2.1 ....................................................................................................... 5

N.C. Gen. Stat. § 24-8 ................................................................................................. 1, 5, 6

N.C. Gen. Stat. § 24-9 ............................................................................................... *passim*

N.C. Gen. Stat. § 75-1.1 ...................................................................................... 1, 2, 9, 11

N.C. Gen. Stat. §§ 75-50 *et seq.* ......................................................................................... 6

N.C. Gen. Stat. § 75-55(2) .......................................................................................... 1, 3, 4

N.C. Gen. Stat. §§ 53-244.010 *et seq.* ................................................................................ 6

**Other Authorities**

General Assembly, *Summaries of Substantive Ratified Legislation* (2003),
https://webservices.ncleg.gov/ViewDocSiteFile/56394 .................................................. 6

North Carolina Gen. Assembly, Ch. 753 HB 425 (1963), available at
*https://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1963-
1964/SL1963-753.html* .................................................................................................... 6

Senate Judiciary I Committee, Minutes (1999),
https://webservices.ncleg.gov/ViewDocSiteFile/65966 .................................................. 6

Session Law 2003-401, HB 1182 (2003),
https://www.ncleg.gov/Sessions/2003/Bills/House/PDF/H1182v6.pdf; 2003 .............. 6

I.      INTRODUCTION

DMI does not deny the core facts Plaintiff has offered in support of his claims under the NCDCA and § 75-1.1. Instead, apparently conceding that its pay-to-pay fees are both a fee for services rendered and a fee incidental to the principal debt, DMI focuses on two flawed legal arguments: first, a novel interpretation of a usury statute governing lenders and loan origination, N.C. Gen. Stat. § 24-9(b), that is inconsistent with statutory text, legislative history, and policy; and second, that DMI's omissions (which, again, it does not deny) are not deceptive. Neither defeats summary judgment.

Section 24-9(b) "says nothing about what fees servicers can and cannot charge." *See Custer v. Dovenmuehle Mortg., Inc.*, 2024 WL 4528187, at *3 (M.D.N.C. Oct. 18, 2024) (noting that a related statute, § 24-8(a), "regulates what lenders can and cannot charge" and "says nothing about what fees servicers can and cannot charge"). Accordingly, it does not and cannot entitle DMI, a subservicer, to impose new fees long after origination. DMI does not show any "legal entitlement" under § 75-55(2), and does not show a dispute of material fact. Thus, Plaintiff is entitled to summary judgment on his NCDCA claim as well as his § 75-1.1 claim (NCDCA violation is per se § 75-1.1 violation).

Separately, Plaintiff is entitled to summary judgment on his § 75-1.1 claim because he has shown that (1) DMI's material omissions were deceptive, and (2) DMI's pay-to-pay fees violate established public policy. DMI just repeats the losing arguments it made at the pleadings stage. The undisputed facts following discovery, which DMI does not seriously challenge, do not change the legal bases for Plaintiff's claims. Where DMI attempts to conjure disputes, it relies on speculation and hypothetical—not facts. DMI fails to dispute

1

the material facts supporting elements of deception and violation of public policy and Plaintiff is entitled to summary judgment on his § 75-1.1 claim.

Finally, DMI does not dispute Plaintiff's method for calculating damages nor respond as to its affirmative defenses.

Plaintiff requests the Court grant his Motion.

## II. FACTS

DMI objects to only two undisputed material facts: Nos. 16 and 19. *See* Dkt. 68 ("Opp. Br."), at 5. Its arguments fail. First, DMI argues that the deposition testimony doesn't support the asserted facts. But the testimony speaks for itself. DMI's attempt to recharacterize its witnesses' clear and plain testimony is unpersuasive, and DMI offers no facts to the contrary.

As for the non-portfolio loans, DMI has not provided any evidence that a single non-portfolio loan expressly authorizes pay-to-pay fees. Plaintiff specifically requested that DMI produce any loan agreement it contended expressly authorized pay-to-pay fees. CC Reply Ex. 4.[1] DMI produced nothing. *Id.* Instead, DMI's expert (who has "spent a lot of time thinking about the language in those forms") acknowledges that even non-GSE-backed loans "make a reference specifically to the uniform security instrument" and contain language recognizable "as coming from the uniform security instrument published by the GSEs." SJ Ex. G[2] at 152:8-9, 153:11-154:8. *See also* CC Reply Ex. 5 at 155:5-

---

[1] Exhibits cited as "CC Reply Ex. __" are exhibits to the Kauffman Declaration at Dkt. 51-1.
[2] Exhibits cited as "SJ Ex. __" are attached to the Aizpuru Declaration in Support of Plaintiff's Motion for Partial Summary Judgment, Dkt. 57.

2

158:10 (expert cannot identify any mortgage agreement that expressly authorizes pay-to-pay fees). At the summary judgment stage, DMI is required to provide *facts* showing a genuine dispute: "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the rule, the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quotation marks omitted).

DMI's speculation that unseen, unidentified, and unproduced documents "may" contain language differing from Plaintiff's loan does not overcome the expert and fact witness testimony confirming that the standard uniform mortgage terms used in North Carolina do not permit pay-to-pay fees.[3]

## III. ARGUMENT

### A. Plaintiff's NCDCA Claim

#### 1. Statutory Language

DMI's construction of the NCDCA is dead wrong. Section 75-55(2) is written in the disjunctive such that "unless legally entitled" applies only to the "any interest or other charge, fee, or expense incidental" clause—not the "services rendered" clause. This is evident from the comma separating the two separate clauses and the repeated framing signaling a separate thought; if "unless legally entitled" applied to both clauses, there would be a comma before it:

---

[3] DMI mentions other undisputed facts but does not offer any basis to dispute them.

| *Compare*: | *With*: |
|---|---|
| "Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge. . . ." | "Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt*[,]* unless legally entitled to such fee or charge. . . ." |
| N.C. Gen. Stat. § 75-55(2). | Hypothetical rewrite as implied by DMI. |

*See also, e.g.*, *Custer*, 2024 WL 4528187, at *2 (citing § 75-55(2) and recognizing by use of "[or]" that the two clauses are distinct).

Because DMI does not dispute its pay-to-pay fees are fees for services rendered, there is no carve out for potential legal entitlement. Plaintiff's motion can be granted on this basis.

### 2. Legally Entitled

Even if DMI's construction of § 75-55(2) were correct, its argument still fails because it has not shown legal entitlement.[4] DMI tries, without support, to shoehorn its fees into N.C. Gen. Stat. § 24-9, a usury statute governing the interest rate and related fees that lenders may charge at origination. *See* N.C. Gen. Stat. § 24-9. But DMI is not a lender,

---

[4] DMI does not dispute that pay-to-pay fees are incidental to the principal debt, and another court in this District recently confirmed they are at the pleadings stage. *Williams v. Pennymac Loan Services, LLC*, 2025 WL 3443489, at *4 (M.D.N.C. Dec. 1, 2025) ("fees [] charged when making a payment online or by phone[,]. . . under the plain language of the statute, [] constitute fees incidental to the debt.").

4

and its pay-to-pay fees are unrelated to, and imposed long after, loan origination. And contrary to DMI's assertion, Opp. Br. at 9, Plaintiff was not required to debunk an irrelevant statute in his opening brief. DMI's position collapses upon considering the plain language, statutory scheme, legislative history, and underlying policy of Section 24-9. *See Trayford v. N.C. Psych. Bd.*, 174 N.C. App. 118, 122-23 (2005) (courts must consider "the context" when interpreting a statute).

Section 24-9(b) describes what "any lender, including a bank, may charge and collect from the borrower" in an "exempt transaction." N.C. Gen. Stat. § 24-9(b). DMI is not a lender, nor a bank. CC Reply Ex. 1, at 31:10-13 ("I want to make it clear that you know that we don't originate loans."); CC Reply Ex. 2, at 15:22-24 (agreeing DMI is "strictly a subservicer"). A "loan transaction" refers to an extension of credit, not other activities like making payments. N.C. Gen. Stat. § 24-2.1 (defining "Transactions governed by Chapter [24]" as "extensions of credit" and solicitations to lend or borrow). The only fees mentioned by name in § 24-9 are prepayment fees, which are disclosed in loan origination documents. *Id.* § 24-9(c)(3). There is no discussion of loan servicing, debt collection, or other fees that could arise after loan origination.

Chapter 24, titled "Interest," deals with interest and extensions of credit, not later loan servicing. *See* N.C. Gen. Stat. §§ 24-1 *et seq.*; *Custer*, 2024 WL 4528187, at *3 (noting § 24-8(a) "says nothing" about servicers).[5] Where Chapter 24 addresses fees, it relates to

---

[5] The Court rejected DMI's § 24-8 argument at the pleadings stage because it found that law did not apply to DMI, not due to missing facts. *Custer*, 2024 WL 4528187, at *3. There is no reason to revisit that ruling.

5

fees typically assessed at loan origination or when additional credit is extended via renewal, modification, or extension. *See, e.g.*, *id.* §§ 24-1.1E(a)(5), 24-8(d). Debt collection and mortgage servicing are nowhere mentioned in Chapter 24 because mortgage servicers and other debt collectors—and the fees they may charge and the requirements they must meet— are governed by other chapters of North Carolina law. *See* N.C. Gen. Stat. §§ 75-50 *et seq.* ("Prohibited Acts by Debt Collectors"); *id.* §§ 45-90 *et seq.* (Mortgage Debt Collection and Servicing Act); and *id.* §§ 53-244.010 *et seq.* (Secure and Fair Enforcement Mortgage Licensing Act).

The legislative history demonstrates that Section 24-9(b) is and has always been a usury statute, not a debt collection statute, intended to deal with predatory lending, interest rates, and loan origination issues. Enacted in 1963, § 24-9(b) initially applied only to corporate entities and essentially stated that businesses "may agree to pay, and any lender or other person may charge and collect . . . interest, fees, and other charges at any rate." N.C. Gen. Stat. § 24-9(b) (1999).[6] In 2003, the General Assembly expanded the statute to encompass consumer home loans.[7] Thus, the 2003 language, still present today, referencing both what "any borrower . . . may agree to pay" *and* what "any lender . . . may charge and

---

[6] *See* Ch. 753, HB 425 (1963), available at https://www.ncleg.net/EnactedLegislation/SessionLaws/HTML/1963-1964/SL1963-753.html; *NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931, 937 (4th Cir. 1987) (interpreting 1986 version of statute); Senate Judiciary I Committee, Minutes (1999), at pp. 1409-1436, https://webservices.ncleg.gov/ViewDocSiteFile/65966.

[7] *See* Session Law 2003-401, HB 1182 (2003), https://www.ncleg.gov/Sessions/2003/Bills/House/PDF/H1182v6.pdf; 2003 General Assembly, *Summaries of Substantive Ratified Legislation* (2003), at p. 41, https://webservices.ncleg.gov/ViewDocSiteFile/56394

collect" exists to clarify that *any* borrower—not just businesses—taking out an "exempt" loan could agree to interest rates that might otherwise be usurious. The 2003 amendment also narrowed the language from "any lender or other person" to "any lender, including a bank," clarifying that § 24-9(b) applies only to "lenders."[8]

DMI cites no case law supporting DMI's position on § 24-9. And as a matter of policy, debt collectors should not be allowed to impose later-added fees on borrowers via a purported separate contract because "consumers have no say in choosing their debt collectors, and they may well be over a barrel at that later point in time."[9] *Alexander v. Carrington Mortg. Servs.*, 23 F.4th 370, 378 (4th Cir. 2022). "[I]f any valid, new contract were enough, debt collectors would be free to offer unfair terms to consumers who cannot seek a better deal elsewhere." *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1293 (11th Cir. 2025). According to DMI, § 24-9(b) allows a third-party debt collector to rewrite the terms of a loan to allow new, previously uncontemplated fees, in many cases years after the credit was originally extended, simply by obtaining a captive borrower's "agreement." But courts have repeatedly rejected similar arguments at both the pleading and merits stages, and DMI's inapplicable statute does not undermine these persuasive authorities. *See, e.g.*, *Alexander*, 23 F.4th at 378; *Glover*, 127 F.4th at 1293; *Williams*, 2025 WL 3443489, at *4-5; *Knapp v. PHH Mortg. Corp.*, 2025 WL 1174947, at *7-8 (D. Or. Apr. 18,

---

[8] *Id.*
[9] North Carolina courts look to interpretations of the FDCPA as "particularly instructive." *Reid v. Ayers*, 138 N.C. App. 261, 263 (2000).

2025); *Johnson v. Select Portfolio Servicing*, 2025 WL 3264110, at *4-6 (D. Or. Nov. 17, 2025).

Nor is there any support for DMI's assertion that the language "[n]otwithstanding any other provision of . . . state law" in § 24-9 trumps laws that actually apply, like the NCDCA. *See* Opp. Br., at 15.

Finally, despite DMI's speculation to the contrary, Plaintiff has offered sufficient evidence that the class members' uniform mortgage agreements do not expressly authorize pay-to-pay fees. *See* CC Ex. 3[10] (Deed of Trust, labeled "UNIFORM INSTRUMENT" in the footer); SJ Ex. D (Braun Dep. 25:21-26:21); SJ Ex. G (Bryar Dep. 153:6-155:12). DMI does not dispute that the mortgage agreements do not mention pay-to-pay fees, only that they do not *prohibit* pay-to-pay fees, which is insufficient. Opp. Br. at 11-12; *see Custer*, 2024 WL 4528187, at *3 n.3. Finally, Plaintiff's position is not that DMI is a "lender," but that the four corners of the agreement limit the fees that anyone—lenders, servicers, or other third-party debt collectors—may later charge a borrower after credit has been extended (absent explicit statutory permission). That is how courts interpret the NCDCA. *E.g.*, *Custer*, 2024 WL 4528187, at *3; *Williams*, 2025 WL 3443489, at *5.

DMI's attempt to extract legal entitlement from silence—in the law, in the mortgage agreement, and from regulators—is unavailing. Because DMI does not show a dispute of fact for trial and its legal argument fails, summary judgment for Plaintiff is warranted.

---

[10] Exhibits cited herein as "CC Ex. __" refer to those attached to the Declaration of Katherine M. Aizpuru in support of Plaintiff's Motion for Class Certification. Dkt. 44-1.

8

### B. Plaintiff's § 75-1.1 Claim

Because Plaintiff has offered facts to establish each element of the NCDCA claim, Plaintiff has also established a per se unfair trade practice under § 75-1.1. *See Custer*, 2024 WL 4528187, at *4; *Williams*, 2025 WL 3443489, at *5. This alone warrants summary judgment on Plaintiff's § 75-1.1 claim.

Separately, Plaintiff has also shown DMI violated § 75-1.1 by omitting material information about its pay-to-pay fees from its communications with borrowers, and that those omissions had "the capacity or tendency to deceive." *Henson v. Green Tree Servicing LLC*, 676 S.E.2d 615, 619 (2009); *see also Sain v. Adams Auto Grp.*, 781 S.E.2d 655, 661 (N.C. Ct. App. 2016).

DMI does not dispute Plaintiff's factual showing that it pays a third-party processor only cents to process phone payments. At most, DMI offers purported "hard costs" of slightly higher amounts, but it does not show how often they are incurred and does not dispute they are still far lower than its pay-to-pay fees. CC Reply Ex. 3, at DMI_CUSTER_0002177. DMI also does not break out or quantify its other purported costs it claims are associated with pay-to-pay fees, most of which it incurs regardless of whether DMI processes phone payments. There is zero evidence in the record of any calculated or even estimated overhead costs DMI purportedly incurs attributable to collecting and processing phone payments. DMI cannot avoid accountability by claiming it incurs generic costs while producing no evidence tying them to phone fee transactions, and its hypotheticals are not facts sufficient to create a genuine issue of fact for trial.

DMI also does not dispute it uniformly fails to disclose that it is already

9

compensated by the lender for collecting mortgage payments. That DMI's subservicing fee does not change based on method of collection supports Plaintiff's position, not DMI's—its servicing fee compensates it for payment collection *regardless* of method. Opp. Br. at 23. The subservicing fee encompasses processing phone, online, and mail payments—just like it compensates for answering borrower questions communicated in writing and by phone and handles other duties. And DMI does not dispute its failure to disclose it is collecting fees that are not authorized by deeds of trust Borrowers, who do not negotiate with or even choose their mortgage servicers, reasonably expect that mortgage servicers are following the law when assessing fees and should not have to go review their lengthy mortgage agreements to confirm their debt collector's compliance with the law. *See, e.g.*, Dkt. 55-2, Custer Decl. ¶¶ 8-9. Indeed, industry standards require mortgage servicers to follow the law. SJ Reply Ex. A (Bryar Dep. 146:12-18, 221:11-17).[11]

      Plaintiff has adduced facts showing DMI had a duty to disclose this material information because only DMI had access to it and DMI took affirmative steps to conceal it by creating scripts and documents that did not include it. DMI alone controls its communications, policies, and procedures. *See, e.g.*, SJ Ex. C (Smith Dep. 68:21-69:9); SJ Ex. I (Pay-By-Phone Procedure); and SJ Ex. J (Pay-By-Phone Training Document). That DMI made no deceptive *representations* misses the point—Plaintiff's claim, upheld at the

---

[11] Exhibits cited herein as "SJ Reply Ex. __" are attached to the Declaration of Katherine Aizpuru in support of this Reply.

pleadings stage, is that DMI *omitted* the material information.[12]

Finally, as another alternative, Plaintiff has shown that DMI's collection of pay-to-pay fees is an unfair trade practice under § 75-1.1 because it violates public policy. Plaintiff provided proof of the relevant public policy. *See* CC Ex. 13 (CFPB Bulletin); CC Ex. 14 (FTC Press Release); CC Ex. 15 (AG Stein Press Release). DMI falsely claims these policies are outdated but offers no *facts* supporting a change to North Carolina's position since stated by then-AG, now-governor Stein. As for findings of illegality, both circuit courts that have evaluated pay-to-pay fees have found they violate the federal FDCPA, the blueprint for the NCDCA. *See, e.g.*, *Alexander*, 23 F.4th at 374-79; *Glover*, 127 F.4th at 1284-93.

Plaintiff is entitled to summary judgment on his § 75-1.1 claim.

## C. Damages

Apart from contesting its liability, DMI does not dispute how Plaintiff proposed calculating damages. Accordingly, if the Court grants summary judgment in Plaintiff's favor, it should also enter summary judgment as to the actual damages in accordance with Plaintiff's motion.

---

[12] *Bumpers v. Cmty. Bank of Northern Virginia*, 367 N.C. 81 (2013), a case concerning willingly and honestly negotiated transactions, has no bearing on what an unchosen third-party debt collector may hide from captive consumers while burdening them with fees. And DMI's slippery slope argument, that "every transaction in a market economy would involve a deceptive practice," fails for the same reason. Opp. Br. at 18. Typical transactions in a market economy involve two willing parties, but borrowers cannot choose their loan servicer. *See* Custer Decl. ¶ 9; SJ Ex. G (Bryar Dep. 181:16-21).

11

DMI fails to show that the NCDCA statutory penalties are the "exclusive remedy" for the harms it caused because a violation of the NCDCA is also a violation of Chapter 75. *See, e.g.*, *In re Creech*, 513 B.R. 482, 485 (Bankr. E.D.N.C. 2014).

### D. DMI's affirmative defenses

DMI concedes its affirmative defenses are unsupported by failing even to mention them. Summary judgment is warranted on all of its affirmative defenses.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Partial Summary Judgment and order additional briefing on the amount of the statutory penalty, interest, injunctive relief, and attorneys' fees and costs.

Dated: December 8, 2025					Respectfully submitted,

*/s/ Katherine M. Aizpuru*
Katherine M. Aizpuru (*pro hac vice*)
Robin P. Bleiweis (*pro hac vice*)
*kaizpuru@tzlegal.com*
*rbleiweis@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

*/s/ Benjamin M. Sheridan*
Benjamin M. Sheridan (Bar No. 52734)
Jed R. Nolan (Bar No. 56899)
*ben@kleinsheridan.com*
*jed@kleinsheridan.com*
**KLEIN & SHERIDAN, LC PC**
2500 Regency Parkway
Cary, NC 27518
Telephone: (919) 899-9533
Facsimile: (919) 899-9533

John W. Barrett (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
*jbarrett@baileyglasser.com*
*jkauffman@baileyglasser.com*
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Bart Cohen (*pro hac vice*)
*bcohen@baileyglasser.com*
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 274-9420
Facsimile: (202) 463-2103

## CERTIFICATE OF SERVICE

I certify that, on December 8, 2025, a copy of the foregoing document was filed with the Clerk of the Court and upon counsel of record using the CM/ECF System.

*/s/ Katherine M. Aizpuru*

Katherine M. Aizpuru

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 3,123 words (excluding material that may be excluded), as counted by the Word Count feature in Microsoft Word.

*/s/ Katherine M. Aizpuru*

Katherine M. Aizpuru
