IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE CUSTER, )
)
          Plaintiff, )
)
v. ) 1:24-CV-306
)
DOVENMUEHLE MORTGAGE, )
INC., )
)
          Defendant. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

      The defendant, Dovenmuehle Mortgage, Inc., charges customers like the plaintiff, George Custer, a fee for paying their mortgages by phone. Mr. Custer has sued DMI on behalf of himself and a putative class, asserting that DMI cannot lawfully collect this fee and that this practice violates the North Carolina Debt Collection Act and the North Carolina Unfair and Deceptive Trade Practices Act. Mr. Custer moves to certify one class covering both causes of action. Because Mr. Custer has satisfied the Rule 23 requirements for the case, the motion will be granted.

    **I.**      **Facts As Alleged**

      DMI operates as a loan servicer and sub-servicer across the United States. Doc. 1 at ¶ 18. It accepts payments and collects mortgage debt from borrowers in the form of a monthly payment. *Id.* at ¶¶ 23, 27. DMI charges borrowers a fee of up to $15 for making loan payments by phone. *Id.* at ¶ 28; Doc. 44-1 at 58–304. It charges $9.50 when a customer pays using interactive voice recognition and $11.50 when a customer pays

while speaking with a customer service representative. Doc. 44-1 at 58–304, 308, 312–13. The amount DMI pays to process the phone payments is well below the amounts charged to borrowers. *Id*. at 322, 356; Doc. 1 at ¶ 29. Mr. Custer contends that DMI illegally profits on the difference, because, at most, the mortgage agreements only allow DMI to pass along the actual cost of the processing. Doc. 1 at ¶¶ 29–30. The phone payment transaction often costs servicers, like DMI, less than 50 cents per transaction, far less than the costs associated with payments by check or automatic deduction from checking accounts. *Id*. at ¶¶ 32, 34; Doc. 44-1 at 322.

DMI services Mr. Custer's mortgage on his North Carolina property. Doc. 1 at ¶¶ 50–51; Doc. 1-3. In September 2023, DMI charged him $11.50 for paying his mortgage by phone. Doc. 1 at ¶ 52; Doc. 44-1 at 315–16. His Mortgage Agreement does not explicitly authorize Pay-to-Pay Fees. Doc. 1-3. It states that the "Lender may not charge fees that are expressly prohibited by this Security Agreement or by Applicable Law." *Id*. at 8. The Mortgage Agreement defines Applicable Law as "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." *Id*. at 2.

II.     **The Claims and Requested Class**

Mr. Custer alleges that DMI violates North Carolina law by charging fees to customers who pay their mortgages by phone. Under Count I, he asserts that DMI violates the NCDCA by using unconscionable means to collect mortgage payments. Doc. 1 at ¶¶ 77–83. Under Count II, he asserts that DMI violates the UDTPA because the

2

charge for phone payment is deceptive, unfair, and illegal. *Id*. at ¶¶ 87–94. He requests certification of one class to bring both claims. Doc. 43. He proposes the following class:

> All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by DMI, (3) and who paid a pay-to-pay fee to DMI when making a payment on their mortgage by telephone or an Interactive Voice Response system during the applicable statutes of limitations through the date a class is certified.

*Id*. at 2. DMI opposes certification. Doc. 50. Each party filed briefs with evidentiary support, Docs. 44, 50, 51, and the motion is ripe for decision.

### III.     Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, the plaintiffs "must affirmatively demonstrate their compliance" with Federal Rule of Civil Procedure 23. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up). District courts must rigorously assess the proffered evidence, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), but they have "wide discretion" in evaluating whether the Rule 23 requirements have been met, in light of their experience and expertise in managing complex litigation. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010); *see Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them" as to the "certification and management of potentially cumbersome" class actions).

There are a number of requirements a plaintiff must meet to obtain class certification. As a threshold requirement, the class representative must be a member of the class he seeks to represent. The plaintiff must also meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Finally, the plaintiff must meet one set of requirements under Rule 23(b). Here, the plaintiff proceeds under Rule 23(b)(3), so he must show that the class members are readily identifiable and must meet the predominance and superiority requirements.

### A. Threshold Requirements

The proposed class representative must be a member of the proposed class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *see also* Fed. R. Civ. P. 23(a). As noted *supra*, the proposed class consists of:

> All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by DMI, (3) and who paid a pay-to-pay fee to DMI when making a payment on their mortgage by telephone or an Interactive Voice Response system during the applicable statutes of limitations through the date a class is certified.

During the relevant time, Mr. Custer had a residential mortgage loan on his North Carolina property, the mortgage was serviced or subserviced by DMI, and DMI charged him a fee of $11.50 when he paid his mortgage by phone. Doc. 1 at ¶¶ 50–52; Doc. 1-3; Doc. 44-1 at 315–16. He is thus a member of the proposed class, and DMI does not contend otherwise.

A plaintiff pursuing class certification under Rule 23(b)(3) must also demonstrate that members of the class are readily identifiable or ascertainable. *Peters v. Aetna Inc.*, 2

4

F.4th 199, 241–42 (4th Cir. 2021). To be readily identifiable, the plaintiff need not be able to "identify every class member at the time of certification." *Krakauer v. Dish Network, LLC* ("*Krakauer II*"), 925 F.3d 643, 658 (4th Cir. 2019) (cleaned up). Rather, a class need only be defined "in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member at some point." *Id.* (cleaned up).

The members of the putative class are ascertainable. They can be identified based on the "objective criteria," *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014), of whether they have a residential mortgage loan on a North Carolina property that is serviced or subserviced by DMI and paid a fee to DMI for making a mortgage payment by phone during the relevant time. DMI maintains records of its customers' names, contracts, claims, invoices, payment amounts, and payment types, Doc. 44-1 at 58–304, so those qualifications for class membership can be readily determined through common records DMI itself maintains.

### B. Rule 23(a) Requirements

#### 1. Numerosity

Mr. Custer has provided evidence that there are thousands of members in the putative class. Doc. 44-1 at 58–304. DMI does not dispute numerosity. *See generally* Doc. 50.

Joinder of that many parties would be impracticable, raising the specter of many lawsuits. Some class members would also be economically unmotivated to litigate their

claims. And judicial economy favors a class action over joinder. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 235 (4th Cir. 2021).

Mr. Custer has satisfied the numerosity requirement.

### 2. Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, "the plaintiff must demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349–50 (cleaned up). "Even a single common question will do," *id.* at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT*, 764 F.3d at 360 (cleaned up); *see also Carolina Youth*, 60 F.4th at 780 ("Commonality requires that an entire set of claims depend upon a common contention that is capable of classwide resolution." (cleaned up)).

Mr. Custer identifies several common legal and factual questions that will drive the liability decision in the putative class. Doc. 44 at 12. Key questions include: (1) whether DMI collected the mortgage payments using unconscionable means in violation of the NCDCA, and (2) whether DMI's practice of charging fees to pay by phone constitutes a deceptive, unfair, and illegal practice.[1] Mr. Custer has satisfied the commonality requirement.

---

[1] "In a class action brought under Rule 23(b)(3), the commonality requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (cleaned up); *accord Thorn v. Jefferson-Pilot Life Ins.*

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). This requirement "goes to the heart of a representative parties' ability to represent a class," and the named plaintiff's interest in prosecuting its case "must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). The claims of the class representative and the claims of the class need not "be perfectly identical or perfectly aligned." *Id.* at 467.

As to the typicality requirement, all the class members allege the same injury: imposition of illegal fees to pay their mortgage by phone. Mr. Custer bases his claims on violations of the NCDCA and UDTPA. Doc. 1 at ¶¶ 80, 86; *see Lienhart*, 255 F.3d at 146 ("Typicality requires that the class representative be part of the class and possess the same interest and suffer the same injury as the class members." (cleaned up)). DMI followed consistent procedures in charging its customers fees to pay their mortgages by phone. *See* Doc. 44-1 at 58–304; 308. Mr. Custer alleges that he and all putative class

---

*Co.*, 445 F.3d 311, 319 (4th Cir. 2006). The common questions and DMI's arguments against commonality will be discussed in more detail *infra* in connection with the predominance requirement.

members have Uniform Mortgages which do not permit pay-to-pay fees. Doc. 44 at 14. All putative class members have mortgages on North Carolina property that are serviced by DMI, and all allege the same injury under the same two North Carolina statutes. *Id*.; Doc. 1 at ¶¶ 80, 86.

Mr. Custer has satisfied the typicality requirement.

### 4. Adequacy of Representation

Rule 23(a) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *accord Carolina Youth*, 60 F.4th at 780. It also serves to assess "competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20; *accord Wal-Mart*, 564 U.S. at 349 n.5.

Mr. Custer has satisfied the adequacy requirement. He has been an active participant in this litigation. He has assisted counsel in the litigation, produced documents, and participated in a deposition. Doc. 44 at 14; Doc. 44-1 at 3, 5, 379–98. He is motivated to pursue the case because he is directly affected by the pay-to-pay fee he paid DMI. *See* Doc. 1 at ¶¶ 50–55; Doc. 44-1 at 381.

Plaintiff's counsel will adequately represent the class. The Court has independently reviewed the qualifications, experience, knowledge of the law, and resources of plaintiff's counsel. They have extensive experience in consumer class litigation actions. *See* Doc. 44-1 at 5–13; Doc. 44-2 at 2–4; Doc. 44-3 at 2–5. Plaintiff's

counsel's qualifications will be discussed in more detail *infra* at 15 when addressing appointment of class counsel.

### C. Rule 23(b)(3) Requirements

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one that is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). "[C]ommon issues of liability may still predominate even when some individualized inquiry is required." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013); *see also Krakauer v. Dish Network L.L.C.* ("*Krakauer I*"), 311 F.R.D. 384, 399 (M.D.N.C. 2015) ("Predominance does not require all issues to be common." (cleaned up)); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003) ("[T]he need for individualized proof of damages alone will *not* defeat class certification."). "Predominance applies to damages because the efficiencies of the class action mechanism would be negated if questions of individual damage calculations overwhelm questions common to the class," but "this does not mean that damages must be susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *In re Zetia*, 7 F.4th at 237 (cleaned up).

The superiority requirement looks at whether the class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615 (cleaned up). Superiority reflects the

9

policy at the core of class actions, which were designed to overcome the problem that "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 513 (2017) (citing *Amchem*, 521 U.S. at 617). Class actions address "this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (cleaned up).

Rule 23(b)(3) provides a non-exclusive list of factors for courts to consider in deciding whether a class action meets the predominance and superiority requirements:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *accord Thorn*, 445 F.3d at 319.

### 1. Predominance

Courts look to the elements of the cause of action to decide if common questions of law and fact predominate. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

"All NCDCA claims require: (1) a consumer; (2) that owes a debt; (3) to a debt collector." *Onnipauper LLC v. Dunston*, 290 N.C. App. 486, 490, 892 S.E.2d 487, 491 (2023). In addition to these basic elements, an NCDCA claim requires a showing that the debt collector committed an unfair act that affects commerce and that proximately injures the consumer. *Id.* Similarly, for a UDTPA claim, the plaintiff must establish an unfair act

in or affecting commerce that proximately causes injury. *See Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); N.C. Gen. Stat. § 75-1.1.

Here, there are multiple common questions. Whether DMI is a debt collector and the class members are consumer-debtors are common questions. On behalf of the class, the plaintiff requests statutory damages for the NCDCA claim, Doc. 1 at ¶ 83; N.C. Gen. Stat. § 75-56(b), so this will also raise a common question. *Krakauer II*, 925 F.3d at 658.

Other common questions relate to both the UDTPA and NCDCA claims, such as (1) whether DMI's acts in charging the fee are in commerce; (2) whether the mortgage loan agreement contains any provision that authorizes DMI to charge a pay-to-pay fee; (3) whether there is any other statutory or regulatory provision that allows DMI to charge the pay-to-pay fee at many times its cost; (4) whether it is illegal for DMI to charge the pay-to-pay fee;[2] and (5) whether the fee charged is so large in relation to its cost to DMI that it is unscrupulous, oppressive, and substantially injurious to consumers. The plaintiff's evidence at this point tends to show that DMI follows standard procedures in charging customers to pay their mortgage by phone, using either interactive voice recognition or a customer service representative, Doc. 44-1 at 58–304, 308, 312–13, such

---

[2] Mr. Custer points to a provision of the NCDCA, § 75-55(2), that prohibits a debt collector from using unconscionable means to collect a debt. Doc. 1 at ¶¶ 16, 80. By statute, it is unconscionable for a debt collector to collect or attempt to collect a "fee or expense incidental to the principal debt unless legally entitled to such fee." N.C. Gen. Stat. § 75-55(2). Mr. Custer contends that DMI's pay-to-pay fee is unfair and unconscionable under the NCDCA and the UDTPA because nothing in the mortgage agreements or the statutes authorizes the pay-to-pay fees at issue here, and thus that DMI is not legally entitled to the pay-to-pay fee. Doc. 1 at ¶¶ 90, 94 (UDTPA); Doc. 1 at ¶¶ 77–83 (NCDCA, relying on § 75-55(2)).

11

that answers to these questions will be applicable to all putative class members. Whether the facts found by the jury constitute an unfair trade practice will be a common question of law. *See Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 19-CV-294, 2022 WL 198782, at *2 (M.D.N.C. Jan. 13, 2022).

DMI contends that there are many individual questions that defeat certification. Primarily DMI points to § 24-9(b), a statute that allows lenders for certain loans to charge fees "in any amount the borrower agrees to pay." N.C. Gen. Stat. § 24-9(b). DMI contends that whether each class member "agreed to pay" the pay-to-pay fee is an individual question.

But it is not at all certain that this statute applies to this situation; DMI itself admits it is a sub-servicer of loans originated by others, Doc. 50-1 at ¶ 3; Doc. 53-1 at 3; Doc. 53-2 at 3, which tends to indicate it is not a lender. In any event, whether that statute applies to the fees at issue raises another common question. Should individual consent become relevant, the evidence tends to indicate that DMI used a pre-recorded message for all phone payments, Doc. 53-3 at 5–6, and the plaintiff has indicated he would stipulate such oral consents were obtained, Doc. 51 at 10, so this would not raise significant individual questions. If and when the question of consent is found to matter, and if and when it turns on individual issues, it can be managed.

DMI contends that the class members have different loan agreements with different provisions, thus raising individual questions as to whether DMI is legally entitled to charge and collect the pay-to-pay fee at issue. But it identifies no loan agreement for any class member which might authorize such fees, and it offers only

12

speculation to support this contention. Doc. 50-1 at ¶ 5.[3] Indeed, DMI refused to produce loan agreements during discovery contending among other things that they were irrelevant. Doc. 53-4 at 3, 4. It is difficult to understand how such loan agreements went from being irrelevant to crucial.

Mr. Custer has satisfied the predominance requirement.

### 2. Superiority

A class action is the superior method to resolve Mr. Custer's UDTPA and NCDCA claims. The type of injury the putative class members allegedly suffered is not a personal injury or death of a loved one, where a plaintiff will ordinarily have "a substantial stake in making individual decisions on whether and when to settle." *Amchem*, 521 U.S. at 616 (cleaned up). Here, "the class members likely have little interest in controlling the litigation." *See Krakauer I*, 311 F.R.D. at 400.

Given the large number of class members, class-wide adjudication will be more efficient. *See Gunnells*, 348 F.3d at 432–33; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). Adjudicating these claims in one forum will provide flexibility, control, and consistency that would not exist with individual litigation. *See* Fed. R. Civ. P. 23(b)(3)(C); *Gunnells*, 348 F.3d at 425, 433.

---

[3] Presumably, DMI has access to all the loan agreements. Yet all DMI's Senior Vice President says in his declaration under oath is that "an unknown number" of class members "may have had language in their loan agreements" different from the language in the plaintiff's loan agreement. Doc. 50-1 at ¶ 5; *see also id.* at ¶ 6 (similarly speculative assertion about class members who are not current DMI customers).

13

Absent a class action, each North Carolina residential mortgage holder who paid DMI fees to pay their mortgage by phone will need to bring an individual case or each class member would need to be joined in this action. Either option would be onerous, inefficient, and a waste of court resources. A class action will allow finality for all members of the class. DMI also benefits, as without class certification it faces the possibility of conflicting verdicts on what is essentially the same issue if claims challenging its pay-to-pay fees are raised in more than one lawsuit.

DMI contends that Mr. Custer fails to meet the superiority requirement because of the individualized inquiries required. But, as discussed *supra*, the potential individual issues do not present great difficulties in managing the class. *See* Fed. R. Civ. P. 23(b)(3)(D).

The Court has overseen many class actions. As these cases go, this one is pretty simple. It has discrete dispositive common questions, and many of those questions are likely to be resolved at summary judgment. If and when individual questions arise, it is likely they can be managed fairly and efficiently.

Mr. Custer has satisfied the superiority requirement.

## IV. Class Definition to Include Class Period Dates

Mr. Custer's proposed class describes the class period as "during the applicable statutes of limitations through the date a class is certified." Doc. 43 at 2. It is the better practice to define the class by date, not by general reference to the statute of limitations.

It is clear that the statute of limitations for both NCDCA and UDTPA claims is four years. N.C. Gen. Stat. § 75-16.2. Thus the class period start date for this action is

14

for payments made on or after April 10, 2020, four years before Mr. Custer filed the complaint, Doc. 1, through the date class notice is approved. *See Heredia v. Sunrise Senior Living, LLC*, No. 18-CV-1974, 2024 WL 6910417, at *1 (C.D. Cal Feb. 12, 2024) ("Terminating a class period on the date of class notice is a common approach.") (collecting cases).

The class definition will be:

> All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by DMI, (3) and who paid a pay-to-pay fee to DMI when making a payment on their mortgage by telephone or an Interactive Voice Response system between April 10, 2020, and the date class notice is approved.

### V. Appointment of Class Representatives and Class Counsel

Mr. Custer moves to be appointed as class representative and for appointment of his attorneys as class counsel. Doc. 43 at 2–3. As stated *supra* at 8, Mr. Custer is an adequate representative of the class. He will be appointed class representative.

Plaintiff's counsel, attorneys with Bailey & Glasser LLP, Klein & Sheridan, LC PC, and Tycko & Zavareeli LLP, are adequate representatives of the class and are capable of proceeding as class counsel. DMI makes no argument to the contrary. Plaintiff's counsel have extensive experience in consumer class actions, and several among them have served as class counsel in other cases in federal courts. *See* Doc. 44-1 at 5–13; Doc. 44-2 at 1–4; Doc. 44-3 at 2–5. The Court will appoint plaintiff's counsel as class counsel.

**VI. Conclusion**

In its discretion, the Court will certify the class as updated to include class period dates. Mr. Custer is a member of the class, and he has met the threshold requirements. The class is sufficiently numerous, and there are common questions likely to be dispositive. Mr. Custer's claims are typical of those of the class members, and he and his counsel are adequate representatives. For the class, common questions predominate, and a class action is the superior method of adjudication. Mr. Custer will be appointed class representative of the class. His counsel will be appointed as class counsel.

It is **ORDERED** that:

1. The plaintiff's motion for class certification, Doc. 43, is **GRANTED**.

2. The following class is **CERTIFIED**:

   a. All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by DMI, (3) and who paid a pay-to-pay fee to DMI when making a payment on their mortgage by telephone or an Interactive Voice Response system between April 10, 2020, and the date class notice is approved.

3. George Custer is **APPOINTED** class representative.

4. Plaintiff's counsel, John W. Barrett, James L. Kauffman, Bart Cohen, and Bailey & Glasser LLP, Benjamin M. Sheridan, Jed R. Nolan, and Klein & Sheridan, LC PC, and Katherine M. Aizpuru, Robin P. Bleiweis, and Tycko & Zavareeli LLP, are **APPOINTED** as class counsel.

5. The parties **SHALL** immediately begin work on gathering and managing the information needed to provide class notice, if that has not already been done.

6. The parties **SHALL** meet and confer about an appropriate class notice, needed modifications to the trial schedule and associated trial preparation deadlines, and any other logistical or housekeeping matters raised as a result of this Order. The Court understands it should not rule on the fully-briefed summary judgment motion until after the opt-out period ends. No later than January 8, 2026, the parties **SHALL** file a Joint Submission on Class Notice and Trial containing their joint proposal or, if they fail to agree in full, dueling proposals with short briefs directed to items of disagreement.

This the 18th day of December, 2025.

_____
UNITED STATES DISTRICT JUDGE