**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **GEORGE CUSTER,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**DOVENMUEHLE MORTGAGE, INC.,**<br><br>*Defendant.* | Case No. 1:24-cv-00306-CCE-LPA<br><br>Chief District Judge Catherine C. Eagles<br>Magistrate Judge L. Patrick Auld |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. THE SETTLEMENT AGREEMENT ........ 6

- A. The Class ........ 6
- B. Monetary Benefits ........ 6
- C. Injunctive Relief ........ 7
- D. Settlement Administrator and Administrative Costs ........ 7
- E. Class Member Release ........ 8
- F. Proposed Plan of Notice ........ 9
- G. Opt-Outs and Objections ........ 10
- H. Attorneys' Fees and Costs and Service Award ........ 12
- I. *Cy Pres* Recipient ........ 13

IV. LEGAL STANDARD FOR PRELIMINARY APPROVAL ........ 13

V. ARGUMENT ........ 14

- A. The Settlement should be preliminarily approved. ........ 14
  - 1. The Settlement is fair. ........ 15
  - 2. The Settlement is adequate. ........ 16
  - 3. Class Counsel and Plaintiff have adequately represented the Class. 20
  - 4. The Settlement treats Class Members equally. ........ 20
- B. The Notice is the best notice practicable under the circumstances. ........ 21

VI. PROPOSED SCHEDULE ........ 22

VII. CONCLUSION ........ 233

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clark v. Duke University*,
2019 WL 2588029 (M.D.N.C. June 24, 2019) .............................................. 14, 15, 18

*Custer v. Dovenmuehle Mortg.*,
813 F. Supp. 3d 530 (M.D.N.C. 2025) ................................................................ 1

*Eisen v. Carlisle and Jacquelin*,
417 U.S. 156 (1974)........................................................................................... 21

*Glymph-Dozier v. Grapevine of N.C., Inc.*,
2023 WL 3020877 (M.D.N.C. Apr. 20, 2023) ..................................................... 15

*Herrera v. Charlotte Sch. of L., LLC*,
818 F. App'x 165 (4th Cir. 2020) ....................................................................... 16

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ...................................................................*passim*

*McWhorter v. Ocwen Loan Servicing LLC*,
No. 2:15-cv-01831 (N.D. Ala.)............................................................................. 6

*In re Novant Health, Inc.*,
2024 WL 3028443 (M.D.N.C. June 17, 2024) ..................................................... 19

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)........................................................................................... 21

*Pierce v. Statebridge Co., LLC*,
2021 WL 1711784 (M.D.N.C. Apr. 29, 2021) ..................................................... 19

*Stark v. Blue Cross & Blue Shield of N.C.*,
740 F. Supp. 3d 441 (M.D.N.C. 2024) ................................................................ 14

**Statutes**

Consumer Debt Collection Act and the Unfair Trade Practices Act.................................. 1

N.C. Gen. Stat. § 24-9 ............................................................................................. 18

N.C. Gen. Stat. § 75-1.1 .......... 2, 17, 18

N.C. Gen. Stat. § 75-55(2) .......... 2

**Other Authorities**

Fed. R. Civ. P. 23(c)(2)(B) .......... 21

Fed. R. Civ. P. 23(e) .......... 13, 16

Fed. R. Civ. P. 23(e)(2)(A) .......... 20

Federal Rule of Civil Procedure 23 .......... 13, 21

Rule 23(e)(2)(C) .......... 16

Rule 23(e)(2)(C)(i) .......... 17

Rule 23(e)(2)(C)(ii) .......... 19

Rule 23(e)(2)(C)(iii) .......... 19

Rule 23(e)(2)(C)(iv) .......... 20

## I. INTRODUCTION

Plaintiff George Custer, on behalf of himself and a proposed Settlement Class of borrowers whose mortgages were serviced by Defendant Dovenmuehle Mortgage, Inc., respectfully submits this brief in support of preliminary approval of the proposed Settlement.[1] The Settlement resolves claims of the Class that the Court has already certified in this case. SA § 4.1. *See also Custer v. Dovenmuehle Mortg.*, 813 F. Supp. 3d 530 (M.D.N.C. 2025) (certifying class, appointing Plaintiff as Class Representative, and appointing his attorneys as Class Counsel). The Settlement in this case provides substantial monetary relief to the Class along with significant practice changes that will inure to the benefit of Class Members and future borrowers. The Complaint alleges that DMI violated the Consumer Debt Collection Act and the Unfair Trade Practices Act when it charged borrowers a fee of up to $11.50 to make their mortgage payments online or by phone ("pay-to-pay fees"). If approved, the Settlement will comprise a common fund of $9,000,000, representing approximately $670 per fee paid. On top of this, because of the Settlement, DMI has agreed to cease charging pay-to-pay Fees in North Carolina for at least five years, absent a change in the law following the Effective Date that authorizes such charges. *See* Joint Declaration of Katherine Aizpuru, James Kauffman, and Ben Sheridan ("Joint Decl.") at ¶¶ 23. While over a dozen pay-to-pay fee cases have reached settlements in the last half decade, on a per-fee basis, this is the most generous to date.

[1] Capitalized terms are defined in the Settlement Agreement, attached hereto with proposed exhibits as Exhibit 1 to the Joint Declaration of Katherine Aizpuru, James Kauffman, and Ben Sheridan.

The Settlement here is a remarkable recovery in a case that involved myriad legal risks and easily satisfies all Fourth Circuit criteria for preliminary settlement approval. This relief was secured by experienced and informed counsel after two years of litigation, briefing on numerous contested substantive motions, multiple mediations, and two separate mediation sessions before a retired federal judge. The terms are fair, reasonable, and adequate. Accordingly, Plaintiff requests that the Court (1) preliminarily approve the proposed Settlement, (2) appoint ILYM as Settlement Administrator, (3) order the Notice of the Settlement be made to the Settlement Class, and (4) set a Final Approval Hearing. DMI does not oppose the relief sought in this Motion.

## II. BACKGROUND

Plaintiff filed this action on April 10, 2024, alleging that DMI violated the NCDCA, N.C. Gen. Stat. § 75-55(2), and the UDTPA, N.C. Gen. Stat. § 75-1.1, by charging borrowers pay-to-pay fees for making their mortgage payments by phone. *See* Dkt. 1; Joint Decl. ¶ 6. DMI moved to dismiss the Complaint. Dkts. 14-15; Joint Decl. ¶ 7. Plaintiff opposed. Dkt. 20; Joint Decl. ¶ 7. On October 18, 2024, the Court denied DMI's motion to dismiss, and on November 1, 2024, DMI filed an Answer. Dkts. 23, 24; Joint Decl. ¶ 7. On November 26, 2024, Counsel for the parties conducted the Rule 26(f) conference, and they filed a Rule 26(f) Report on December 6, 2024. Dkt. 27; Joint Decl. ¶ 8. The parties exchanged Initial Disclosures on December 10, 2024. Joint Decl. ¶ 8. The parties also negotiated a stipulated protective order, which the Court entered. Dkt. 28; Joint Decl. ¶ 8.

On December 9, 2024, Plaintiff served his First Set of Interrogatories, First Set of Requests for Admission, and First Set of Requests for Production. Joint Decl. ¶ 9. DMI

served responses and objections on January 8, 2025. *Id.* The parties negotiated extensively regarding Plaintiff's discovery requests. *Id.* Class Counsel drafted a deficiency letter and served it on March 13, 2025. *Id.* Class Counsel served a follow-up letter on April 11, 2025. *Id.* The parties met and conferred via teleconference on several occasions, including January 28, April 25, May 13, and June 5, 2025, and Class Counsel sent follow-up emails outlining the parties' agreements as to discovery. *Id.* DMI ultimately produced thousands of pages of documents along with substantive responses to Plaintiff's discovery requests. *Id.* DMI served amended responses and objections to Plaintiff's discovery requests on July 30, 2025, which Class Counsel reviewed and analyzed. *Id.*

DMI served its First Set of Requests for Production, First Set of Requests for Admission, and First Set of Interrogatories on January 22, 2025. *Id.* ¶ 10. Plaintiff and his Counsel prepared responses and objections, which they served on February 21, 2025. *Id.* Plaintiff also gathered and produced documents in response to DMI's discovery requests. *Id.* DMI served a deficiency letter, and Class Counsel prepared and served a response. *Id.* Following meet and confer efforts, Plaintiff served supplemental discovery responses on May 12, 2025. *Id.*

Plaintiff served a notice of deposition pursuant to Rule 30(b)(6) on June 16, 2025, listing fourteen topics, including numerous issues relevant to class certification and the merits. *Id.* ¶ 11. When DMI did not promptly identify a witness, Plaintiff followed up on July 8, July 16, and July 23. *Id.* DMI ultimately provided dates for witnesses, and Class Counsel took DMI's deposition on August 8, August 11, and August 22, 2025. *Id.* Plaintiff and his wife, Linda Pleasants, both sat for depositions in September 2025. *Id.* Class

Counsel traveled to rural North Carolina to prepare them and defend their depositions in person. *Id.* Class Counsel also took the deposition of DMI's expert, Marcel Bryar. *Id.*

On August 21, 2025, the parties mediated before Jill Sperber of Judicate West. *Id.* ¶ 12. The mediation was not successful, but the parties remained in contact with Ms. Sperber through the end of 2025 to continue discussing potential resolution. *Id.*

On September 11, 2025, Plaintiff filed his Motion for Class Certification, accompanying memorandum, and supporting declaration and exhibits. Dkts. 43-44; Joint Decl. ¶ 13. Plaintiff also filed a Motion to Seal and a redacted version of the brief and exhibits. Dkt. 46; Joint Decl. ¶ 13. After DMI filed its opposition on October 2, 2025, Dkt. 50, Plaintiff filed a Reply Brief on October 16, 2025 along with a Motion to Seal and redacted versions, Dkts. 51-53; Joint Decl. ¶ 13.

On October 22, 2025, Plaintiff filed his Motion for Summary Judgment, accompanying memorandum, and supporting declaration and exhibits. Dkts. 54-55; Joint Decl. ¶ 14. Plaintiff also filed a Motion to Seal and a redacted version of the brief and exhibits. Dkts. 56-59; Joint Decl. ¶ 14. That same day, DMI also moved for summary judgment. Dkts. 60-61; Joint Decl. ¶ 14. The parties filed oppositions to the pending summary judgment motions on November 19, 2025. Dkts. 67-71; Joint Decl. ¶ 14. And the parties filed reply briefs on December 8, 2025. Dkts. 72-73; Joint Decl. ¶ 14.

The Court granted some portions of the parties' sealing motions and denied others. Dkts. 62, 66, 75; Joint Decl. ¶ 15. Plaintiff provided unredacted versions of certain documents to the Clerk in compliance with the Court's orders. Joint Decl. ¶ 15.

On December 18, 2025, the Court granted Plaintiff's Motion for Class Certification.

Dkt. 74. Class Counsel then prepared a Joint Status Report on Notice Plan and Trial Schedule, with edits from DMI's Counsel. Dkt. 76; Joint Decl. ¶ 16. Class Counsel prepared a postcard notice to be mailed to class members and a long form notice to be emailed to Class Members and posted on the settlement website. Dkt. 76; Joint Decl. ¶ 16. The Court approved the notices on January 13, 2026. Joint Decl. ¶ 16. ILYM administered the class notice, and the parties notified the Court that notice was complete on February 10, 2026. Dkt. 84; Joint Decl. ¶ 16.

Thereafter, the parties mediated for a full day (eight hours) before the Honorable Gerald Rosen (Ret.) in person in Chicago on March 10, 2026. Joint Decl. ¶ 17. Prior to the mediation, the parties submitted detailed mediation statements and participated in pre-mediation telephone calls with Judge Rosen. *Id.* Although the case did not settle that day, the parties agreed to reconvene for a second session on March 27, 2026. *Id.* During the intervening two weeks, Class Counsel exchanged multiple emails and calls with Judge Rosen regarding the negotiations. *Id.* ¶ 18. After a second full day (eight hours) of hard-fought negotiations, the parties reached agreement as to all material terms including the amount of the common fund and the injunctive relief sought. *Id.* Class Counsel entered the mediation sessions fully informed of the merits of the Class's claims and were prepared to continue to litigate through summary judgment and, if necessary, trial, rather than accept a settlement that was not in the Class's best interests. *Id.* ¶ 19. Class Counsel prepared the first draft of the Settlement Agreement and the parties then negotiated the precise terms and language of the Agreement now before the Court. *Id.*

## III. THE SETTLEMENT AGREEMENT

As compared with past pay-to-pay fee settlements, described in Appendix A, this Settlement achieves a remarkable result. While most of the cases listed in Appendix A (which were approved by courts around the country) involve recovery of around 30-35% of fees collected and 2-3 years of changed practices, here, Class Counsel secured a recovery that represents $670 *per fee* paid by the Class Members along with a five-year cessation of the practice. This recovery is well above the floor of $500 per violation set by the NCDCA and stands in stark contrast to cases like *McWhorter v. Ocwen Loan Servicing LLC,* No. 2:15-cv-01831 (N.D. Ala.), which included amendments to class members' notes permitting the fees to be charged going forward, or cases with shorter periods of injunctive relief. *See* App'x A.

### A. The Class

The Settlement resolves claims of the Class that the Court has already certified: all persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by DMI, (3) and who paid a pay-to-pay fee to DMI when making a payment on their mortgage by telephone or an Interactive Voice Response system between April 10, 2020, and the date class notice was approved, January 13, 2026.

Joint Decl. ¶ 21; SA § 4.1.

### B. Monetary Benefits

The Settlement Agreement provides monetary benefits in the form of a Common Fund of $9,000,000, from which shall be paid (1) all payments to Class Members, (2) all Administrative Costs, (3) any taxes owed by the Settlement Fund (but not any taxes owed

by any individual Class Member, Plaintiff, or Class Counsel), (4) any Attorney's Fees and Expenses authorized by the Court, and (5) any Service Award to the Plaintiff that the Court approves. *See* SA §§ 2.10, 3.3, 5.1, 7.6. After payment of Administrative Costs, Attorney's Fees and Expenses authorized by the Court, and Service Award authorized by the Court, the Settlement Payments will be distributed to Class Members who have not opted out. *Id.* § 7.6. Class Members will receive a secondary distribution if the cost to do so is not prohibitive. Any remaining amounts will be distributed to a *cy pres* recipient approved by the Court. *Id.* §§ 6.4, 7.6.

Class Members do not have to submit claims or take any affirmative step to receive benefits under the Settlement. DMI has already provided the Settlement Administrator with a Class List that includes the names, last known mailing addresses, last known email addresses, and dates and amounts of each pay-to-pay fee paid during the Class Period. *Id.* § 10.1. DMI will provide an updated Class List within 14 days of entry of the Preliminary Approval Order. *Id.*

### C. Injunctive Relief

In addition to the monetary relief, the Settlement Agreement also includes important and valuable injunctive relief. Because of this lawsuit, DMI ceased collecting pay-to-pay fees from borrowers in North Carolina for a period of at least five years after the Effective Date of the Settlement. SA § 5.3.

### D. Settlement Administrator and Administrative Costs

Subject to Court approval, the Settlement Administrator will be ILYM, which already served as notice administrator for the certified class. Joint Decl. ¶ 27; SA § 3.29,

8.1. The Settlement Administrator will oversee the provision of Notice to the Class Members, administration of the common fund, and CAFA notices. SA § 8.3.

Class Counsel reviewed proposals from several prominent administrators before selecting ILYM as the administrator for class notice based on overall cost and value to the class, informed by their experience managing settlements in similar cases against other mortgage servicers. Joint Decl. ¶ 27. The proposals included provisions for email and postcard notice and maintenance of a case website. *Id.* ILYM has already successfully completed notice of the certified class to the certified class members and is maintaining a class website. *Id.* ILYM can offer Class Members the option to receive their distributions electronically as well as by paper check, which will reduce the cost of administration and increase the speed at which Class Members can be paid. *Id.*

All Administrative Costs will be paid from the Settlement Fund. SA § 7.6(b), 8.2. Currently, the costs of notice and administration are estimated to be approximately $13,650, though this amount may change depending on the rate of digital payment election and notice bounce backs. Joint Decl. ¶ 28.

**E. Class Member Release**

In exchange for the benefits conferred by the Settlement, all Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted during the litigation arising out of the 13,427 transactions identified by DMI as having occurred during the Class Period. SA § 19.2. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the *claims* asserted in the operative Complaint.

### F. Proposed Plan of Notice

The Parties' proposed Notice Plan is designed to reach as many Class Members as possible and is the best notice practicable under the circumstances. Joint Decl. ¶ 29. Within 14 days of preliminary approval, DMI shall provide the Settlement Administrator and Class Counsel with an updated spreadsheet containing the names, last known mailing addresses, and last known email addresses of the Class Members, according to its business records. SA § 10.1. If the Court grants the Preliminary Approval Motion, the Administrator will promptly, but in no event later than twenty-one (21) days of entry of the Preliminary Approval Order, email to each potential Class Member at his or her last known email address (provided on the Class List) a Long Form Notice, which form is attached as Exhibit 1-A. For any Class Member who has not provided an email address to DMI, the Settlement Administrator will mail a Postcard Notice, which is attached as Exhibit 1-B. Any Notices returned as undeliverable, but with a forwarding address, shall be promptly re-mailed to the forwarding address. The Administrator shall perform a National Change of Address Registry and LexisNexis/Death Records Search for all Notices returned as undeliverable, without a forwarding address. Such Notices shall be re-mailed upon discovery of a valid mailing address for the potential Class Member. The Notices will apprise the Class Members of their right to receive their Settlement Payment via an electronic payment method. Exs. 1-A, 1-B.

Prior to administering the Email Notice and Postcard Notice, the Settlement Administrator shall update the existing website to become the Settlement Website. Joint Decl. ¶ 31; SA § 10.3. Class Counsel will ensure that the Settlement Website shall contain:

(1) the Long Form Notice, which Class Counsel will request be made available in HTML format with a clickable table of contents and which will at minimum be available as a downloadable PDF in both English and Spanish (3) contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and DMI's Counsel; (4) the Settlement Agreement; (5) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (6) the operative complaints; and (7) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. Joint Decl. ¶ 31. The Settlement Website shall remain accessible until one hundred twenty (120) days after the Effective Date, or, if the Settlement is terminated or otherwise not approved in full, thirty (30) days after the date on which the Settlement Agreement is terminated or otherwise not approved in full. *Id.* ¶ 21; SA § 10.3.

Class Counsel has also asked that the Settlement Administrator establish a 24-hour toll-free telephone line with information about frequently asked questions about the Settlement. Joint Decl. ¶ 32. The number shall be included in the Class Notice and posted on the Settlement Website. *Id.*

### G. Opt-Outs and Objections

The Class Notices will advise Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorney's fees and costs, and/or to Plaintiff's application for a Service Award, as well as the associated deadlines. Exs.1-A, 1-B; SA § 10.2.

A Class Member who wishes to be excluded from the Class must do so in writing. SA § 11.1. In order to opt out, the Class Member must complete and send to the Settlement Administrator, at the address listed in the Class Notice, a Request to Opt Out that is postmarked no later than the Opt-Out Deadline, as specified in the Class Notice. *Id.* § 11.2. The Request to Opt Out must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Class, such as "I hereby request that I be excluded from the proposed Class in the Action." *Id.* Mass or class opt outs shall be void. *Id.* A Request to Opt Out by a borrower or co-borrower on an Account shall be deemed to be a Request to Opt Out by all borrowers on the Account. *Id.* A Class Member who opts out shall not be bound by the Settlement. *Id.* § 11.3.

A Class Member who wishes to object to the Settlement, Class Counsel's fee and expense application, or Plaintiff's application for a Service Award may do so. *Id.* § 11.6. Any Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order. *Id.* § 11.7. The written objection must be filed with the Clerk of Court and mailed (with the requisite postmark) to Class Counsel and DMI's Counsel no later than the Objection Deadline. *Id.* To be valid, the written objection must include: (a) the case name and number; (b) the name, address, telephone number of the Class Member objecting and, if represented by counsel, of his/her counsel; (c) the basis for objection; and (d) a statement of whether he/she intends to appear at the Final Approval Hearing, either with or without counsel. *Id.* § 11.8. For an objection to be considered by the Court, the participating Class

Member must not have opted out of the Settlement and the objection must be electronically filed or mailed first-class postage prepaid and addressed in accordance with the instructions and the postmark date indicated on the envelope must be no later than the Objection Deadline, as specified in the Notice. *Id.*

Subject to approval of the Court, any Class Member who files and serves a written Objection may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, but only if the objecting Class Member: (a) files with the Clerk of the Court a notice of intention to appear at the Final Approval Hearing by the Objection Deadline ("Notice of Intention to Appear"); and (b) serves the Notice of Intention to Appear on all counsel designated in the Class Notice by the Objection Deadline. *Id.* § 11.12. Any lawyer who intends to appear at the final fairness hearing also must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the last day of the objection deadline set by the Court and shall include the full caption and case number of each previous class action case in which that lawyer(s) has represented an objector. *Id.*

### H. Attorneys' Fees and Costs and Service Award

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorney's fees, as well as costs of suit incurred by Class Counsel. SA § 7.4. The Settlement Agreement provides that Class Counsel may seek attorney's fees of up to no more than 35% of the Settlement Fund as well as reasonable expenses incurred in the litigation. *Id.*

Prior to the Final Approval Hearing, Class Counsel will file an application for

attorney's fees and costs explaining why the requested Fee and Expense Award is reasonable. Class Counsel will provide lodestar information sufficient for the Court to perform a lodestar cross-check should the Court exercise its discretion to perform one. DMI has not agreed to any award of attorney's fees or expenses and may respond to the application for Attorney's Fees and Expenses as it sees fit. SA § 7.4.

Class Counsel may also petition the Court for a Service Award of up to $25,000 for Plaintiff Custer as compensation for his time and effort in the Action. SA §§ 3.28, 7.5. Plaintiff will submit a declaration detailing his participation in the Action along with the application for the Service Award.

### I. *Cy Pres* Recipient

Should the Settlement be approved, and any monies remain in the Settlement Fund after disbursement of funds in accordance with the terms of the Agreement, the remaining principal funds shall not revert to DMI. Any such remaining funds shall be donated as a *cy pres* award to a non-profit recipient mutually agreed to by Class Counsel and DMI and approved by the Court. SA § 6.4.

## IV. LEGAL STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). The primary concern addressed in Rule 23(e) is the protection of class members. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon finding that it is fair and adequate. *See id.* The relevant factors in determining fairness are "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis

of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.* at 159. Adequacy is assessed through "(1) the relative strength of the plaintiff['s] case on the merits, (2) the existence of any difficulties of proof or strong defenses . . ., (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.* at 159.

## V. ARGUMENT

### A. The Settlement should be preliminarily approved.

After two years of hard-fought litigation, the Parties have reached a Settlement that provides significant monetary relief to Class Members along with meaningful practice changes. The Settlement was the result of hard-fought negotiations between experienced and informed counsel before a retired federal judge and represents an outstanding result.

The Fourth Circuit has bifurcated the preliminary approval analysis into "consideration of the fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Clark v. Duke University*, 2019 WL 2588029, at *4 (M.D.N.C. June 24, 2019). At the preliminary approval stage, the Court need only find that the Settlement is within the range of possible approval. *See Stark v. Blue Cross & Blue Shield of N.C.*, 740 F. Supp. 3d 441, 443 (M.D.N.C. 2024). Here, the Settlement is fair and adequate, and falls well within the range of possible approval.

#### 1. The Settlement is fair.

Each of the Fourth Circuit's four fairness factors weighs in favor of preliminarily approving the Settlement. *See Jiffy Lube*, 927 F.2d at 158-59.

***First***, the Settlement was reached after two years of active litigation that included a motion to dismiss, a contested motion for class certification, fully briefed cross-motions for summary judgment, depositions of both parties and an expert, and extensive discovery. The parties tested and fully investigated their claims and defenses. Had the parties not reached agreement, the next step would have been for the Court to rule on summary judgment, followed by trial on any remaining claims. *See Clark*, 2019 WL 2588029, at *5 (approving settlement that was in an "advanced posture" after class certification).

***Second***, the parties reached agreement only after extensive discovery. DMI produced, and Class Counsel reviewed and analyzed, thousands of pages of documents, along with data regarding pay-to-pay fees. Class Counsel took the depositions of three DMI employees pursuant to Rule 30(b)(6), and DMI took depositions of Plaintiff and his wife. Class Counsel also took the deposition of DMI's expert. The parties met and conferred extensively regarding discovery. Where settlements are frequently approved where only informal discovery has been provided, the extensive discovery here supports preliminary approval. *See, e.g.*, *Glymph-Dozier v. Grapevine of N.C., Inc.*, 2023 WL 3020877, at *4-5 (M.D.N.C. Apr. 20, 2023) (approving settlement following informal discovery only).

***Third***, the circumstances of the settlement negotiations demonstrate that the Settlement was the result of a fair, arm's length process that was often contentious. The parties first engaged in a formal mediation with Jill Sperber in August 2025 but were unable

to reach an agreement. The litigation then continued in earnest, with Plaintiff briefing and securing class certification, and both sides briefing summary judgment. In March 2026, after the Court granted class certification and with summary judgment pending, the parties mediated a full day in person before Judge Rosen at the JAMS offices in Chicago. This second mediation likewise failed to result in a settlement, though the parties meaningfully narrowed the gaps between their respective positions. That same month, the Parties mediated again before Judge Rosen in-person at the JAMS offices in Chicago, and accepted a settlement proposal advanced by Judge Rosen. There was no collusion.

***Fourth***, counsel for both sides have significant experience in class action litigation. Class Counsel are highly experienced in consumer class action litigation and pay-to-pay litigation specifically, as demonstrated by their firm resumes and the results achieved for consumers in many of the settlements listed in Appendix A. *See* Joint Decl. ¶¶ 33–55. Class Counsel collectively have decades of experience litigating consumer class actions against financial institutions and have litigated and settled dozens of class actions involving improper fees. *Id.*

**2. The Settlement is adequate.**

The Fourth Circuit has recognized that the *Jiffy Lube* factors overlap with the Rule 23(e) factors, rendering the analysis the same. *Herrera v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 176 n.4 (4th Cir. 2020). Nevertheless, for the avoidance of doubt, Plaintiff will discuss both the *Jiffy Lube* factors and those listed in Rule 23(e)(2)(C).

The Settlement is not only adequate but provides substantial relief to the Class Members, which also favors approval. Under the Settlement, DMI will provide a settlement

fund of $9 million, which presents approximately $670 per fee (of up to $11.50) paid. This alone represents a realistic recovery (or better) than Plaintiffs could have obtained had they prevailed at summary judgment or trial.

Assuming Plaintiffs prevailed at summary judgment or trial (which DMI would have vigorously contested), the parties would have submitted briefing on the appropriate measure of damages, including statutory damages. Plaintiffs would have argued for a refund of every improperly assessed fee incurred by the Classes, along with treble damages under § 75-1.1, and a statutory penalty of between $500 and $4,000 per violation under the NCDCA. DMI would have argued that the class was not entitled to a statutory penalty; if any were warranted, DMI would undoubtedly have argued that the Court should award no more than $500 because DMI believed it was acting in compliance with the law and disclosed the fee to every borrower at the time it was paid. This Settlement is one of the first settlements to be resolved based on statutory damages under the NCDCA (the first pay-to-pay action to be resolved on that basis).

Most other pay-to-pay settlements are decided based on a percentage of the fees charged. Here, DMI collected less than $400,000 in fees from Class Members during the Class Period. And while other pay-to-pay settlements based on statutory damages often fall within the $200-250 per fee range, this Settlement compensates Class Members at approximately $670 per fee charged. Therefore, the Settlement represents a windfall for Class Members rather than a percentage of possible recovery—without further risks attendant to litigation and appeal. And in addition to this massive financial recovery, DMI has agreed to cease charging pay-to-pay fees in North Carolina for at least five years.

***Relative strength on the merits and costs, risks* (*Jiffy Lube*) and *delay of trial and appeal* (Rule 23(e)(2)(C)(i).** Plaintiff's claims are strong, but maintaining his claims through trial and appeal would have entailed significant risk, uncertainty, and costs for both sides. Throughout this litigation, DMI zealously disputed Plaintiff's claims. Plaintiff anticipates that DMI would have appealed the Court's ruling on class certification and any ruling in Plaintiff's favor on summary judgment, and the losing party would have appealed a jury verdict. Even if Plaintiff had prevailed at summary judgment and/or trial, the parties would have vigorously disputed the amount of any recovery, including whether any statutory damages were warranted and if so, in what amount.

Where, as here, the resolution of potential appeals by both sides would require protracted adversarial litigation and appeals at risk to both parties, the likelihood of substantial future costs favors approving the settlement. *See Clark*, 2019 WL 2588029, at *6 (approving settlement that reasonably took "into account the strengths and weaknesses of the plaintiffs' case, as well as the potential likelihoods that the defendants may either prevail in motions practice or at trial or appeal any recovery at trial, thus delaying (or foreclosing) any benefit to the class members").

***Difficulties of proof or strong defenses* (*Jiffy Lube*).** DMI mounted strong defenses in its motion for summary judgment, arguing that N.C. Gen. Stat. § 24-9 authorized the fees in question and rendering them legally chargeable under the NCDCA. Had DMI prevailed on this theory, it would have foreclosed any recovery under the NCDCA. And DMI would have had strong arguments that any statutory damages award should have been reduced based on its reliance on legal advice from counsel and its financial situation. DMI

also vigorously disputed Plaintiff's arguments under § 75-1.1 and offered evidence that its fees were not unfair or deceptive because they were fully disclosed to borrowers.

***Duration and expense of anticipated litigation* (*Jiffy Lube*).** The continuation of the litigation would have been expensive and risky for both parties, particularly if either party appealed. This factor supports preliminary approval. *See In re Novant Health, Inc.*, 2024 WL 3028443, at *7 (M.D.N.C. June 17, 2024) (granting final approval where future litigation would have been "expensive and risky").

***Degree of opposition* (*Jiffy Lube*).** As the Settlement has not been approved, there has not been any opposition; however, the Settlement provides a mechanism for Class Members to opt out or object.

***Effectiveness of proposed method of distributing relief* (Rule 23(e)(2)(C)(ii)).** Class Members do not need to submit a claim form and may select payment by electronic methods, which is efficient, fast, and cost-effective. Class Members who do not select a method will receive a mailed check. If there are funds remaining after payment of the Settlement Payments or checks not cashed after 120 days (or 60 days for reissued checks), any remainder will be distributed via a secondary distribution and then to an appropriate *cy pres* recipient, subject to Court approval.

***Terms of the proposed attorneys' fee award* (Rule 23(e)(2)(C)(iii)).** Under the terms of the Settlement, Class Counsel may move for an award of attorney's fees of up to 35% of the Settlement Fund, along with reasonable expense reimbursement. Class Counsel will file an application for fees and expenses at least 21 days before the opt-out and objection deadline. Although the motion is not yet before the Court, a fee award of this

amount is consistent with fee awards in this Circuit and similar cases. *See, e.g.*, *Pierce v. Statebridge Co., LLC*, 2021 WL 1711784, at *3 (M.D.N.C. Apr. 29, 2021) (noting that "33 to 40% of the common fund" is a common range for attorney's fees in class settlements).

***Existence of other agreements*** **(Rule 23(e)(2)(C)(iv).** Courts also consider whether the parties have made other agreements outside the Settlement. The Settlement here contains the parties' entire agreement and supersedes all prior negotiations and proposals. SA § 23.

**3. Class Counsel and Plaintiff have adequately represented the Class.**

Class Counsel and Mr. Custer have adequately represented the Class, including by defeating a motion to dismiss, securing class certification, briefing affirmative summary judgment, opposing DMI's summary judgment motion, and negotiating a fantastic recovery. *See* Fed. R. Civ. P. 23(e)(2)(A) (directing court to consider adequacy of representation). Plaintiff participated in discovery and sat for deposition, and also accompanied his wife to her deposition. Further information about adequacy will be supplied along with the motion for Attorney's Fees, Costs, and Service Award. This factor supports preliminary approval.

**4. The Settlement treats Class Members equally.**

The Settlement provides relief to Class Members on a *pro rata* basis based on the number of pay-to-pay fees that each Class Member paid. SA § 7.1. This method of calculating recovery equitably compensates each Class Member based on the fees at issue in the litigation that they paid during the Class Period. All Class Members likewise benefit

from the required practice changes.

**B. The Notice is the best notice practicable under the circumstances.**

The Parties' proposed Notice Plan is formulated to conform to the procedural and substantive requirements of Rule 23. Due process and Rule 23 require that Class members receive notice of the settlement and an opportunity to be heard and participate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). Although Class Members have already received notice that the Class was certified, the Settlement Agreement contemplates giving them additional notice of the Settlement and an additional opportunity to opt out (or object).

The Notice Plan contemplates notice via direct mail and email. A Long Form Notice will be emailed to Class Members with email addresses and available to those who request it, and it will be posted on the settlement website. To ensure that notice reaches as many Class Members as possible, the Settlement Administrator will perform reasonable address traces for the Postcard Notice for Class Members without a known email address. The Notices include important information about the Settlement, including how to opt out or object, and where to find more information or contact Class Counsel. Exs. 1-A, 1-B. The Notices track the forms of Notice that the Court approved for the certified class and contain all of the critical information necessary to apprise Class Members of their rights.

## VI. PROPOSED SCHEDULE

Class Counsel proposes the following dates for the remainder of the schedule, should the Court preliminarily approve the Settlement:

| **EVENT** | **DEADLINE** |
| --- | --- |
| DMI to provide updated Class List to ILYM | 14 days after entry of Preliminary Approval Order (SA § 10.1) |
| Notice to be sent by Email Notice or Postcard Notice | 21 days from Preliminary Approval Order (SA § 3.20, 10.1) |
| Deadline to file Application for Attorney's Fees, Expenses, and Service Award | 60 days from Preliminary Approval Order |
| Opt Out and Objection Deadline | 90 days from Notice Deadline (SA § 3.18, 3.19) |
| Settlement Administrator to provide Class Counsel and DMI's Counsel with a list of opt-outs | 7 days from Opt Out and Objection Deadline (SA § 11.5) |
| Deadline to file Motion for Final Approval | 21 days before Final Approval Hearing |
| Deadline for the Parties to Respond to any Objections | 21 days before Final Approval Hearing |
| Final Approval Hearing | A date set by the Court no earlier than 180 days from the date of Preliminary Approval |

The foregoing schedule will provide sufficient time for the Parties to administer Notice, for Class Counsel and Plaintiff to prepare and file an application for Attorney's Fees, Costs, and Service Award, for Class Members to review the application and respond to it, and for Class Counsel to prepare a motion for final approval.

## VII. CONCLUSION

The Settlement in this case is an outstanding recovery. Plaintiff and Class Counsel respectfully request that the Court preliminarily approve the Settlement, appoint ILYM as Settlement Administrator, direct that Notice be distributed to the Class, and schedule a Final Approval Hearing.

Dated: May 6, 2026

Respectfully submitted,

/s/ *James L. Kauffman*
John W. Barrett (*pro hac vice*)
James L. Kauffman (*pro hac vice*)
jbarrett@baileyglasser.com
jkauffman@baileyglasser.com
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Katherine M. Aizpuru (*pro hac vice*)
Robin P. Bleiweis (*pro hac vice*)
kaizpuru@tzlegal.com
rbleiweis@tzlegal.com
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

/s/ *Benjamin M. Sheridan*
Benjamin M. Sheridan (Bar No. 52734)
Jed R. Nolan (Bar No. 56899)
ben@kleinsheridan.com
jed@kleinsheridan.com
**KLEIN & SHERIDAN, LC PC**
2500 Regency Parkway

Cary, NC 27518
Telephone: (919) 899-9533
Facsimile: (919) 899-9533

Bart D. Cohen (*pro hac vice*)
bcohen@baileyglasser.com
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 274-9420
Facsimile: (202) 463-2103

*Counsel for the Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I certify that, on May 6, 2026, a copy of the foregoing document was filed with the Clerk of the Court and upon counsel of record using the CM/ECF System.

*/s/ James L. Kauffman*
James L. Kauffman

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that this brief contains 6,178 words (not excluding material that may be excluded), as counted by the Word Count feature in Microsoft Word.

*/s/ James L. Kauffman*
James L. Kauffman