IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GEORGE CUSTER, Plaintiff, | ) | |
| v. | ) | 1:24-CV-306 |
| DOVENMUEHLE MORTGAGE INC, Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Senior District Judge.

In this consumer protection class action, the Court has granted final approval of the parties' settlement agreement. Class counsel and the plaintiff also move for attorneys' fees, costs, and a class representative service award. They seek $3,000,000 in attorneys' fees, $80,532.64 in costs, and a $25,000 service award for the named plaintiff, all to be paid from the settlement amount. Because the requested attorneys' fees, costs, and service award are reasonable considering the relevant factors, the motion will be granted.

## I. Background

The named plaintiff and class representative, George Custer, owns real property in North Carolina for which he pays a monthly mortgage loan amount. Doc. 44-1 at 35, 39. The defendant, Dovenmuehle Mortgage Inc. ("DMI"), services mortgage loans on behalf of mortgage holders and charged Mr. Custer fees to pay his monthly mortgage amount. *Id*. at 315–16; Doc. 58 at 15, 24; Doc. 59 at 6, 35–36. DMI collects a fee from residential mortgage borrowers when they pay their mortgage by phone. Doc. 44-1 at 58, 308; Doc.

59 at 8. DMI charges a $9.50 "pay-to-pay fee" when a borrower pays by phone using interactive voice recognition and $11.50 when a borrower pays by phone using a live agent. Doc. 44-1 at 308.

Mr. Custer sued DMI on behalf of himself and a class, asserting that DMI cannot lawfully collect this fee and that this practice violates the North Carolina Debt Collection Act and the North Carolina Unfair and Deceptive Trade Practices Act. Doc. 1 at ¶¶ 1–6.

Following almost two years of litigation, the parties agreed to settle.[1] The parties agreed to a settlement amount of $9,000,000 and injunctive relief. Doc. 93-2 at ¶¶ 5.1, 5.3. As to the injunctive relief, DMI agrees to cease charging pay-to-pay fees in North Carolina for at least five years after the effective date, absent a change in the law authorizing such charges. *Id.* at ¶ 5.3. The settlement amount represents approximately $670 per fee paid by class members. Doc. 93 at 10.

The settlement fund will be used to pay the settlement class members, attorneys' fees and expenses, service award, and administrative costs. Doc. 93-2 at ¶ 2.10. Class members will be paid a *pro rata* share of the settlement fund based on the number of pay-to-pay fees paid by each class member, without consideration of interest. *Id.* at ¶ 7.1. After subtracting other costs, the parties estimate that class members will receive approximately $425 per pay-to-pay fee paid to DMI. Doc. 95-1 at p. 11 ¶ 3(1). The

[1] The order granting final approval of the class settlement provides a more comprehensive procedural history. *See* Doc. 107.

settlement administrator, ILYM Group Inc.,[2] will make disbursements from the settlement fund in the order described in the settlement agreement. Doc. 93-2 at ¶ 7.6.

After granting preliminary approval, ordering appropriate notice, Doc. 96, and holding a fairness hearing, Minute Entry 11/05/2026, the Court gave final approval to the settlement. Doc. 107.

Class counsel and the plaintiff seek an award of $3,000,000 in attorneys' fees. Doc. 98 at 1. This represents one-third of the settlement fund amount. *Id.* They also seek $80,532.64 in costs for litigation expenses to class counsel and a $25,000 service award for Mr. Custer. *Id.* The defendant does not oppose the motion. Class members were notified that class counsel could seek attorneys' fees of no more than 35% of the total amount of the settlement fund, Doc. 93-2 at 52; Doc. 95-1 at 5, 12, and no class member objected to the settlement or expressed concerns about the fee provision.

## II. Attorneys' Fees

### A. Legal Standard

In a class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts calculate attorneys' fees in class actions using either the "lodestar" method or the "percentage of fund" method. *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009). In a common fund case, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16

[2] ILYM Group is also the class administrator. Doc. 84-1 at 9.

(1984). The Fourth Circuit does not require the use of the percentage of fund method, but district courts in this circuit overwhelmingly apply it. *See Phillips v. Triad Guar. Inc.*, No. 09-CV-71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016); *see also Jones*, 601 F. Supp. 2d at 758–59 (collecting cases).

To determine the reasonableness of the fee award, courts assess the factors identified in *Barber v. Kimbrell's, Inc.* or a variant of those factors. *See* 577 F.2d 216, 226 n.28 (4th Cir. 1978); *Phillips*, 2016 WL 2636289, at *3–4. The *Barber* factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d at 226 n.28 (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)). Courts do not apply these factors in "a formulaic way" because each case is different. *Feinberg v. T. Rowe Price Grp.*, 610 F. Supp. 3d 758, 771 (D. Md. 2022) (cleaned up).

Courts often use the lodestar method to cross-check the reasonableness of a percentage fee, *Jones*, 601 F. Supp. 2d at 759–60 (collecting cases), comparing the requested contingent fee award against a fee calculated based on hours spent at prevailing market rates. *See Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 462 (D. Md.

2014). "The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar." *Id.* at 467. To determine the lodestar, courts multiply the reasonable hourly rate for each attorney by the number of hours reasonably expended. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). A lodestar multiplier is then calculated by dividing the requested fee by the lodestar. *See generally* William Rubenstein, 5 *Newberg & Rubenstein on Class Actions* § 15:85 (6th ed. 2026) (giving the example of a $25 million requested fee divided by a $10 million lodestar, resulting in a multiplier of 2.5).

When courts use the lodestar method only as a cross-check, they need not "exhaustively scrutinize" the hours documented by counsel and "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (cleaned up). To decide a reasonable billing rate, courts look to the prevailing market rates, including the attorneys' actual billing rate and "fees paid to attorneys of comparable skill in similar circumstances." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Courts often recognize national market rates when deciding reasonable billing rates for complex class action litigation. *See Phillips*, 2016 WL 2636289, at *7 (citing *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001)) (describing the market for attorneys in PSLRA class actions as "nationwide"); *Feinberg*, 610 F. Supp. 3d at 772–73 (same for ERISA).

### B. Analysis

The Court has considered the twelve *Barber* factors and finds that the request for a fee of $3,000,000, representing one-third of the settlement fund, is reasonable. To date, class counsel has spent over 2,046 hours of attorney and legal professional time on this matter.[3] Doc. 99-1 at ¶¶ 51, 55 (table), 61 (table), 66 (table). As class counsel accurately points out, there were substantial risks associated with taking on what appears to be the first pay-to-pay fee case in North Carolina under the state consumer protection and debt collection laws. Doc. 99 at 16. Class counsel credibly asserts that taking on this complex class action represented an opportunity cost. *Id.* at 15.

A one-third fee is consistent with the usual compensation for work done in complex class action cases such as this and reflects the customary fee for like work. *See, e.g.*, *Ciarciello v. Bioventus Inc.*, 760 F. Supp. 3d 377, 400 (M.D.N.C. 2024) (collecting cases). Class counsel took this case on a contingency fee basis, Doc. 99-1 at ¶ 72, so the fee award aligns with their expectations at the outset of the litigation. Class counsel obtained a meaningful degree of success on behalf of the class. The settlement fund of $9,000,000 represents approximately $670 per fee paid by class members, well more than the amount of the fee at issue, and that relief is in addition to the injunctive relief. Doc. 93-2 at ¶¶ 5.1, 5.3; Doc. 93 at 10. While the injunctive relief obtained is not permanent,

---

[3] Class counsel also stated that they would spend additional hours on the case after their attorneys' fees and costs declaration was filed. Doc. 99-1 at ¶ 53. That is reasonable, given the work remaining to be done after the motion was filed, such as filing the motion for final approval of the settlement, attending the fairness hearing, and supervising the administration of the settlement.

it will last for a significant amount of time, and the lack of permanence is appropriate given the likelihood of further legislation or regulation in this area.

Class counsel has skill and experience in litigating complex consumer protection class actions. *See* Doc. 74 at 15; Doc. 44-1 at pp. 5–13 ¶¶ 29-40; Doc. 44-2 at ¶¶ 2–10; Doc. 44-3 at ¶¶ 4–16. To obtain a successful result for the class here, class counsel required a deep knowledge of North Carolina consumer protection laws and pay-to-pay consumer protection litigation. A one-third fee reflects a reasonable attorneys' fee in this matter, which involved complex areas of law and less than certain odds of recovery.

The lodestar cross-check also supports the reasonableness of the requested fee. Class counsel has submitted evidence that in this case they spent 653.7 hours of attorney time that would be billed at $1,227; 265.6 hours of attorney time that would be billed at $1,019; 132.7 hours of attorney time that would be filled at $625; 358.2 hours of attorney time that would be billed at $530; 256.6 hours of attorney time that would be billed at $508; 276.2 hours of non-attorney professional time that would be billed at $415; 63.38 hours of non-attorney professional time that would be billed at $277; and 44.2 hours of non-attorney professional time that would be billed at $150. Doc. 99-1 at ¶¶ 55 (table), 61 (table), 66 (table). When adjusted for inflation, those rates are in line with rates approved in similar complex class action cases in this district. *See Ciarciello*, 760 F. Supp. at 401 (approving attorneys' fees where the attorney and professional staff hourly rates ranged from $395 to $1,250 in a securities class action case); *Krakauer v. Dish Network, L.L.C.*, No. 14-CV-333, 2018 WL 6305785, at *5 (M.D.N.C. Dec. 3, 2018) (approving attorneys' fees where the attorney hourly rates ranged from $325 to $760 in a

consumer protection class action case in 2018); *see also Boyd*, 299 F.R.D. at 467 n.6 ("[C]ourt[s] need not engage in an intensive analysis of the rates charged when applying the lodestar analysis merely as a cross-check, in contrast to employing the lodestar method in full.").

The lodestar amount, using these hours and rates, comes out to $1,614,681.86.[4] Doc. 99-1 at ¶¶ 55 (table), 61 (table), 66 (table). Dividing the requested fee of $3,000,000 by this lodestar amount gives a lodestar multiplier of approximately 1.86. That is a relatively low multiplier in this context, showing the requested fee is not excessive. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."). The lodestar cross-check confirms that the requested attorneys' fees are reasonable. Similarly, the lack of objection to the attorneys' fee provision from any class member supports the reasonableness of the fee application.[5]

## III. Costs

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). Courts in the Fourth Circuit will allow reasonable, litigation-related expenses in addition to the fee award. *See Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 483 (D. Md. 2014); *Binotti v. Duke Univ.*, No. 20-CV-470,

---

[4] The lodestar calculated with the provided hours and rates is slightly different than counsel's submitted lodestar number, but the multiplier is the same. Doc. 99 at 20.

[5] The fee sought is a bit less than what counsel could have sought, as the settlement agreement permitted counsel to move for attorneys' fees and litigation costs of no more than 35% of the settlement fund. Doc. 93-2 at ¶ 7.4.

2021 WL 5366877, at *5 (M.D.N.C. Aug. 30, 2021). "Reimbursable expenses include expert fees, travel, long-distance and conference telephone, postage, delivery services, settlement costs, and computerized legal research." *Sims v. BB&T Corp.*, No. 15-CV-732, 2019 WL 1993519, at *4 (M.D.N.C. May 6, 2019).

Class counsel requests an award of $80,532.64 in litigation expenses. Doc. 98 at 1. These expenses are comprised of $544.75 for copying and printing, $613.20 for court and PACER fees, $5,059.54 for legal research, $358.96 for postage and deliveries, $14,303.16 for depositions, $12,260.88 for travel, $2,450 for expert consultation, $42,746.16 for mediation, and $2,195.99 for online document hosting. Doc. 99 at 22–23; Doc. 99-1 at ¶¶ 59, 64, 67.

Class counsel testifies that this list of expenses is accurate based on information that counsel maintained as expenses were incurred, Doc. 99-1 at ¶¶ 59–60, 64, 67, and that these expenses were necessary for this litigation. *Id.* at ¶¶ 53, 65. Most of the fees are in line with expenses the Court has seen in other complex litigation. The Court approves an award of $80,532.64 to cover these litigation-related expenses. The requested amount is fair and reasonable.

## IV. Service Award

At the end of a successful class action, it is common for trial courts to compensate class representatives for some of the time and effort they invested to benefit the class. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Mr. Custer requests a service award of $25,000 in recognition of his time, effort, and contributions to the success of the case. Doc. 98 at 1.

Class counsel and Mr. Custer testify that Mr. Custer assisted in factual investigation, reviewed pleadings, produced documents, responded to interrogatories and requests for admission, prepared and sat for his deposition, contributed a written declaration, monitored the litigation, remained on standby for the three mediation sessions, and considered and approved the settlement agreement. Doc. 99-1 at ¶ 68; Doc. 99-2 at ¶¶ 3–7. They testify that he communicated with class counsel and provided feedback throughout the litigation. Doc. 99-1 at ¶ 69; Doc. 99-2 at ¶ 8. The requested award is small relative to the amount of the class recovery, reasonable based on Mr. Custer's expenses and work on behalf of the class, and consistent with other service awards approved in this district and throughout the Fourth Circuit. *See In re Novant Health, Inc.*, No. 22-CV-697, 2024 WL 3028443, at *13 (M.D.N.C. June 17, 2024) (collecting cases).

## V. Conclusion

The Court finds that the plaintiff's unopposed motion for attorneys' fees, costs, and a service award for the named plaintiff is well-supported and reasonable.

Accordingly, it is **ORDERED** that:

1. The plaintiff's motion for attorneys' fees, costs, and service award, Doc. 98, is **GRANTED**.
2. Class counsel is entitled to attorneys' fees in the amount of $3,000,000, to be paid from the settlement fund.
3. Costs of $80,532.64 shall be paid to class counsel for reasonable expenses from the settlement fund.

4. A service award of $25,000 shall be paid to the named plaintiff George Custer from the settlement fund.

This the 10th day of November, 2026.

__________________________________________

SENIOR UNITED STATES DISTRICT JUDGE